SHORT RECORD
Appeal No. 13-3056
Filed 9/18/13

SPECIAL NOTICE PLEASE

Dear Reader,

Please make copies of my transcripts for your file and please return to me the originals of my transcripts, please and thank you.

Respectfully  Submitted,

*Benjamin C. Price*
Benjamin C. Price

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
CHICAGO, ILLINOIS


BENJAMIN C. PRICE


VS.                                    2:04-CR-81


UNITED STATES OF AMERICA
_____/


MAY IT PLEASE THE HONORABLE COURT:


MR. CHIEF CIRCUIT JUDGE.
FRANK H. EASTERBROOK.


    Petitioner/Appellant. Benjamin C. Price would like to respectfully ask that you would construe this pleading as a formal application pursuant to 28 U.S.C. §2244(b)(3) seeking authorization to file a second or successive petition for a writ of habeas corpus under 28 U.S.C. §2264. And appointment of counsel pursuant to the Criminal Justice Act 3006A(a)(1)(H) and or 3006A(a)(2)(B). Thank you.

JOHN A. JOHNSON, Petitioner,

*vs.*

FRED G. ZERBST, Warden, United States Penitentiary, Atlanta, Georgia.

## [82 L Ed 1461] (304 US 458-469.)

[No. 699.]

### Argued April 4, 1938. Decided May 23, 1938.

HEADNOTES

### Classified to U.S. Supreme Court Digest, Lawyers' Edition

**Evidence, §§ 135, 418 - presumption against waiver of constitutional right.**

1. Courts indulge every reasonable presumption against a waiver of fundamental constitutional rights, and do not presume acquiescence in their loss.

**Estoppel and Waiver, § 29 - waiver defined.**

2. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.

**Criminal Law, § 46 1/2 - right to aid of counsel - when deemed waived.**

3. Whether one accused of crime has waived his right to the assistance of counsel for his defense must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

**Habeas Corpus, §§ 46, 48 - availability to one tried for crime without assistance of counsel.**

4. Habeas corpus is an available remedy to one who has, without having effectively waived his constitutional right to the assistance of counsel, been convicted and sentenced and to whom expiration of time has rendered relief by an application for a new trial or by appeal unavailable.

**Criminal Law, § 46 1/2 - lack of counsel as invalidating conviction.**

5. A judgment of conviction of one who did not effectively waive his constitutional right to the assistance of <\*pg. 1462> counsel for his defense is void as having been rendered without jurisdiction.

LED                                    1

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**Criminal Law, § 46 1/2 - waiver of right to aid of counsel - effect.**

6. Where a defendant without counsel acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel.

**Appeal, § 1692 - remand for further consideration - propriety.**

7. Where a Federal District Court has, in consequence of its erroneous belief that habeas corpus is not an available remedy to one convicted of crime upon a trial in which he did not have the assistance of counsel, failed to consider the question whether the accused had waived his constitutional right to such assistance, the cause should on reversal be remanded to enable the District Court to determine such question.


ON WRIT of Certiorari to the United States Circuit Court of Appeals for the Fifth Circuit to review a judgment affirming a judgment of the District Court of the United States for the Northern District of Georgia dismissing a petition for a writ of habeas corpus.

*Held:*

Reversed.

See same case below, 92 F.2d 748, affirming 13 F. Supp. 253.

## APPEARANCES OF COUNSEL ARGUING CASE

Mr. *Elbert P. Tuttle,* of Atlanta, Georgia, argued the cause and filed a brief for petitioner:

Upon the undisputed facts, the failure of the court to assign counsel for petitioner in the trial of his case deprived him of his constitutional rights under the Sixth Amendment.

Patton v. United States, 281 U. S. 276, 74 L. ed. 854, 50 S. Ct. 253, 70 A.L.R. 263; Powell v. Alabama, 287 U. S. 45, 64, 77 L. ed. 158, 168, 53 S. Ct. 55, 84 A.L.R. 527; Batchelor v. State, 189 Ind. 69, 125 N. E. 773; Com. v. Richards, 111 Pa. Super. Ct. 124, 169 A. 464; Com. v. Valerio, 118 Pa. Super. Ct. 34, 178 A. 509; Com. v. Cohen, 123 Pa. Super. Ct. 5, 186 A. 203; Williams v. State, 163 Ark. 623, 260 S. W. 721; Cass v. Com. 236 Ky. 462, 33 S. W. (2d) 332; Stephenson v. State, 4 Ohio App. 128; Cassidy v. State, 201 Ind. 311, 168 N. E. 18, 66 A.L.R.

LED                                              2

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

25802018

622; Bielich v. State, 189 Ind. 127, 126 N. E. 220; Cook v. State, 48 Ga. App. 224, 172 S. E. 471; Reliford v. State, 140 Ga. 777, 79 S. E. 1128.

The trial, conviction, and sentence of petitioner, under the circumstances here disclosed, deprived him of his liberty without due process of law in violation of the Fifth Amendment.

Powell v. Alabama, 287 U. S. 45, 68, 77 L. ed. 158, 170, 53 S. Ct. 55, 84 A.L.R. 527; Brown v. Mississippi, 297 U. S. 278, 286, 80 L. ed. 682, 687, 56 S. Ct. 461; Mooney v. Holohan, 294 U. S. 103, 79 L. ed. 791, 55 S. Ct. 340, 98 A.L.R. 406; Moore v. Dempsey, 261 U. S. 86, 67 L. ed. 543, 43 S. Ct. 265; Hebert v. Louisiana, 272 U. S. 312, 71 L. ed. 270, 47 S. Ct. 103, 48 A.L.R. 1102; Palko v. Connecticut, 302 U. S. 319, ante, 288, 58 S. Ct. 149.

Petitioner's conviction in violation of the rights guaranteed by the Fifth and Sixth Amendments is a nullity and he is entitled to be released upon writ of habeas corpus.

Moore v. Dempsey, 261 U. S. 86, 67 L. ed. 543, 43 S. Ct. 265; Mooney v. Holohan, 294 U. S. 103, 79 L. ed. 791, 55 S. Ct. 340, 98 A.L.R. 406; Re Nielsen, 131 U. S. 176, 38 L. ed. 118, 9 S. Ct. 672.

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**ANTHONY PASQUALL FARETTA, Petitioner,**
*vs.*
**STATE OF CALIFORNIA**

**422 US 806, 45 L Ed 2d 562, 95 S Ct 2525**

[No. 73-5772]

**Argued November 19, 1974.**

**Decided June 30, 1975.**

## SUMMARY

The accused, charged with grand theft in an information filed in the Superior Court of Los Angeles County, California, requested, well before the date of trial, that he be permitted to represent himself. Although preliminarily accepting the accused's waiver of assistance of counsel, the Superior Court Judge to whom the case was assigned, after questioning the accused concerning the hearsay rule and the state law governing the challenge of potential jurors, ruled that the accused had not made an intelligent and knowing waiver of his right to assistance of counsel, ruled that the accused had no constitutional right to conduct his own defense, and appointed a public defender to represent the accused. Following the accused's conviction, the California Court of Appeal for the Second Appellate District affirmed the trial judge's ruling that the accused had no constitutional right to represent himself, and accordingly, affirmed his conviction. The California Supreme Court denied review.

On certiorari, the United States Supreme Court vacated the judgment and remanded the case. In an opinion by Stewart, J., expressing the view of six members of the court, it was held that (1) a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so, and (2) under the circumstances of the present case, the accused was deprived of his constitutional right to conduct his own defense

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

"We shall not discuss at length the occasions which will justify resort to the writ, where the objection has been open on appeal.   After a somewhat extensive review of the authorities twenty-four years ago, I concluded that the law was in great confusion; and the decisions since then have scarcely tended to sharpen the lines.   We can find no more definite rule than that the writ is available, not only to determine points of jurisdiction, stricti juris, and constitutional questions; but whenever else resort to it is necessary to prevent a **complete miscarriage of justice**."   United States ex rel. Kulick v. Kennedy, CA2d Conn, 157 F.2d 811, 813.

LED                                          1

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

[5]Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of Counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a Federal court's authority to deprive an accused of his life or liberty. When this

[304 US 468]

right is properly waived, the assistance of Counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by Counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost "in the course of the proceedings" due to failure to complete the court-as the Sixth Amendment requires-by providing Counsel for an accused who is unable to obtain Counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake.[22] If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by habeas corpus.[23] A judge of the United States-to whom a petition for habeas corpus is addressed-should be alert to examine "the facts for himself when if true as alleged they make the trial absolutely void."[24]

[6]It must be remembered, however, that a judgment can not be lightly set aside by collateral attack, even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a presumption of regularity.[25] Where a defendant, without Counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas <*pg. 1469> corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional

[304 US 469]

right to assistance of Counsel. If in a habeas corpus hearing, he does meet this burden and convinces the court by a preponderance of evidence that he neither had Counsel nor properly waived his constitutional right to Counsel, it is the duty of the court to grant the writ.

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

25802018

Mr. Chief Judge, upon your preliminary review of the May 2nd and 3rd 2005 trial transcripts, and the various United States Supreme Court language. I will prayerfully and faithfully await your decision.

MAY GOD BLESS AMERCIA, AND MAY GOD BLESS THE HONORABLE SUPREME COURT OF THE UNITED STATES OF AMERICA. AND MAY GOD ALSO BLESS THIS HONORABLE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

Respectfully    Submitted,

*Benjamin C. Price*

Benjamin C. Price Pro Se
Reg No: 25802-018
F.C.I. Jesup
2680 U.S Hwy 301 South
Jesup, GA 31599

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
CHICAGO, ILLINOIS


BENJAMIN C. PRICE

VS.                                    2 04 CR 81


UNITED STATES OF AMERICA
_____/


   AFFIDAVIT OF BENJAMIN C. PRICE IN SUPPORT OF HIS APPLICATION
PURSUANT TO 28 U.S.C. §2244(B)(3) SEEKING AUTHORIZATION TO FILE
A SECOND OR SUCCESSIVE PETITION FOR A WRIT OF HABEAS CORPUS UNDER
28 U.S.C. §2264. AND APPOINTMENT OF COUNSEL PURSUANT TO THE
CRIMINAL JUSTICE ACT 3006A(a)(1)(H) AND OR 3006A(a)(2)(B). THANK
YOU.


   BENJAMIN C. PRICE, DULY SWEARS ON OATH, STATES AS FOLLOWS:

   (1) I am over the age of 21, I am under no legal disability
if called to testify in this matter, I will testify based on my
personal knowledge and consistent with this affidavit.

   (2) On May 2nd 2005 before commencement of the jury selection
voirdire examination, I respectfully asked U.S. District Court
Judge Philip P. Simon to dismiss attorney Foley because I
believed that Judge Simon was forcing me to go to trial with an
attorney who refused to even investigate exculpation evidence
revealed by the government witness during the suppression hearing
and because of a total breakdown in communications and a conflict
of interest.

(3) On May 2nd 2005 after the jury had been selected, empaneled, and sworn in. Judge Simon decided to take my complaint about Mr. Foley seriously and finally removed him from his responsibilities in my case.

(4) OnMay 2nd 2005 after the jury had been selected empaneled, and sworn in, and Judge Simon to finally remove Mr. Foley from his responsibilities in my case, began to acquiescence me simultaneously regarding the MISTRIAL and RIGHT TO COUNSEL ISSUE before he adequately addressed my right to counsel issue.

(5) On May 3rd 2005 Judge Simon and assistant United States attorney Dean R. Lanter both stated that a formal waiver of your right to counsel, if that's the way you want to go. (Page 9 at lines 9-11 [May 3rd, 2005 Transcripts]) Mr. Lanter stated, "That Mr. Price would have to make a knowing and voluntary waiver regarding proceeding Pro Se, first of all.

Respectfully    Submitted,

*Benjamin C. Price*

Benjamin C. Price Pro Se
Reg No: 25802-018
F.C.I. Jesup
2680 U.S. Hwy 301 South
Jesup, GA 31599

Subscribed and sworn
to before me this date

```
 1                    IN THE UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF INDIANA
 2                            HAMMOND DIVISION

 3

 4    UNITED STATES OF AMERICA,        )
                                       )
 5              Government,            )
                                       )
 6    vs.                              )    2:04cr81
                                       )
 7    BENJAMIN C. PRICE,               )
                                       )
 8                    Defendant.       )

 9    The trial in the above-entitled matter was reconvened before HONORABLE PHILIP
      P. SIMON, Judge of said court, and a Jury, at the Federal Building, 5400
10    Federal Plaza, Hammond, Indiana, on the 3rd day of May, 2005, commencing at the
      hour of 9:30 o'clock in the forenoon.

11

12                   A P P E A R A N C E S:
                        (SEE NEXT PAGE.)
13

14

15

16

17

18                   SHARON BOLECK MROZ,  CSR, RPR, CPE
                     OFFICIAL COURT REPORTER
19                   U.S. DISTRICT COURT
                     NORTHERN DISTRICT OF INDIANA
20                   HAMMOND DIVISION
                     5400 FEDERAL PLAZA
21                   HAMMOND, INDIANA  46320
                     (219) 852-6728
22

23

24

25
```

1                          A P P E A R A N C E S:

2                    Mr. Dean R. Lanter
                     Mr. Nicholas Padilla
3                    United States Attorney's Office
                     5400 Federal Plaza
4                    Suite 1500
                     Hammond, Indiana  46320
5
                               On behalf of the Government;
6
                     Mr. Arlington J. Foley
7                    8300 Mississippi Street, Suite 2B
                     Merrillville, Indiana  46310
8
                               On behalf of the Defendant.
9
                     Defendant present in person.
10
          Also Present:  Daniel Mitten, Case Agent.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              INDEX

2    Mistrial - 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sharon  Boleck  Mroz, CSR, RPR, CPE
5400 Federal Plaza, Suite 4109
Hammond, IN  46320 (219) 852-6728

1                                    EXHIBITS

2      (NONE)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                (The proceedings resumed in open court, reported
 2           as follows.)
 3           THE CLERK:   All rise.
 4           THE COURT:   You can be seated.
 5           All right.  Good morning everyone.  When we left off
 6    yesterday, the Government was going to inform the Court of its
 7    position on the Court's suggestion  that I might reconsider my
 8    decision and appoint Mr. Price a third lawyer.  But that would
 9    necessitate the grant of a mistrial, so, that obviously, a new
10    lawyer could get on board and the case could proceed.
11           So, Mr. Lanter, I'll hear from you  on that issue.
12           MR. LANTER:   Yes, Your Honor.  The Government's first
13    request is that the Defendant be sworn in or under oath and
14    explained again his options including the option of appointment of
15    a third attorney to represent him and more time to prepare for a
16    trial, which would then occur in front of a new jury that was
17    picked by an attorney that Mr. Price could get along with.
18           In the event that there is no mistrial, the Government's
19    second request is that the Court recess this jury for a couple
20    weeks, appoint Mr. Price new attorney immediately, so that he can
21    discuss with Mr. Price or she can discuss with Mr. Price whether or
22    not they want to proceed before this trial or whether -- before
23    this jury or whether or not  they would like to ask for a mistrial,
24    which would result in this jury being dismissed, and more time to
25    prepare in front of a new jury.  Again, which would be to Mr. Price
```

1    and his attorney's liking as opposed to the one picked yesterday by

2    Mr. Foley.

3         The Government's third option or a third position is that

4    if the Court disagrees or if either of those first two are not

5    taken, the third option is that we proceed to trial today. Mr.

6    Price -- with Mr. Price representing himself. Because he has

7    indicated that he most definitely does not want Mr. Foley to

8    represent him.

9         To proceed to trial today, the Government's position is

10    that Mr. Price would have to make a knowing and voluntary waiver

11    regarding proceeding pro se, first of all. And second of all, that

12    he would agree to proceed in front of this jury today.

13         So, those are the Government's first three requests in

14    descending order. But the Government again asks --

15         THE COURT: Would you tell me -- I'm sorry to interrupt,

16    Mr. Lanter. Could you repeat the first one that you suggested

17    again.

18         MR. LANTER: The first one is that Mr. Price be sworn in

19    under oath and explained basically his options including that the

20    Court -- if the Court is willing to, the Court is willing to grant

21    him a new attorney that he can sit down with and discuss this case,

22    more time to prepare, and have trial preparation to Mr. Price's

23    liking with that new attorney with adequate preparation. But along

24    with that is that this trial would not be able to proceeded today

25    in front of this jury, and that a mistrial would be granted at the

```
1    Defendant's request for more time to prepare with that new
2    attorney.
3            THE COURT:  Okay.
4            Mr. Price, I'm going to ask you to raise your right hand
5    and take an oath. Would you administer the oath, Noel.
6            (Defendant sworn.)
7                    BENJAMIN C. PRICE
8    being first duly sworn to testify the truth, the whole truth, and
9    nothing but the truth, was examined and testified as follows:
10           THE COURT:  All right. Mr. Price, you know, I think I
11   told you yesterday that I was prepared to reconsider my decision to
12   appoint you a third court appointed attorney. But because the jury
13   has already been empaneled and sworn in, jeopardy has attached
14   under the double jeopardy clause of the Constitution.
15           See, for example, Wilhock versus Flannigan, 448 United
16   States 1323. It's a 1980 case. At pages 1325 through 26.
17           The double jeopardy clause of the Fifth Amendment
18   protects a Defendant in a criminal proceeding against multiple
19   punishments or repeated prosecutions for the same offense. See,
20   for example, United States versus Dinitz, D I N I T Z, 424 US 600,
21   at page 606. It's a 1976 case from the Supreme Court.
22           The double jeopardy clause also provides a criminal
23   Defendant with quote, "the right to have his trial completed by a
24   particular tribunal," end quote. See Wade versus Hunter, 336
25   United States 684, at 689. It's a 1949 case. It's quoted in
```

1    Oregon versus Kennedy, 456 United States 667, at page 671.  It's a
2    1982 case from the Supreme Court.
3        What that means, Mr. Price, is that because jeopardy has
4    already attached in this proceeding, because the jury has been
5    selected and empaneled, the Court can discharge the jury and
6    appoint new counsel.  But the only way that I can do that is by
7    declaring a mistrial.
8        Now, I can declare a mistrial sua sponte, which means I
9    can do it on my own.  But I can only do that where there has been a
10   manifest necessity for the mistrial or the ends of public justice
11   would otherwise be defeated.
12       See, for example, the Dinitz case that I cited earlier,
13   424 US, at pages 606.  It's a 1976 case from the Supreme Court.
14       The types of things that are involved manifest necessity
15   would be, for example, if a lawyer was found to have a conflict,
16   and it was discovered after the jury was empaneled, and the trial
17   couldn't proceed.  That might be an example of a manifest
18   necessity.
19       In this case, I don't believe that there is a manifest
20   necessity for the declaration of a mistrial, at least on what I
21   have before me right now.
22       So, what that means is that the only way that I can grant
23   the mistrial is if you consent to it or ask for it yourself.
24   Otherwise, jeopardy has already attached, and a subsequent
25   prosecution would be barred by the double jeopardy clause.

1          So, I am prepared, as I mentioned to you yesterday, to

2    give you the option of appointing a new lawyer to represent you,

3    delaying the trial, and giving you time to get acquainted with the

4    new lawyer, and to move forward with the case with the new lawyer.

5    But the only way that I can do that is if you consent to a

6    mistrial. You don't have to do that. It's your choice. But if

7    you don't consent to the mistrial, we're going to proceeded today.

8          And we'll proceed either, again, with you representing

9    yourself, and we'll do a formal waiver of your right to counsel, if

10   that's the way you want to go, or we will proceed with Mr. Foley

11   representing you, if that's what you want.

12         Mr. Foley, you're still prepared to try the case, I take

13   it, is that right?

14         MR. FOLEY:   Absolutely.

15         THE COURT:   Any question about that?

16         MR. FOLEY:   Any question about --

17         THE COURT:   Any question that you're ready to try the

18   case?

19         MR. FOLEY:   No.  I thought you were directing that to Mr.

20   Price.

21         THE COURT:   I'm sorry.

22         MR. FOLEY:   No.  No question at all.

23         THE COURT:   You're well prepared to try the case?

24         MR. FOLEY:   Absolutely.

25         THE COURT:   Okay.

1          So, Mr. Price, the ball is in your court. You tell me
2     what you want to do. You can consent to the mistrial, and we will
3     get you another lawyer. Otherwise, we're going to get that jury in
4     here and we're going to get going. And either you're going to do
5     an opening statement or Mr. Foley's going to do it, and we're going
6     to get moving on the trial.

7          So, you tell me what you want to do.

8          THE DEFENDANT:  I'm basically -- I don't fully understand
9     what you mean as far as me consenting and what type of burden or
10    whatever that would put on me as far as me consenting to a mistrial
11    and necessarily would you grant it. But I would like for you to --
12    I would like to consent to a mistrial. But I'm not fully aware of
13    what I'm doing, but it sounds good to me.

14         THE COURT:  Let me re-explain it to you, because I want
15    you to fully understand it.

16         By consenting to a mistrial, what it means is that you'll
17    get another lawyer, and we'll go through the whole discussion about
18    how I'm not going to appoint you a fourth one. We'll talk about
19    that. But if you consent to the mistrial, which is your right to
20    do, you will -- we will come back here in a couple of months, and
21    we will select a new jury and proceed accordingly with your new
22    lawyer.

23         And -- but you have a right to have this case proceed
24    with this jury, if that's what you want to do. But we're going to
25    do that -- we're going to do that today. And you're either going

1    to do it on your own or you're going to do it with Mr. Foley, and

2    that will be your choice.

3             But by consenting to the mistrial, essentially what you

4    are giving up is your right to have your case decided by this jury,

5    the one we picked yesterday, and have it instead decided by a

6    different jury that would be selected with the input of your new

7    lawyer and yourself.

8             So, that's what you're giving up by consenting to a

9    mistrial. But you don't have to -- you don't have to consent to

10   that. That's your choice. Do you understand that?

11             THE DEFENDANT:   I think I understand it a little bit

12   better now.

13             THE COURT:   So, what do you want to do?

14             THE DEFENDANT:   I would like to consent to a mistrial.

15             THE COURT:   You're asking the Court to declare a mistrial

16   and appoint you a new lawyer?

17             THE DEFENDANT:   Yes.

18             THE COURT:   Okay.

19             Mr. Lanter, what is the Government's position in light of

20   that?

21             MR. LANTER:   One moment, Your Honor.

22             THE COURT:   Sure.

23             (Conference between counsel, not within hearing.)

24             MR. LANTER:   I think given the Defendant's

25   representations, and based on his consent and request for a

1    mistrial, a mistrial should be declared at this time.

2            THE COURT: Let me ask you one other question, Mr. Price.

3    Did you participate in the jury selection at all yesterday? Did

4    you assist Mr. Foley in the jury selection?

5            THE DEFENDANT: He asked me a few questions, and I was

6    basically -- as far as he told me, we had 10 impeachments, whatever

7    it is.

8            MR. FOLEY: Strikes.

9            THE DEFENDANT: Strikes. And they had six. And I just

10   said well, use them all.

11           THE COURT: I guess what I am asking is, did you tell Mr.

12   Foley, I don't like that person, get rid of that person, I like

13   that person, keep that person? Did you participate with him in the

14   process?

15           THE DEFENDANT: Basically, not really, because it really

16   didn't matter to me.

17           THE COURT: All right. I'm going to grant a mistrial in

18   this case. And I'm going to grant it on two grounds.

19           First is that the Defendant has requested -- let me

20   recount the history of this, so the record is clear.

21           After Mr. Price was indicted in this case, he was

22   appointed a lawyer named John Martin. Mr. Martin represented Mr.

23   Price for, I believe, about three or four months. Mr. Price

24   became dissatisfied with Mr. Martin. Discharged Mr. Martin. And

25   decided that he wanted to proceed pro se. Wrote a series of

1    letters, I believe, to the Court. And there was a hearing that was
2    set before the Magistrate Judge. I believe it was Magistrate Judge
3    Rodovich, who had a hearing with Mr. Price. And Mr. Price grant --
4    said that he wanted to proceed pro se. And he was warned of the
5    consequences of that. And he did, for a short period of time,
6    proceed pro se.

7          There had been a change of -- change of heart by Mr.
8    Price. And he then asked for another lawyer. And another lawyer
9    was appointed, and it was Mr. Foley. Was appointed to represent
10   him. And Mr. Foley filed a series of pretrial motions. But Mr.
11   Price again became dissatisfied with Mr. Foley. Requested that Mr.
12   Foley be discharged. And he wanted a third attorney.

13         At the time, I said I wasn't going to appoint you, Mr.
14   Price, a third attorney. But I have reconsidered that. And so, I
15   will appoint you another lawyer. But I'm going to grant a mistrial
16   on the grounds that, first, that the Defendant has specifically
17   requested the appointment of another lawyer and asked to discharge
18   Mr. Foley.

19         That occurred after the jury was selected. There was a
20   brief dialogue in the morning between Mr. Price and me, and -- but
21   at that time, we -- he raised with the Court his dissatisfaction
22   about Mr. Foley, and -- but did not request the Court to proceed
23   pro se. In fact, I believe he said that he really didn't know what
24   he was doing and wasn't comfortable.

25         So, we then selected the jury. And after the jury was

1    selected and sworn in, Mr. Price advised the Court that he wanted

2    to discharge Mr. Foley and proceed pro se, and -- but has also now

3    asked that he be appointed a lawyer.

4        Given the sequence of events, I'm going to grant his

5    request for a third attorney, and declare a mistrial, and discharge

6    this jury, because Mr. Price has requested that.

7        In addition, I think that there is a manifest reason to

8    grant a mistrial in this case. You know, the Court can sua sponte

9    grant a mistrial if there is a manifest necessity for the mistrial,

10   if the ends of justice -- ends of public justice would otherwise be

11   defeated. And Mr. Price told me this morning that he did not

12   participate at all in the jury selection process except to tell his

13   lawyer to use all 10 of his strikes, but he did not participate in

14   how those peremptory challenges were going to be exercised.

15       And as a result of that, he did not meaningfully

16   participate in the selection of the jury, which I think is -- is a

17   manifest necessity. Even in the absence of Mr. Price asking for a

18   mistrial, that the ends of public justice would be defeated if an

19   individual was brought before a jury in which he did not

20   participate in the selection of.

21       So, for those reasons, I'm going to grant the request by

22   Mr. Price for a mistrial, that the Government has also agreed to.

23   And I'm going to set this case for a new trial on October the 31st,

24   2005, at 8:30.

25       And I will, in the next day or so, have a new attorney

1   appointed for you, Mr. Price. And -- but I want to reiterate that
2   there's been quite a history here. And this case will go to trial
3   on October the 31st or -- presuming that date is convenient for the
4   new lawyer who is appointed for you. But I am more than
5   comfortable that I've given you all the leeway that I need to give
6   you. And if you choose to discharge this third lawyer, which you
7   have a right to do, you have a right to proceed pro se. And as
8   I've told you in the past, I don't think it's a good idea. It's --
9   trials are complicated. They are involved. It can be -- it's
10  fraught with problems representing yourself.
11          But if you want to proceed pro se, I'm going to allow you
12  to do that. But what I'm saying to you is that if you're
13  dissatisfied with the third lawyer, even if you don't want to
14  proceed pro se, you're going to proceed pro se. Because you will
15  have left me no choice but to conclude that you are waiving your
16  right to the assistance of counsel. Because at that time, you will
17  have then gone through three lawyers. And there will not be a
18  fourth.
19          And I know I've said this once to you before. But you
20  can take it to the bank this time that I mean it. And so, you may
21  get another lawyer, and you may think at the time that you get this
22  third lawyer, you know, I really wish I had Mr. Foley. In
23  retrospect, he was pretty darn good. That's going to be too bad.
24  And you'll proceed with this third lawyer or you'll proceed on your
25  own. You understand that?

Sharon Boleck Mroz, CSR, RPR, CPE
5400 Federal Plaza, Suite 4109
Hammond, IN  46320 (219) 852-6728

1          THE DEFENDANT:    Yes, Your Honor.

2          THE COURT:    Do you have any question for me, Mr. Price?

3          THE DEFENDANT:    Basically, I wanted to ask if the Court

4    could -- I want to make a request as far as my housing now.  If the

5    possibility was to arise that I did have to go pro se, I'm not in a

6    facility where there is a law library.  Could I be remanded back to

7    MCC?

8          THE COURT:    If you want to do that, you would have to

9    file a motion with the Court, and we'll have a separate hearing on

10   that.  So, the first thing I'm going to do is appoint you another

11   lawyer.  And if you're not able to get along with that lawyer and

12   things go south, and I hope they don't -- you need to listen to

13   them -- but if you choose to proceed pro se, you can file another

14   -- send me another letter and we'll file it with the Court, and we

15   will discharge that lawyer and you'll go alone.

16         And at that time, you can send me a letter and we'll have

17   a hearing on your placement.  For now, you're staying where you're

18   at.

19         Mr. Lanter, anything else?

20         MR. LANTER:    No, Your Honor.

21         THE COURT:    All right.  Mr. Padilla, anything from you?

22         MR. PADILLA:    No, Your Honor.

23         THE COURT:    Mr. Foley, is there anything else we need to

24   talk about?

25         MR. FOLEY:    No.

Sharon Boleck Mroz, CSR, RPR, CPE
5400 Federal Plaza, Suite 4109
Hammond, IN  46320 (219) 852-6728

```
 1            THE COURT:  Okay.  Mr. Foley, thank you very much for
 2   your service to the Court.  I greatly appreciate the efforts that
 3   you put in.  You went above and beyond in my judgment.  So, thank
 4   you very much.
 5            You are discharged now, sir.  And you can submit your
 6   voucher and we'll see to it that you get paid with as much dispatch
 7   as we can muster.
 8            MR. FOLEY:  Thank you, Your Honor.
 9            THE COURT:  Dave, you can bring the jury in here.
10            MR. FOLEY:  Do you want me to stay?
11            THE COURT:  Yeah, you can just stay.
12            THE DEFENDANT:  Your Honor.
13            THE COURT:  Sure.
14            THE DEFENDANT:  With the request I just asked you, well,
15   basically, I was at MCC and they brought me to Hammond so I could
16   be closer, is what the marshals told me, for the few days of the
17   trial.  They came and got me.
18            THE COURT:  My guess is the marshals will probably
19   rehouse you at the MCC, because they keep you close here at Hammond
20   just for the trial.
21            Is that right, guys?
22            THE MARSHAL:  Yes.
23            THE COURT:  So, I think your concerns are going to be
24   addressed anyway, that -- probably today, in fact.  I can't promise
25   you this.  It's up to the Marshal Service and up to the Bureau of
```

1    Prisons about where they want to place you, but my guess is  you'll

2    be taken back to the MCC.  But if you're not, then you can file --

3    send me a letter, and we'll have a hearing on it.  Okay?

4                THE DEFENDANT:  Okay.

5                (Jury enters.)

6                THE COURT:  Okay.  You may be seated, ladies and

7    gentlemen.

8                All right.  I don't think there will be  anybody happier

9    with the news I'm about to give you than Mr. Greiner.

10                But I'm going to declare a mistrial  in this case for

11    reasons that I really don't need to explain to you all, but it's by

12    agreement of the parties.  It has nothing to do with the selection

13    of the jury or anything that you've done or anything of that

14    matter.  It's a matter that I had to take up with counsel and with

15    the Government, and all parties have agreed that a mistrial should

16    be granted.

17                So, the bad news is that you probably feel like I've

18    wasted some of your time in the last day and a half.  The good news

19    is I'm going to give you back about two days of your life.  I'm

20    sorry to have done this to you, but it really is necessary.  And I

21    hope that you understand.

22                I very much appreciate your  willingness to serve.

23    Because you take time away from your family and your jobs, and I

24    understand that.  And it's a difficulty.  And even though you feel

25    like maybe this was a waste of -- of time, it really wasn't.

1    Because you're serving the ends of justice by doing what you are --

2    what the law requires you to do.

3         So, from the judicial branch of Government, I greatly

4    appreciate your being here and being attentive and being forthright

5    in your answering of the questions.

6         But as I mentioned, I felt the need to grant a mistrial.

7    And I'm going to discharge you now.

8         So, your service is done. And maybe we'll see you down

9    the road. So, good luck.

10        (Jury exits.)

11        THE COURT:  Someone was happy.

12        Okay. Anything else from you, Mr. Lanter?

13        MR. LANTER:  No, Your Honor.

14        THE COURT:  Okay. Mr. Foley, again, thank you very much.

15        And Mr. Price, we'll see you in a couple months.

16        (WHICH WERE ALL THE PROCEEDINGS HAD).

17

18

19

20

21

22

23

24

25

```
 1                 C E R T I F I C A T E
 2         I, Sharon Boleck Mroz, being a duly   authorized
 3     and acting official court reporter for the
 4     United States District Court, for the Northern
 5     District of Indiana, Hammond Division, do hereby
 6     Certify that I did report in machine shorthand the
 7     foregoing proceedings, and that my shorthand notes
 8     So taken at said time and place were reduced to
 9     typewriting under my personal direction.
10         I further certify that the foregoing typewritten
11     transcript constitutes a true record of said
12     proceedings, so ordered to be transcribed.
13
14                      _____
15                           Sharon  Boleck  Mroz
16                           Official Court Reporter
17
18
19
20
21
22
23
24
25
```

Sharon Boleck Mroz, CSR, RPR, CPE
5400 Federal Plaza, Suite 4109
Hammond, IN  46320 (219) 852-6728

15/16 and 81/88
missing

ORIGINAL

RECEIVED

05 JUN -9 PM 2:10

STEPHEN R. _____, CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

1    IN THE UNITED STATES DISTRICT COURT
2    NORTHERN DISTRICT OF INDIANA
3    HAMMOND DIVISION

4    UNITED STATES OF AMERICA,          )
5                    Government,        )
6    vs.                                )    2:04cr81
7    BENJAMIN C. PRICE,                 )
8                    Defendant.         )

9    The trial in the above-entitled matter was commenced before HONORABLE PHILIP
10   P. SIMON, Judge of said court, and a Jury, at the Federal Building, 5400
     Federal Plaza, Hammond, Indiana, on the 2nd day of May, 2005, commencing at the
11   hour of 8:55 o'clock in the forenoon.

12            A P P E A R A N C E S:
13            (SEE NEXT PAGE.)

14

15

16

17

18       SHARON BOLECK MROZ,  CSR, RPR, CPE
19       OFFICIAL COURT REPORTER
         U.S. DISTRICT COURT
20       NORTHERN DISTRICT OF INDIANA
         HAMMOND DIVISION
21       5400 FEDERAL PLAZA
         HAMMOND, INDIANA  46320
22       (219) 852-6728

23

24

25



```
1                    A P P E A R A N C E S:

2           Mr. Dean R. Lanter
            Mr. Nicholas Padilla
3           United States Attorney's Office
            5400 Federal Plaza
4           Suite 1500
            Hammond, Indiana  46320
5
                      On behalf of the Government;
6
            Mr. Arlington J. Foley
7           8300 Mississippi Street, Suite 2B
            Merrillville, Indiana  46310
8
                      On behalf of the Defendant.
9
            Defendant present in person.
10
      Also Present:  Daniel Mitten, Case Agent.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                    INDEX
2    Jury Selection -      17
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1                          EXHIBITS

2     (None)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE CLERK:  All rise.

2          THE COURT:  You can be seated.

3          All right.  Good morning everyone.  We are on the record

4     in Cause Number 2:04cr81, United States versus Benjamin Price.

5          We're here today for the trial of this matter.  Parties

6     ready to proceed?

7          MR. LANTER:  Yes, Your Honor.

8          THE COURT:  Okay.  Mr. Foley, I know there was some issue

9     that you wanted to raise with me about your availability for this

10    afternoon.

11         MR. FOLEY:  Yes, Your Honor.

12         THE COURT:  It's a little late to be throwing this at me.

13         MR. FOLEY:  Right.  I understand.

14         If -- well, first of all, I -- you know, I didn't even

15    know that we were going with evidence this afternoon until Friday.

16    Mister -- Dean and I had spoken about some other unrelated matters,

17    and he brought it to my attention that the other trial had been

18    continued.  It was my presumption that there was another jury going

19    to be picked anyway.  That really has nothing to do with my

20    conflict.

21         What it is, over the weekend my mother, who is around 84,

22    85 years old, has a care giver who is a Polish lady, and I just

23    found out she's going to be leaving to go back to Poland this

24    afternoon.  We have some financial things we have to take care of

25    before she leaves.  And I was trying to get that accomplished this

1    morning, but I couldn't.

2         I was thinking about alternatives.  The only alternative

3    I can consider is -- see, I have to go back to Crown Point and back

4    to East Chicago where she resides.

5         If we were to select a jury, and whenever that ends, if I

6    could maybe have an hour and a half, two hours, I might be able to

7    get that accomplished within that time frame.  Or --

8         THE COURT:  The other option would be to just take a

9    short lunch break and break early for the day.  Which way is better

10   for you?

11        MR. FOLEY:  Judge, I -- either -- actually, either way

12   would probably be okay.

13        I may be able to do it -- when you're talking about

14   breaking early, what time?

15        THE COURT:  I was thinking like 3:00 o'clock, something

16   like that.  Would that give you enough time to do --

17        MR. FOLEY:  That should -- that should work out.  I will

18   find a way.  If you break at 3:00 o'clock or even 4:00 o'clock, I

19   can find a way of accomplishing what I need to do.

20        I'm just thinking of alternatives.  I think I have other

21   means of doing it.  Just that I have to do it before a certain time

22   this morning.

23        THE COURT:  Right.  I understand that.

24        Well, why don't we try to do that.  We'll try to break at

25   about 3:00 o'clock.  We'll get the jury selected.  Take probably

1    only an hour for lunch, right around an hour.  And then pick right

2    back up and plow straight through without a break until 3:00 or

3    3:30 at the latest.  And you can do whatever you need to do.

4         MR. FOLEY:  That would be fine.  I really appreciate it,

5    Your Honor.

6         THE COURT:  Before we get the jury in here, there was one

7    motion that was -- I did not formally rule on that.  I wanted to

8    give you my ruling on prior to proceeding this morning.

9         There was an oral Motion to Dismiss in this case because

10   the -- the initial warrant and the charges were signed

11   electronically, were signed with an S slash Paul Cherry instead of

12   an actual signature.

13        Now, the Court received no briefing from either side on

14   this issue.  But nonetheless, the matter is still before me, and

15   I'll rule as follows.

16        Pursuant to Local Rule 5.6, that rule provides that

17   quote, "Documents may be filed, signed and verified by electronic

18   means to the extent and in the manner authorized by the CM ECF user

19   manual approved by the Court.  A document filed by electronic means

20   in compliance with this local rule constitutes a written paper for

21   the purposes of these local rules of the Federal Rules of Civil

22   Procedure and the Federal Rules of Criminal Procedure."  End quote.

23        In other words, the local rule incorporates by reference

24   what we called a CM ECF user manual.  So, what does the user manual

25   say as it relates to whether or not a judge can issue orders with

1  an electronic signature?

2          The CM ECF user manual, under the section entitled

3  Orders, provides quote, "That all signed orders shall be filed

4  electronically by either the office of the clerk or by a judge."

5          Now, the AO chambers handbook for CM ECF provides the

6  following guidance regarding signature of a judge.  Judges have

7  several options with regard to signing orders in the CM ECF system.

8  And that practice includes either the judge or an authorized member

9  of the chamber's staff can type S slash on an electronic version of

10  the order.

11          A judge may use an electronic image of his or her

12  signature instead of the S slash.  Such images can be added to a

13  word processing document before it is converted to a PDF or can be

14  stamped on a PDF document using Adobe Acrobat or that type of

15  software.

16          The courts also have the option of scanning the signed

17  order and having the imaged document electronically filed.

18          So, there is any number of ways that an order can be

19  signed electronically.

20          In my judgment, clearly, the local rules and the CM ECF

21  user's manual permits a judge and Magistrate judges to sign orders

22  electronically.  And the Court sees no reason to treat the warrant

23  in this case different from any other court order, because it is a

24  valid signature and contains a seal of the Court.

25          In reviewing the warrant, it's evident to me that

1   Magistrate Judge Cherry authorized the warrant to be issued, the

2   complaint to be issued, and then the seal of the Court was affixed

3   to that electronic signature.  And I believe that Special Agent

4   Mitten testified during the suppression hearing that he presented

5   the warrant to Magistrate Judge Cherry, who approved it.

6          Now, prior to CM ECF being part of the courts sort of a

7   lexicon, the Seventh Circuit was confronted with this very issue in

8   a case known as United States versus Juarez, 549 F.2d 1113, at

9   pages 1114.  It's a Seventh Circuit case from 1977.

10         And in that case, the Seventh Circuit did not invalidate

11  a search warrant that had been stamped -- where the signature had

12  been stamped by the Magistrate Judge but not signed by the judge.

13         Now, while the Seventh Circuit  in that case definitely

14  found that that procedure was not the proper procedure or not a --

15  one that should be regularly done, it nonetheless did not

16  invalidate the warrant.  Even though in that case, some 25 years

17  ago, the Seventh Circuit called that procedure into question, that

18  is decades prior to the institution of the CM ECF and the

19  electronic case filing and the whole electronic era for that

20  matter.

21         So, I don't believe the Seventh Circuit and the language

22  in Juarez would call into question the use of electronic signatures

23  by Magistrate Judge Cherry in the signing of the arrest warrant and

24  the complaint in this case.

25         So, for those reasons, the Motion to Dismiss based on the

1   electronic signature is denied.

2          Okay.  Dave, could you get the jury in here.

3          Is there any other issues we need to raise?

4          MR. FOLEY:  I --

5          THE COURT:  Why don't you wait until I give you the word,

6   Dave, I'm sorry.

7          Go ahead, Arlington.

8          MR. FOLEY:  I had my secretary check our e-mail and

9   e-filing, and I hadn't received a copy of the order from the Court

10  on the Motion to Suppress.

11         THE COURT:  That went out, I believe, on Friday.  We will

12  get you a copy of that.  Do you need it right now?

13         MR. FOLEY:  I'm just assuming the Court denied it.

14         THE COURT:  Yes.  The Court did deny it.  I was assuming

15  that you had received a copy of it.

16         But we will -- we issued a -- we issued an eight page

17  order on Thursday or Friday, I believe, denying the Motion to

18  Suppress.  And I'll give counsel a chance to read the order now if

19  you would like to.

20         MR. FOLEY:  That's -- I just needed to find out what the

21  Court's ruling was.  I can look at the order later.

22         And just for clarification, the number of peremptory

23  challenges?

24         THE COURT:  The defense will get 10 and the Government

25  gets six.

1      MR. FOLEY:  And very lastly, my client has indicated that

2  -- he had sent me a letter last week, and in the letter he had

3  indicated he's going to send a copy of it to the Court, and I don't

4  know if the Court's received it or not.  But certainly, I received

5  it.  Once again, bringing into question my effectiveness as his

6  attorney, and an indication in the letter that -- just kind of

7  paraphrasing, that I had not done some things that -- properly or

8  in an effective fashion at his Motion to Suppress hearing.

9      And that in my opinion, some of the phrasing was that he

10  knows why, implying that kind of I'm in cahoots with the Government

11  or something to that effect.  That's the implication I get.  And

12  he's indicated this morning he would like to address the Court

13  concerning that.

14      THE COURT:  All right.  Mr. Price, I'll give you two

15  minutes.

16      THE DEFENDANT:  I would like to ex parte, Your Honor.

17      THE COURT:  I'm going to ask the prosecutors and Mr.

18  Mitten if you could step out of the courtroom.

19      THE DEFENDANT:  Also my attorney.

20      THE COURT:  All right.  Mister -- Mr. Foley.

21      MR. FOLEY:  I have no problem.

22      (All attorneys and agent exit the courtroom.)

23      THE DEFENDANT:  Your Honor, it was some issues -- it was

24  some issues that I was trying to get my attorney to bring up.  He

25  never brought up to you as far as the day you asked him to stay and

1 talk to me. As soon as you left, he took off. I mean, we have

2 never even really sat down prepared. I had two subpoenas that was

3 filed by my first attorney which never were addressed. Certain

4 information, certain evidence that's supposed to been subpoenaed

5 from the Gary Police Department. We got it, but it was not

6 sufficient. Certain evidence from Orange County, Florida was not

7 supplied to us. They didn't hold up to the subpoenas.

8          And it's certain other things that Mr. Foley hadn't -- I

9 mean, he refused to do. I mean, it was things I was pointing out

10 to him the day you were hearing the motions. He refused to even

11 bring it to your attention. The motions he put together -- I mean,

12 he filed or me, he did not file them properly. To my beliefs, they

13 were inadequate, insufficient. And he did not really address the

14 issues I was trying to bring forth.

15          THE COURT: What are you asking me to do today?

16          THE DEFENDANT: Basically, I do not want Mr. Foley to

17 represent me. Basically, Your Honor, you forced me into taking him

18 a long time ago. You told me I would not get another attorney.

19          THE COURT: That's precisely what I told you --

20          THE DEFENDANT: You told me --

21          THE COURT: Don't interrupt.

22          If I recall the history here, you had John Martin as you

23 lawyer. You discharged Mr. Martin. You then proceed -- wanted to

24 proceed pro se, which is, of course, your right. You proceeded pro

25 se. And then you advised the Court that you wanted a second

1  attorney.  And we didn't have to provide you with a second

2  attorney.  But we did provide you with a second attorney, Mr.

3  Foley, who proceeded to file a series of motions that I believe are

4  well founded, that were -- made sense, that were beneficial to you.

5  And now, you want to dismiss Mr. Foley.

6       And I believe I told you a month or so ago that I wasn't

7  going to appoint you another lawyer because I have all the

8  confidence in the world that if I appointed you a third lawyer, a

9  month or two from now, we would be in the same position we're in

10 right now.  You would again be dissatisfied.  That's my prediction.

11      So, at some point, the Court has the right to put an end

12 to it.  And as a result, Mr. Foley is your lawyer.  And if you

13 would -- you can proceed pro se, but I believe you told me that you

14 didn't want to proceed pro se.  You didn't want to represent

15 yourself.  And that instead, you wanted to proceed with Mr. Foley.

16      And so, that's what we have done.  It is now ten minutes

17 after 9:00 on the morning of your trial.  And you are again raising

18 the same issue.  And I will not let you manipulate the system.

19 Okay.

20      THE DEFENDANT:  I understand.  I'm not trying to

21 manipulate the system.  I'm trying to be represented effectively.

22      THE COURT:  I have found that Mr. Foley's representation

23 of you has been totally effective.  I have no quarrel with it.  So,

24 we're going to proceed this morning.  We have -- I have no choice.

25 I have 40 jurors sitting out there, ready to start with this trial.

1    And -- but I'll hear you out.  You can make whatever record you
2    want to make.
3              THE DEFENDANT:  I was about -- I mean, you told me not to
4    interrupt you, and you interrupted me.
5              THE COURT:  Now, I'm giving you the opportunity.
6              THE DEFENDANT:  Your Honor, I understand you might think
7    I'm manipulating the system.  All I'm asking for is a fair and
8    impartial trial.  It seems like I'm not going to be able to get it.
9    You forced me to take Mr. Foley.  You told me -- you know I don't
10   know anything about going pro se.  You told me I'd be stupid to go
11   pro se.
12             THE COURT:  I don't think it's a good idea.
13             THE DEFENDANT:  I know it's not a good idea, but that's
14   the best thing I can do.  He not going to represent me effective.
15   I might as well try it myself.  I'm getting railroaded anyway.  So,
16   I might as well do it myself.  So, I'd rather represent myself pro
17   se.  And if you not going to give me no time to prepare, I think
18   that's not fair.
19             THE COURT:  No.  See, here is the problem.  You already
20   told me you didn't want to proceed pro se.  You've already made
21   that abundantly clear to me about a month ago.  And we had an
22   extensive hearing on that.  So, on the morning of trial, you're not
23   going to come in here and tell me that you want to proceed pro se,
24   and then when I deny it, complain that you haven't had time to
25   prepare.

         1              You know, that's -- you're not going to run my courtroom.

         2              THE DEFENDANT:  I'm not trying to run your courtroom.

         3              THE COURT:  So, do you have anything else you want to

         4       add?

         5              THE DEFENDANT:  I haven't had time to prepare with him.

         6       He don't -- he run off.  As soon as you left, he left.  We haven't

         7       -- we haven't sat down a total of a hour since he been my attorney.

         8       One hour, total.  How can we prepare sufficiently with that much

         9       time?  Everything I bring to his attention, he don't want to hear

        10       it or he just totally regard it.  I'm pointing stuff here last

        11       Friday, whatever that was, okay, he doesn't bring it up.  He

        12       mentioned nothing to you about the subpoenas.  This is probably

        13       your first time hearing about the subpoenas, or maybe the second

        14       time.  They haven't been honored.  I mean, there's certain

        15       evidence.  We haven't had any time to prepare.  Now, you want to

        16       run me straight to trial.

        17              THE COURT:  This case has been pending for well over a

        18       year, I believe.

        19              THE DEFENDANT:  No, it hasn't.

        20              THE COURT:  It was indicted some time in early '04.

        21              THE DEFENDANT:  September.

        22              THE COURT:  All right.  So, it's been pending for about

        23       nine months.  That is time enough.

        24              And we're going to proceeded today with the trial.  I

        25       don't have any choice, Mr. Price.

May 2nd 2005

1    THE DEFENDANT:  I just want the record to reflect that
2    I'm -- I'm -- I would go to trial, but I'm protesting and whatever
3    necessary.  I mean, it's just a railroad.
4    THE COURT:  You're free to do that.  And that's what
5    you're -- that's what you're doing right now.  Your objection is
6    noted.  But again, it is the morning of trial.  I have 40 or 50
7    people sitting outside who have come here to be jurors in the case.
8    And we're going to proceed.  And we're going to proceed with Mr.
9    Foley as your attorney because a month ago, you informed me that
10   you did not want to represent yourself.
11   THE DEFENDANT:  You just about forced me into doing that,
12   Your Honor.
13   THE COURT:  Well, I -- we might have to agree to disagree
14   on that.  You're a grown man.  You can make your own choice.  And
15   you told me -- I told you I don't think it's a very good idea
16   representing yourself.
17   But it's your -- it was your absolute right to do that.
18   And you told me that you wanted Mr. Foley as your lawyer.  So --
19   THE DEFENDANT:  Not by choice.
20   THE COURT:  Dave, let's get the lawyers back in here and
21   we're going to proceed.
22   (All attorneys and agent enter.)
23   THE DEFENDANT:  This is what you all do to everybody.
24   THE COURT:  What did you say, Mr. Price?
25   THE DEFENDANT:  I said that's what you all do to

1    everybody.

2            THE COURT:  Mr. Price, let me tell you something.

3            I don't want to hear anything like that anymore.

4    Do you understand me?

5            All right.  Dave, get the jury in here.

6            (Prospective jurors enter.)

7            THE COURT:  You can be seated.

8            All set.

9            Good morning everyone.  It's a pleasure to welcome you as

10   jurors to the Hammond Division of the United States District Court

11   for the Northern District of Indiana.

12           My name is Phil Simon, and I'm the judge who will be

13   presiding in this trial.

14           And today we'll be trying a criminal case which comes

15   before you by reason of an indictment that charges the Defendant

16   with a violation of Federal law.

17           And the indictment charges the Defendant, Benjamin Price,

18   with the crime of possessing a firearm after having previously been

19   convicted of a felony offense.

20           Now, the Defendant has pled not guilty to that offense.

21   And his plea of guilty raises fact issues to be tried in this case

22   by a jury of his peers.

23           Now, the indictment that has been brought against the

24   Defendant is only an accusation, and nothing more.  It is not

25   evidence and affords no inference in any way, shape or form of

1    guilt.  It is merely the formal method of charging the Defendant,

2    and the charge must be proven in a trial beyond a reasonable doubt.

3         All right.  Is the Government ready to proceed?

4         MR. LANTER:  Yes, Your Honor.

5         THE COURT:  Is the Defendant ready to proceed?

6         MR. FOLEY:  Yes, Your Honor.

7         THE COURT:  All right.  Mr. Lanter, I'll give you an

8    opportunity, if you would, to introduce yourself and the gentlemen

9    sitting with you.

10        MR. LANTER:  My name is Dean Lanter.  I am an Assistant

11   United States Attorney.  I represent the United States Government

12   in this matter along with Assistant United States Attorney Nicholas

13   Padilla and ATF Special Agent Daniel Mitten.

14        THE COURT:  All right.  Mr. Foley, I'll give you an

15   opportunity to introduce yourself and your client.

16        MR. FOLEY:  Good morning, ladies and gentlemen.  My name

17   is Arlington Foley.  I am a former deputy prosecutor many years ago

18   and a defense attorney from Merrillville, Indiana.  And this is my

19   client, Benjamin Price, who is the Defendant in this case.

20        THE COURT:  All right.  Thank you.

21        All right.  Ladies and gentlemen, the Government and the

22   Defendant have a right to have this case tried by a qualified, fair

23   and impartial jury.  A qualified and impartial jury is one which is

24   responsible and capable, and which will without fear, favor, bias,

25   prejudice, sympathy or passion, objectively hear and decide the

1   issues to be tried, and render its verdict solely on the evidence

2   presented at this trial and the law applicable to the case given to

3   you by the Court.

4        Now, a juror's qualification and impartiality cannot be

5   assumed without some inquiry.  And the inquiry which we are about

6   to undertake is known as the Voir Dire examination.

7        Now, the purpose of this examination, which is really

8   just a fancy term, where we'll be asking you questions in an effort

9   to solicit some information from you, but the purpose of this is

10  for the parties to develop the truth about a juror's competency and

11  his or her frame of mind to do his or her sworn duty in accordance

12  with the juror's oath.

13       Now, your answers to the questions which I am about to

14  ask will enable -- will enable the parties to determine whether a

15  juror should be excused for cause, either on my motion or upon

16  motion of either of the parties.

17       Now, it will also allow counsel to make intelligent use

18  of what are known as peremptory challenges.  And a peremptory

19  challenge is a challenge to a juror that the law gives to each

20  side, and it can be exercised without giving any reason whatsoever.

21       It's very important, therefore, that your answers to the

22  questions that are asked of you be complete and truthful.  Each of

23  you is under a compulsion to disclose upon a general question any

24  and all matters which might tend to disqualify you for any reason

25  from sitting on this case.  While the sweep of the questions may be

1    broad, it is your affirmative duty to honestly and conscientiously

2    answer the real implications of the questions asked, and to make

3    your answers as full and complete as possible.

4         Any false or misleading answers may result in the seating

5    of a juror who would have been stricken either for cause or through

6    the use of one of these peremptory challenges that I've explained

7    to you.  And that could really lead to a miscarriage of justice.

8         So, it's really important that each and every one of you

9    think about the questions that are asked of you, and be as honest

10   and forthright as you possibly can.

11        Now, I don't want you to wait until after you've been

12   selected as a juror to disclose something that should have been

13   known -- or should have been made known at the time that a question

14   was asked of you.

15        Now, the questions that are going to be asked of you will

16   be asked, most of them, to you collectively.  But you should

17   consider it as if we were asking the questions to you individually.

18   And do your level best to answer the questions as honestly and as

19   forthrightly, as I've mentioned, as possible.

20        All right.  This lady sitting here is Noel Collins and

21   she's our Deputy Clerk, and she's going to administer an oath to

22   the entire panel so that the answers to the questions that you give

23   will be under oath.  So, if everyone could stand up and raise your

24   right hand.

25        (Panel sworn.)

1          THE COURT:  All right.  Noel, if you could please call
2     twelve names into the jury box.
3          THE CLERK:  Nancy Veselica.
4          Dean Steinkraus.
5          Michelle Mastey.
6          Candice Baker.
7          Susan Owens.
8          Ruby Wesley.
9          Diane Webber.
10          Rosemary Lopez.
11          Joel Jones.
12          Tricia Roper.
13          Charles Greiner, III.
14          Alan Pearson.
15          THE COURT:  All right.  I'll start just asking each of
16     you some individual questions.  And then we'll ask some more
17     general questions to everybody.
18          EXAMINATION BY THE COURT:
19          OF JUROR VESELICA:
20     Q    But we'll start with you, Miss -- Miss Veselica is it?
21     A    Correct.
22     Q    If you would, please state your full name and tell us what
23     city or town you reside in?
24     A    Nancy Moran Veselica.  Chesterton, Indiana.
25     Q    How long have you lived over in Chesterton?

```
 1   A   About 13 years.

 2   Q   Are you employed, ma'am?

 3   A   I help my husband with a home business, that's about it.

 4   Q   I take it you are married then?

 5   A   Yes.

 6   Q   Do you have any children?

 7   A   Two.

 8   Q   Are they still young kids with you, I take it?

 9   A   Teenagers.

10   Q   Okay.  And what is the nature of your husband's occupation?

11   A   He's a trader at the Board of Trade.

12   Q   And how long has he been a trader?

13   A   Long time.  Since college.  I mean, I guess 30 years.

14   Q   Okay.  I take it you own your own home?

15   A   Yes.

16   Q   How long have you lived in Indiana?

17   A   13 years.

18   Q   What is your educational background?

19   A   The highest, you mean?  I have a Masters in communications.

20   Q   All right.  Where did you -- I take it you have an

21   undergraduate degree as well?

22   A   Yes.

23   Q   Where did you get that from and in what discipline?

24   A   John Carroll University in Cleveland.  Major in humanities.

25   Q   And your Masters degree is from where?
```

1    A    Northwestern University.

2    Q    And it's in what discipline, I'm sorry?

3    A    Communications.

4    Q    Now, have you worked outside -- outside of the sort of helping

5    in your husband's endeavor?  Have you had some other job sometime

6    in the recent past?

7    A    Well, he started re -- real estate development.  I handle all

8    the marketing and advertising for that.  And then I built a home.

9    And now, I'm helping him with a small home building business.  And

10   now, I'm also pursuing a career in voice over work.

11   Q    He does that in addition to being a trader?

12   A    Yes.

13   Q    Now, do you belong to any clubs or organizations?

14   A    Tri Kappa sorority and a country club, if that's what you

15   mean.

16   Q    Do you have any military experience?

17   A    No.

18   Q    What kind of things do you like to read, magazines,

19   newspapers?  Give me a flavor for that?

20   A    Lot of different books.  I don't get a chance to read that

21   much, but I read the Chicago Tribune, magazines, whatever is there

22   when I have a chance.  I'm usually very busy.  So, I don't get a

23   chance to do that much.

24   Q    What kind of things do you like to watch on TV?

25   A    The news.

1  Q    Do you like any -- is there any particular fiction type show

2  that you like?

3  A    I liked "Seinfeld," but it's not on anymore.  I really don't

4  get a chance to watch much TV either.

5  Q    What do you like to do in your spare time?

6  A    I do a lot of charity work.  In the summer, I play golf.  I

7  also take voice lessons.  I practice singing.  I sing at church.

8  Q    Let me ask you this.  If you're selected as a juror in this

9  case, will you be able to render a verdict solely on the evidence

10 that's presented in this courtroom and on the law as I give it to

11 you?

12 A    I think so.

13 Q    What makes you hesitate on that?

14 A    Well, I guess I would think I would want to follow the law as

15 well.  I've never been on a jury.

16 Q    I guess what I'm asking you is will you be able to decide this

17 case solely based on the evidence that you hear from witnesses that

18 will come into this courtroom and documents that have been

19 admitted, and follow the law as I give it to you?

20 A    Yes, I think so.

21 Q    Will you be able to do that?

22 A    Yes.

23 Q    Do you know of any reason why you can't sit as a fair and

24 impartial juror in this case?

25 A    No.  I don't think so.

```
 1   Q    Okay.  Will you pass the mic down to --
 2        EXAMINATION BY THE COURT:
 3        OF JUROR STEINKRAUS:
 4   Q    Mr. Steinkraus, is it, sir?
 5   A    Yes.
 6   Q    State your full name and tell us what city or town you reside
 7   in?
 8   A    Dean Marvin Steinkraus.  I live in Hammond, Indiana.
 9   Q    How long have you lived here in Hammond?
10   A    All my life.
11   Q    Are you married, sir?
12   A    No.
13   Q    Are you employed?
14   A    No.
15   Q    Have you been employed in the past?
16   A    Oh, yes.
17   Q    What was -- as -- on your last job, what did you do?
18   A    Grounds keeper.
19   Q    Is that for the City of Hammond?
20   A    No.
21   Q    Do you have any children?
22   A    No.
23   Q    How long have you -- you said you lived here in Hammond?
24   A    All my life.
25   Q    Basically your whole life?
```

```
 1   A    Yes.
 2   Q    What is the extent of your educational background?
 3   A    12th grade high school.
 4   Q    Did you go to high school here in Hammond?
 5   A    Yes.
 6   Q    Do you belong to any clubs or organizations?
 7   A    No.
 8   Q    What do you like to do in your spare time?
 9   A    Work in the yard, watch TV, read, listen to music.
10   Q    What -- do you own your own home?
11   A    No.
12   Q    You rent where you're at?
13   A    No.  Right now I'm living with my mother.
14   Q    Okay.  And what kind of things do you like to watch on TV?
15   A    Movies, sitcoms, the news, history channel, things like that.
16   Q    Okay.  What kind of things do you like to read?
17   A    I haven't done a real lot of reading lately.  I read the
18   newspaper every day.  I haven't read many books lately, no.
19   Q    Let me ask you, sir, if you're selected as a juror, will you
20   be able to render a verdict solely on the evidence that's presented
21   in this courtroom, and on the law as I give it to you?
22   A    Yes.
23   Q    Do you know of any reason, any reason whatsoever, why you
24   can't be a fair and impartial juror in this case?
25   A    No.
```

```
 1   Q    All right.  Thank you, sir.
 2            EXAMINATION BY THE COURT:
 3            OF JUROR MASTEY:
 4   Q    All right.  Miss Mastey, is it?
 5   A    Yes.
 6   Q    State your full name and tell us where you reside?
 7   A    Michelle Ann Mastey.  Highland, Indiana.
 8   Q    And how long have you lived in Highland?
 9   A    35 years.
10   Q    Are you employed?
11   A    Yes, I am.
12   Q    Where do you work at?
13   A    A law firm.
14   Q    What law firm?
15   A    Hilbrich Law Firm in Highland.
16   Q    And what is the nature of that law firm?  What kind of work do
17   they do?
18   A    What I do or what they do?
19   Q    What the law firm does?
20   A    General practice.  They -- they basically do more so of
21   medical malpractice, personal injury, estate work.
22   Q    Do they do any criminal work?
23   A    Yes, they do.
24   Q    What kind of criminal work?
25   A    Felony, misdemeanor, traffic, and that's what I do.
```

1   Q   Mostly on the defense side obviously?

2   A   Yes.

3   Q   Obviously, on the defense side.

4           Any in Federal Court?

5   A   No.

6   Q   All state court?

7   A   Correct.

8   Q   And are you married?

9   A   No.

10  Q   Have you ever been married?

11  A   No.

12  Q   Can you tell me what kinds of things you do for the law firm?

13  A   Outside of misdemeanor charges and some felony charges, I deal

14  with traffic tickets. A lot of administrative work. Excuse me.

15  We represent the Town of Griffith. So, I do a lot of work for the

16  Town of Griffith. And also the Town of Kouts.

17  Q   Now, you understand that in Federal Court, and in any Court,

18  you have to -- you have to follow the law as I give it to you. And

19  will you be able to set aside the issues or facts or things that

20  you've learned on your job, and decide this case based upon the

21  evidence that's presented in this courtroom, and on the law as I

22  give it to you?

23  A   I believe I can, yes.

24  Q   Is -- when people say "I believe I can," it makes me a little

25  nervous. I mean, is there any question in your mind that you'll be

```
 1   able to do that?
 2   A    No, there is no question.
 3   Q    What do you like to do in your spare time?
 4   A    I do a lot of outdoor activities, roller blading, stuff like
 5   that.
 6   Q    What kind of things do you like to watch on TV?
 7   A    Like "CSI," criminal movies, dramas.
 8   Q    All right.  Ma'am, do you know of any reason, any reason
 9   whatsoever, why you can't be a fair and impartial juror in this
10   case?
11   A    Yeah, I do.
12   Q    Why is that?
13   A    My brother has -- was convicted of a felony and served time,
14   and it had to do with a firearm.  And I didn't feel that he got
15   treated a fair trial or fairly.
16   Q    Okay.
17   A    And so, I --
18   Q    Do you think that would prevent you from being fair and
19   impartial?  That's completely understandable.
20   A    I think that -- no, it wouldn't judge me on somebody else's
21   life.  Every case is different.  But I do have a sore spot for
22   that.
23   Q    All right.  I'm going to excuse you, ma'am.
24   A    Okay.
25              THE COURT:  Thank you.
```

1    Call another name, will you, Noel.

2    THE CLERK:  Barbara Ciesco.

3    EXAMINATION BY THE COURT:

4    OF JUROR CIESCO:

5    Q    All right.  We'll start with you -- Miss Ciesco, is it?

6    A    Ciesco.

7    Q    State your full name and tell us where you reside?

8    A    My name is Barbara J. Ciesco.  Barbara Jean.  And I reside in

9    Griffith.

10   Q    And how long have you lived in Griffith?

11   A    19 years.

12   Q    Are you employed?

13   A    Yes, I am.

14   Q    Where do you work at?

15   A    Strack & Van Til's.

16   Q    And what do you do there?

17   A    I am a cashier.

18   Q    And how long have you held that job?

19   A    Nine years.

20   Q    Are you married?

21   A    Yes, I am.

22   Q    Do you have any children?

23   A    Two.

24   Q    And how old are they?

25   A    21 and 19.

```
 1   Q    Is the 21 year old still with you or is he --
 2   A    He's at Purdue.
 3   Q    He's down at Purdue?
 4   A    Uh-huh.
 5   Q    Is your husband employed?
 6   A    He is a cab driver.
 7   Q    And where does he work at?
 8   A    Howard Cab.
 9   Q    Here in Hammond?
10   A    Yes.
11   Q    Okay.  What is the extent of your education, ma'am?
12   A    High school.
13   Q    And how about your husband's, what is the extent of his
14   education?
15   A    I want to say an Associate's.
16   Q    Do you belong to any clubs or organizations?
17   A    No, I don't.
18   Q    Do you have any military experience?
19   A    No.
20   Q    What kind of newspapers or magazines do you like to read?
21   A    I read The Times and the Chicago Tribune.
22   Q    How about things on TV, what do you like to watch on TV?
23   A    A lot of criminal.
24   Q    Shows relating to --
25   A    "Law and Order."  I'm a big "Law and Order" fan.
```

1    Q    And what do you like to do in your spare time?

2    A    Garden.  I am a gardener.

3    Q    Ma'am, if you're selected as a juror in this case, will you be

4    able to render your verdict solely on the evidence that's presented

5    in this courtroom and on the law as I give it to you?

6    A    Yes, I will.

7    Q    Do you know of any reason whatsoever why you cannot sit as a

8    fair and impartial juror in this case?

9    A    No, I don't.

10   Q    I know you mentioned that you like to watch "Law and Order."

11   At the risk of stating the obvious, you -- I hope you realize that

12   that is --

13   A    Fictional.

14   Q    Yeah.  And what you see in a real court, sitting here in a --

15   in a Federal District Court, is altogether different from what you

16   might see on TV.

17   A    Yes.

18   Q    I take it you'll be able to sort of ignore that kind of --

19   A    Oh, yeah.

20   Q    -- stuff that you watch on TV and take it for what it's worth

21   and decide this case based, obviously, on the facts and the

22   witnesses and the people that are presented in here?

23   A    Yes.

24   Q    Any doubt about that?

25   A    No.

```
 1   Q    Okay.  Thank you, ma'am.

 2   A    You're welcome.

 3   Q    Pass the microphone down.

 4             EXAMINATION BY THE COURT:

 5             OF JUROR BAKER:

 6   Q    Miss Baker?

 7   A    Yes.

 8   Q    Please state your full name and tell us where you reside?

 9   A    My name is Candice Ann Baker.  And I reside in Schererville,

10   Indiana.

11   Q    How long have you lived in Schererville?

12   A    Schererville, I lived for three years.

13   Q    How about before that?

14   A    Crown Point, Indiana.

15   Q    All right.  Are you employed, ma'am?

16   A    Yes, I am.

17   Q    Where do you work at?

18   A    I work at Little Company of Mary Hospital in Evergreen Park,

19   Illinois.

20   Q    What do you do for the hospital?

21   A    I am a manager of the business office, collections, billing.

22   Q    How long have you held that job?

23   A    Three years.

24   Q    What did you do before that?

25   A    Same thing.
```

1   Q    At a different hospital?

2   A    Different hospital.

3   Q    I take it you have -- do you have supervisory

4   responsibilities?

5   A    Oh, yes.  I have 41 people who report to me.

6   Q    And is that a -- is that a union shop?

7   A    No, it is not.

8   Q    What is the extent of your education?

9   A    Some college, some business classes.

10  Q    Did you have a year of college, two years of college?

11  A    One semester.

12  Q    One semester.  And are you -- did you -- are you married?

13  A    Yes, I am married.

14  Q    Is your husband employed?

15  A    Yes, he is.

16  Q    What does he do?

17  A    He is a construction laborer.

18  Q    And do you have any children?

19  A    Yes, we do.  We have three.

20  Q    And what are their ages?

21  A    I have a 24 year old.  I have a 19 -- 20 year old.  She just

22  turned 20.  And a 16 year old.

23  Q    What's your 24 year old do?

24  A    She works at the hospital with me.

25  Q    And did she go to college?

```
 1   A    She went to some and quit.

 2   Q    What does she do at the hospital?

 3   A    She is a unit secretary in the emergency room.

 4   Q    And how about your 20 year old?

 5   A    She plays softball for Purdue in West Lafayette.

 6   Q    I didn't hear what you said.

 7   A    She plays softball for Purdue.

 8   Q    She goes to college at Purdue and plays on the softball team?

 9   A    Yes, she does.

10   Q    What do you like to do in your spare time?

11   A    Watch softball.

12   Q    And what kind of things do you like to watch on TV?

13   A    I watch a lot of "CSI," forensic files, things like that.

14   Q    Ma'am, if you're selected as a juror in this case, will you be

15   able to render your verdict solely on the evidence that's presented

16   in this courtroom, and on the law as I give it to you?

17   A    Yes, sir, I will.

18   Q    Do you know of any reason whatsoever, why you can't be a fair

19   and impartial juror in this case?

20   A    No, I do not.

21   Q    All right.  Thank you, ma'am.

22              EXAMINATION BY THE COURT:

23              OF JUROR OWENS:

24   Q    Miss Owens?

25   A    Yes.
```

```
 1   Q     Okay.  Please state your full name and tell us where you
 2   reside?
 3   A     Susan K. Owens.  Portage Indiana.
 4   Q     And how long have you lived in Portage?
 5   A     About 39 years.
 6   Q     Are you employed, ma'am?
 7   A     No.
 8   Q     Are you married?
 9   A     Yes.
10   Q     Is your husband employed?
11   A     Yes.
12   Q     What does he do?
13   A     He works for the steel mill.
14   Q     And how long has he been at the steel mill?
15   A     38 years.
16   Q     Which mill does he work for?
17   A     Well, ISG.
18   Q     Used to be Bethlehem?
19   A     Yeah.
20   Q     Okay.  And what does he do for ISG?
21   A     He is a millwright.  A millwright.
22   Q     Do you have any children?
23   A     Yes, I do.
24   Q     How many children?
25   A     Two.
```

1   Q   And what are their -- roughly their ages and --

2   A   32, a boy.  And 26, a girl.

3   Q   And what does your boy do?

4   A   He is a lathe operator.

5   Q   Is he at the mills?

6   A   No.  Rohl Center.  It's a small independent in Portage.

7   Q   And how about your daughter?

8   A   My daughter is a teller at a bank.

9   Q   What do you like to do in your spare time?

10   A   I like to garden.

11   Q   Do you belong to any clubs or organizations?

12   A   No.

13   Q   What kind of things, magazines, newspapers, do you read?

14   A   I read The Post and The Times sometime.  And magazines, well,

15 I take Midwest Living.

16   Q   How about TV, what do you like to watch on TV?

17   A   Gardening, some discover.

18   Q   The discovery channel?

19   A   Uh-huh.

20   Q   All right.  Ma'am, if you're selected as a juror in this case,

21 will you be able to render a verdict solely on the evidence that's

22 presented in this courtroom, and on the law as I give it to you?

23   A   Yes.

24   Q   Do you know of any reason whatsoever why you can't be a fair

25 and impartial juror in this case?

1    A    No.

2    Q    All right.  Thank you, ma'am.

3         EXAMINATION BY THE COURT:

4         OF JUROR WESLEY:

5    Q    Miss Wesley?

6    A    Yes.

7    Q    Yeah, if could you please state your full name and tell us

8    where you reside?

9    A    Ruby Lee Wesley.  Gary, Indiana.

10   Q    And how long have you lived in Gary?

11   A    23 years.

12   Q    Are you employed, ma'am?

13   A    No, I'm not.

14   Q    Are you married?

15   A    Yes, I am.

16   Q    Is your husband employed?

17   A    No, he's retired.

18   Q    Where did he work before he retired?

19   A    Bulkmatic Trucking Company.

20   Q    Was he a truck driver?

21   A    Yes.

22   Q    Was that an over-the-road trucker?

23   A    Yes.

24   Q    And how many years did he work at that outfit?

25   A    I think it was like 35 years, 36 years.

| | | |
|---|---|---|
| 1 | Q | Now, do you have any children? |
| 2 | A | Yes. |
| 3 | Q | How many children? |
| 4 | A | Two. |
| 5 | Q | And how old are they? |
| 6 | A | 43 and 39. |
| 7 | Q | What does your 43 year old do? |
| 8 | A | She is a teacher's assistant. |
| 9 | Q | Okay. |
| 10 | A | -- school. |
| 11 | Q | How about your 39 year old? |
| 12 | A | She goes to -- well, she doesn't go, but she's a member of |
| 13 | | LCAR. |
| 14 | Q | What is that? |
| 15 | A | Lake County for the retarded. |
| 16 | Q | Okay.  She is disabled, I take it? |
| 17 | A | Not really.  She has a disability, a learning disability.  But |
| 18 | | she works at Cracker Barrel two days -- three days a week. |
| 19 | Q | Okay.  What do you like to do in your spare time, ma'am? |
| 20 | A | Watch TV. |
| 21 | Q | Okay.  What kind of things do you watch on TV? |
| 22 | A | "Price Is Right."  I mean, the game shows, the judges, like |
| 23 | | Judge Matthews, Joe Graham, things like that, and the variety. |
| 24 | Q | How about magazines, newspapers, do you get any on a regular |
| 25 | | basis? |

```
 1    A    I get the Post Tribune.

 2    Q    Do you read that regularly?

 3    A    Sort of glance through it.  Not really hard reading, you know.

 4    Just sort of look at the pictures and keep going.

 5    Q    Okay.  Ma'am, if you're selected as a juror, will you be able

 6    to render a verdict solely on the evidence presented and the law as

 7    I give it to you?

 8    A    Yes.

 9    Q    Do you know of any reason whatsoever why you can't be a fair

10    and impartial juror in this case?

11    A    No.

12    Q    If you could hand the mic to Dave.

13              THE COURT:  We'll start in the back row on this side.

14              Thank you, Miss Wesley.

15              EXAMINATION BY THE COURT:

16              OF JUROR WEBBER:

17    Q    Miss Webber, is it?

18              If you would, please state your full name and tell us

19    where you reside?

20    A    Diane Webber.  Valparaiso.

21    Q    How long have you lived out in Valpo?

22    A    Lifetime.

23    Q    Are you employed?

24    A    Yes, I am.

25    Q    What do you do?
```

1    A    I am a bailiff for Porter Superior Court, Porter County
2    Government.
3    Q    Which judge do you work for?
4    A    Chidester.
5    Q    And how long have you been a bailiff at the court there?
6    A    17 years.
7    Q    And what are your duties and responsibilities as a bailiff in
8    the state court?
9    A    Administrative.  Set all the court hearings, work with the
10   juries, and so on.
11   Q    Now, Judge Chidester, is his docket predominantly civil,
12   criminal or a mixture?
13   A    Mixture.
14   Q    Is it weighted one way or the other you would say?
15   A    I would probably say maybe 80 percent criminal, 20 percent
16   civil.
17   Q    Now, you're essentially his scheduler, is that fair to say?
18   A    Yes.
19   Q    Now, do you sit in on the proceedings as well?
20   A    Yes.
21   Q    Through the trials?
22   A    Yes.
23   Q    And what is the extent of your education?
24   A    High school, some college.
25   Q    And in college, did you have any area of discipline that you

```
1    focused on?

2    A    Business.

3    Q    Are you married?

4    A    Yes.

5    Q    Is your husband employed?

6    A    Yes, he is.

7    Q    What does he do?

8    A    He is an ironworker.

9    Q    Does he work out of a union?

10   A    Yes.

11   Q    And where is he assigned to, just various jobs?

12   A    Independent contractor, yes.  Various, wherever they put him.

13   Q    Okay.  Do you have any children?

14   A    Yes.  One.

15   Q    And how old is that child?

16   A    She is 11.

17   Q    And what do you like to do in your spare time?

18   A    I like to travel, walk, spend time with my family.

19   Q    How about reading, what kind of things do you like to read?

20   A    Post Tribune, Sunset magazine.

21   Q    Now, in your job at Porter Superior Court, obviously, you see

22   things all the time insofar as trials, civil, criminal trials, is

23   that correct?

24   A    Correct.

25   Q    Are you going to be able to sort of set aside that experience?
```

```
 1   A    Sure.
 2   Q    And, you know, really listen to the evidence in this court,
 3   and decide the case based on the evidence that's presented in the
 4   courtroom and on the law as I give it to you?
 5   A    Sure will.
 6   Q    Is there any -- any doubt about that at all?
 7   A    No.
 8   Q    Do you know of any reason why you can't be a fair and
 9   impartial juror in this case?
10   A    No, I don't.  The only thing is, is I am his only bailiff, and
11   we do have juries coming up too as well.
12   Q    Well, then I'm sure he appreciates my problem?
13   A    Yes, he would.
14   Q    Okay.  You can pass the microphone down.
15            EXAMINATION BY THE COURT:
16            OF JUROR LOPEZ:
17   Q    Miss Lopez, is it?
18   A    Yes.
19   Q    Would you please state your full name and tell us where you
20   reside?
21   A    Rosemary K. Lopez.  And I live in Hobart.
22   Q    And how long have you lived in Hobart?
23   A    40 years.
24   Q    Are you employed, ma'am?
25   A    Yes, I am.
```

1    Q    Where do you work at?

2    A    I work for Roby Insurance.  It's an auto insurance company.

3    Q    And what do you do for them?

4    A    I process new policies.

5    Q    How long have you had that job?

6    A    Ten years.

7    Q    Are you married?

8    A    No.

9    Q    Have you ever been married?

10   A    Yes, I have.

11   Q    How long have you been divorced?

12   A    Oh, about 20 years.

13   Q    Okay.  Do you have any children as a result?

14   A    I have three children.

15   Q    How old are your children?

16   A    41, 38 and 35.

17   Q    And what does your 41 year old do?

18   A    He works for a print shop.

19   Q    And how about the 38 year old?

20   A    He is assistant manager at Big Lots.  And my daughter works

21   for Excel.

22   Q    Okay.  What do you like to do in your spare time?

23   A    I garden and I walk.

24   Q    What is the extent of your education?

25   A    High school.

1    Q    And do you belong to any particular clubs or organizations?

2    A    No, I do not.

3    Q    Do you have any military experience?

4    A    No.

5    Q    What do you like to do -- do you watch any TV and, if so, what

6    kind of TV do you watch?

7    A    I like to watch like "Survivor," "Apprentice," and of course,

8    "CSI."

9    Q    And how about as far as magazines, newspapers, do you get any

10   on a regular basis at your home?

11   A    I read the Post Tribune every day, and I have Home and Garden,

12   Family Circle, those magazines.

13   Q    Do you own your own home?

14   A    Yes, I do.

15   Q    Ma'am, if you're selected as a juror, will you be able to

16   render a verdict solely on the evidence that's presented in this

17   courtroom and on the law as I give it to you?

18   A    Yes, I will.

19   Q    Do you know of any reason whatsoever why you can't be a fair

20   and impartial juror in this case?

21   A    No, I do not.

22   Q    All right.  Thank you, ma'am.

23             EXAMINATION BY THE COURT:

24             OF JUROR JONES:

25   Q    Mr. Jones, is it?

1    A    Yes.  Yes, my name is Joel Jones.  I live in Dyer, Indiana.

2    Q    How long have you lived down in Dyer?

3    A    About 31 years.

4    Q    Are you employed, sir?

5    A    Yes, I work for ISG Steel, Indiana Harbor.

6    Q    Okay.  How long have you worked over at ISG?

7    A    I worked there for about 42 years under different companies

8    that have owned it, but I've been at the same place for 42 years.

9    Q    The predecessor was Bethlehem -- is it Bethlehem?

10   A    No, it's LTV, and then it was J & L, then it was Youngstown.

11   So far.

12   Q    What do you do there?

13   A    I am a -- a shift manager for quality control and the chem

14   lab.

15   Q    Are you married, sir?

16   A    Yes.

17   Q    Is your wife employed?

18   A    Yes, she is a preschool teacher.

19   Q    And how long has she done that for?

20   A    She did that for about 29 or 30 years.

21   Q    Okay.  What is the extent of your education, sir?

22   A    Just high school, and a little bit of training through work.

23   Q    Okay.  Do you have any children?

24   A    Yes, I have one.  She's 38.  She's an office manager for a --

25   a manufacturing company.

```
 1   Q    What do you like to do in your spare time?
 2   A    Like to garden and some -- I guess woodworking and watching TV
 3   and reading.
 4   Q    Have you ever served in the military?
 5   A    No.
 6   Q    And when you say watch TV, what kind of things do you like to
 7   watch?
 8   A    Well, I guess "Law and Order" and -- and "CSI" and those type
 9   of, you know, shows mostly.
10   Q    And as far as reading, what kind of things do you like to
11   read?
12   A    Mostly mysteries and -- and also, I read the Bible quite
13   often.  And also, I like to study the Bible on the internet and
14   look up different things about it.
15   Q    Okay.  Do you belong to any clubs or organizations?
16   A    Just the United Steelworkers 1011.
17   Q    Sir, if you're selected as a juror, will you be able to render
18   a verdict solely on the evidence that's presented in this courtroom
19   and on the law as I give it to you?
20   A    Yes, I think so.
21   Q    Do you know of any reason whatsoever why you can't be a fair
22   and impartial juror in this case?
23   A    No.
24   Q    All right.  Thank you, sir.
25
```

```
 1        EXAMAINTION BY THE COURT:

 2        OF JUROR ROPER:

 3   Q    Miss Roper?

 4   A    Yes, Tricia Roper.  I live in Portage, Indiana.

 5   Q    And how long have you lived over in Portage?

 6   A    About two years.

 7   Q    How about before that?

 8   A    In Lake Station.

 9   Q    And are you married?

10   A    Yes.

11   Q    Is your husband employed?

12   A    Yes.

13   Q    What does he do?

14   A    He is a union electrician.

15   Q    And does he work out of a union hall?

16   A    Uh-huh.

17   Q    You have to answer with words.

18   A    Yes, sorry.

19   Q    Do you work?

20   A    Yes.

21   Q    Where do you work at?

22   A    Shari's Mane Attraction.

23   Q    I didn't understand.

24   A    Shari's Mane Attraction.

25   Q    Are you a hair stylist?
```

1   A   Yes.

2   Q   How long have you done that for?

3   A   About four and a half years.

4   Q   Do you have any children?

5   A   I'm pregnant now, but none.

6   Q   When are you expecting?

7   A   In July.

8   Q   What is the extent of your education?

9   A   Like a year and a half of college for hair, after high school.

10  Q   Do you belong to any clubs or organizations?

11  A   No.

12  Q   Did you ever serve in the military?

13  A   No.

14  Q   What kind of things do you like to do in your spare time?

15  A   I was playing volley ball.  Basically, that's about it.

16  Q   How about TV, what kind of things do you like to watch on TV?

17  A   I watch "24" and "All My Children."  It's a soap opera.

18  That's about it.

19  Q   All right.  Ma'am, if you're selected as a juror in this case,

20  will you be able to render a verdict solely on the evidence

21  presented in this courtroom and on the law as I give it to you?

22  A   I believe so.  But actually, I have been -- with this

23  pregnancy, I've been pretty sick.  So, I don't know days I would be

24  able to attend.  But I could try.

25  Q   Have you had morning sickness?

1  A    Yes.

2  Q    Is it a daily thing?  Is it more intermittent?

3  A    I wouldn't say daily.  But that, and I have missed work quite

4  a bit for bad headaches and different doctor's excuses.

5  Q    Do you think that you would be able to sit through -- this

6  case is going to take about three days to try, maybe spill into a

7  fourth day.  And the way we proceed is we have -- we start about

8  9:00 o'clock in the morning, quarter to 9:00.  We have about an

9  hour and a half of testimony.  Then we take about a 15 or 20 minute

10  break.  And we have about an hour, hour and fifteen minutes for

11  lunch.  Then another hour and a half or so of testimony.  Another

12  15 minute break.  And then we go till about 4:30.

13        So, under that sort of constraint, will you be able to

14  operate and function and listen to the evidence and make a decision

15  based on the evidence?

16  A    I will try.  I can't say I'm a hundred percent.  But I'll try

17  my hardest.

18  Q    Have you been working during this -- during your pregnancy?

19  A    I have, but I'd say probably like once a week I'm not there.

20  My head is the main thing.  Migraines really bad.

21  Q    Okay.

22        THE COURT:  Counsel, approach the bench.

23        (Bench conference.)

24        THE COURT:  Does anybody care if I dismiss her?

25        MR. LANTER:  No.  I think that's probably best, if she's

1   having migraines and problems.

2           THE COURT:  Mr. Foley.

3           MR. FOLEY:  I am not going to object.  If she's having

4   medical problems or at least potential medical problems, it may

5   affect her ability to deliberate and listen.

6           THE COURT:  That's my guess.

7           MR. LANTER:  And concentrate throughout the trial.

8           THE COURT:  Migraines.  But I don't want to start a

9   cascading effect here of people.  That's why I called you up to the

10  bench.  So, I'm going to dismiss her and call somebody else.

11          MR. FOLEY:  Can I be excused for my migraine too or is it

12  --

13          (End of bench conference.)

14          THE COURT:  All right.  Miss Roper, I'm going to excuse

15  you.

16          JUROR ROPER:  Thank you.

17          THE COURT:  Noel, could you call another name.

18          THE CLERK:  Jeffrey Mellen.

19          EXAMINATION BY THE COURT:

20          OF JUROR MELLEN:

21  Q    All right.  Good morning, sir.

22  A    Good morning.

23  Q    Would you please state your full name and tell us where you

24  reside?

25  A    Jeffery Mellen.  Valparaiso, Indiana.

| | | |
|---|---|---|
| 1 | Q | How long have you lived out in Valparaiso? |
| 2 | A | Eight years. |
| 3 | Q | How about before that, where did you live? |
| 4 | A | Illinois. |
| 5 | Q | Are you employed, sir? |
| 6 | A | Yes. |
| 7 | Q | Where do you work at? |
| 8 | A | The Levy Company. |
| 9 | Q | And what do they do? |
| 10 | A | We process the slags out of the steel mills here in Northwest |
| 11 | | Indiana. |
| 12 | Q | And where is that company located? |
| 13 | A | Our main office is in Detroit, but our local office is in |
| 14 | | Portage. |
| 15 | Q | And how long have you been with that company? |
| 16 | A | Eight years. |
| 17 | Q | What do you actually do for them?  What is your job title? |
| 18 | A | I'm the director of sales and marketing. |
| 19 | Q | What is the extent of your education? |
| 20 | A | I have a Bachelor of Science degree in geology. |
| 21 | Q | From where? |
| 22 | A | Eastern Illinois University. |
| 23 | Q | Are you married, sir? |
| 24 | A | Yes. |
| 25 | Q | And is your wife employed? |

```
 1   A    No, she is not.

 2   Q    Do you have any children?

 3   A    Yes, three.

 4   Q    And they all still young and at home, I take it?

 5   A    Yeah.  11, 8, and 4.

 6   Q    Do you belong to any clubs or organizations?

 7   A    Through work, probably three or four.  Socially, a country

 8   club.

 9   Q    What kind of things do you like to do in your spare time?

10   A    I'm involved in my children's sports, and I play golf and

11   shoot sporting clays.

12   Q    What kind of things do you like to watch on TV?

13   A    I really don't watch much TV.

14   Q    How about military experience?

15   A    None.

16   Q    Do you own your own home?

17   A    Yes.

18   Q    All right.  Sir, if you're selected as a juror, will you be

19   able to render a verdict solely on the evidence that's presented in

20   this courtroom and on the law as given to you by the Court?

21   A    Yes.

22   Q    Do you know of any reason whatsoever why you cannot sit as a

23   fair and impartial juror in this case?

24   A    No.

25   Q    All right.  Thank you, sir.
```

```
 1              EXAMINATION BY THE COURT:
 2              OF JUROR GREINER:
 3    Q    Mr. Greiner, is it?
 4    A    Charles Greiner, yes.
 5    Q    Sir, where do you reside?
 6    A    Valparaiso, Indiana.
 7    Q    How long have you lived out in Valparaiso?
 8    A    About three years.
 9    Q    And where did you live before that?
10    A    San Diego.
11    Q    What brought you to the area?
12    A    My wife is from Chicago, and I had a good opportunity.
13    Q    Where do you work?  Are you employed?
14    A    Yes, I am a consultant for investment banks, and I also am a
15    partner in a small trading firm.
16    Q    Okay.  Let's talk about the investment bank.  What is the
17    nature of that company?
18    A    It's just a consulting firm.  We consult JP Morgan, Bank of
19    America, Gold and Sachs.
20    Q    What is the name of the consulting firm?
21    A    LDB Consulting.
22    Q    It's out of Chicago?
23    A    It's out of Valparaiso actually.  Used to be out of Chicago.
24    Q    Are you a partner in that?
25    A    No.
```

1    Q     Is that a partnership?

2    A     No, that's not -- the other firm is a partnership.  This one

3    is incorporation -- I'm sorry, incorporated.

4    Q     Are you one of the consultants?

5    A     Yes.

6    Q     And what is the extent of your education?

7    A     Bachelor's in economics, and I'm currently in the Valparaiso

8    University MBA program.

9    Q     Where did you get your BS at?

10   A     San Diego State.

11   Q     I'm sorry?

12   A     San Diego State.

13   Q     You mentioned there is this other company you also work for?

14   A     I am a partner in a trading firm, yes.

15   Q     When you say a trading firm, what do you mean by that?

16   A     We trade securities.

17   Q     Do you trade them on your own behalf or on behalf of a

18   clientele?

19   A     Not for clientele.  It's my own behalf as well as the firm's

20   behalf.

21   Q     And how many partners do you have in that enterprise?

22   A     Actually, there is one partner who I work with very closely,

23   and there is probably close to a thousand other partners in the

24   firm.

25   Q     Okay.  Now, did you -- you mentioned you're married?

```
 1   A   Yes.
 2   Q   Is your wife employed?
 3   A   No.
 4   Q   Do you have any children?
 5   A   4 and a 3 year old.
 6   Q   What do you like to do in your spare time?
 7   A   I play soccer.  I also serve on a charitable committee.
 8   Q   What is the nature of that charity?
 9   A   It's actually -- it's a short term thing right now.  We are
10   organizing a golf outing to raise money.
11   Q   Did you ever serve in the military?
12   A   No.
13   Q   Do you own your own home?
14   A   Yes.
15   Q   What kind of things do you like to read?
16   A   Wall Street Journal when I have time.  That's about it.
17   Q   And how about on TV, do you watch much TV?
18   A   10:00 o'clock news.
19   Q   Okay.  Sir, if you're selected as juror, will you be able to
20   render a verdict solely on the evidence that's presented in this
21   courtroom and on the law as I give it to you?
22   A   Yes.
23   Q   Do you know of any reason whatsoever why you can't be a fair
24   and impartial juror?
25   A   Fair and impartial, I have no problem with.  The only -- once
```

1    you said three to four days, that a little concerns me.  I have a

2    trip next week.  I work 14, 15 hours a day.  I can see my mind

3    starting to, you know, stress out, get worried about how I'm going

4    to catch up on the weekend, which I usually work anyways.

5    Q    You're going to have to work your way through that.

6    A    Right.

7    Q    Do you have any doubt that you'll be able to sit here and

8    concentrate and listen to the evidence and come upon a fair

9    verdict?  Do you have any question about that in your mind?

10   A    Fairness, no.  Again, just I can see the time would be the

11   only issue.  I mean, I would be able to concentrate.  But again, I

12   would be possibly prone to mind wondering to work and how I'm going

13   to, you know, catch up on four days of work in one weekend.

14   Q    Well, you know, everybody who comes in here who serves as a

15   juror has things to do in their life.  And they have to try to set

16   those things aside and do their civic duty, as it were.

17        So, I guess the question is, and maybe you've already

18   answered it, but do you know of any reason why you can't be fair

19   and impartial?

20   A    No.

21   Q    Do you -- I take it you don't suffer -- or do you suffer from

22   any kind of medical condition or anything that prevents you from

23   concentrating, anything like that?

24   A    No.

25   Q    Okay.  All right.  You can give the mic to --

```
 1              EXAMINATION BY THE COURT:
 2              OF JUROR PEARSON:
 3    Q    Mr. Pearson, is it?
 4    A    Yes, Alan Pearson.
 5    Q    All right.  Sir, where do you reside?
 6    A    Lowell, Indiana.
 7    Q    And how long have you lived down in Lowell?
 8    A    15 years.
 9    Q    And are you employed, sir?
10    A    Yes, I am, at LaSalle Steel.
11    Q    And what do you do for that outfit?
12    A    Machine operator.
13    Q    And how long have you worked there?
14    A    29 years.
15    Q    Are you married?
16    A    Yes, I am.
17    Q    Is your wife employed?
18    A    Yes, she works at Centier Bank in Lowell.
19    Q    What does she do for the bank?
20    A    She is a teller.
21    Q    All right.  Do you have any children?
22    A    Three.  Two girls, 29, 25.  And my son is 24.
23    Q    And what do -- what does the 29 year old do, the girl?
24    A    She is going to school right now and working at Wal-Mart in
25    the photo department.
```

```
 1   Q    And how about your next daughter?
 2   A    She works at the bank, Centier Bank, and she also goes to
 3   school.
 4   Q    And how about your son, what does he do?
 5   A    He graduated from Purdue University Lafayette, and he is
 6   currently living in Miami Beach, Florida, working down there.
 7   Q    Okay.  Sir, did you ever serve in the military?
 8   A    No, I haven't.
 9   Q    What do you like to do in your spare time?
10   A    During the summer, I like to be outside a lot of times,
11   walking, gardening.  Just spend time outside since it's so nice.
12   Q    Do you belong to any clubs or organizations?
13   A    I belong to a labor union.
14   Q    What union do you belong to?
15   A    It's a small independent union at LaSalle, Aggressive
16   Steelworkers, and we are affiliated with United Electrical Workers.
17   Q    Do you have any supervisory responsibilities in the union?
18   A    Currently, I am the vice-president of that union.
19   Q    Is that an elected position?
20   A    Elected, yes.
21   Q    Okay.  What kind of things do you like to read?
22   A    Books.  I read a lot of sci-fi books, Dean Koontz, Stephen
23   King.  The paper once in awhile.  Sports magazines.
24   Q    Sir, if you're selected an as juror, will you be able to
25   render a verdict solely on the evidence presented in this courtroom
```

1   and on the law as given to you by the Court?

2   A    Yes.

3   Q    Do you know of any reason whatsoever why you can't be a fair

4   and impartial juror in this case?

5   A    No, there is none.

6   Q    Okay.

7        THE COURT:  All right.  Mr. Lanter, do you have any

8   follow-up questions for any of these folks?

9        MR. LANTER:  No, Your Honor.

10       THE COURT:  All right.  Mr. Foley, do you have any

11  follow-up questions?

12       MR. FOLEY:  Yes, Your Honor.  As a whole or individually?

13       THE COURT:  You can ask them individually or as a whole,

14  however you want to do it.

15       MR. FOLEY:  From here?

16       THE COURT:  Wherever you're comfortable.

17       MR. FOLEY:  Thank you.

18       Good morning.  I just wanted to ask a few quick questions

19  of some things that kind of were striking to me.

20       EXAMINATION BY MR. FOLEY:

21       OF JUORR CIESCO:

22  Q    First of all, Barbara Ciesco?

23  A    Yeah.

24  Q    If I ask somebody a question, please don't think I'm picking

25  on you or picking you out.  It's just something that you said

1   individually that I feel needs a little bit of clarification.

2        I noticed that on your questionnaire -- and yeah, we get

3   a chance to look at them -- that your spouse is a cab driver.  I

4   think you testified or mentioned that?

5   A    Yes.

6   Q    And I know sometimes being in that profession or occupation,

7   that being robbed is a factor and guns and things like that could

8   be a factor?

9   A    Yes.

10  Q    And obviously, you and your husband talk?

11  A    Uh-huh.

12  Q    Being that this is a case involving charges of possession,

13  unlawful possession of a gun, a handgun, by someone who is accused

14  of being a convicted felon, that of course, being that is one of

15  the elements, and being your husband's occupation, does that have

16  any affect on whether you --

17  A    No.

18  Q    -- could be fair and impartial?

19  A    No.

20       MR. FOLEY:  And I'm going to ask everyone this.

21       There may be an agreement during the course of the trial.

22  We may stipulate and agree that my client has a prior felony

23  conviction.

24       Does anyone feel that, wow, if this guy has a prior

25  felony conviction, that I'm somehow going to be prejudiced against

1    him for the remaining part of the charge? That is, if he has a

2    prior felony conviction, yes, it's a greater likelihood that he had

3    possession of the firearm. Does anybody feel that way?

4              JUROR OWNES:  I could possibly.

5              EXAMINATION BY MR. FOLEY:

6              OF JUROR OWENS:

7    Q    And you are Candace?

8    A    No, Susan Owens.

9    Q    I'm sorry. I'm horrible with names. If that is proven beyond

10   a reasonable doubt by way of stipulation or any other way, will you

11   -- what you're saying is you may have trouble giving him the

12   benefit -- Benjamin Price the benefit of the doubt with regard to

13   the possession aspect?

14   A    Maybe if it's proven to me, then maybe not. But I don't know

15   -- when you said that, it just popped into my head. So, I wanted

16   to say it.

17   Q    The judge is going to instruct everybody about the burden of

18   proof in the case.

19   A    Right.

20   Q    And it's beyond a reasonable doubt. It's always on the

21   Government. The Defendant is always presumed innocent. And what

22   I'm asking -- until proven guilty. And what I'm asking is this.

23              If it is proven by either stipulation or proof that Mr.

24   Price has a prior felony conviction, will you still hold the

25   Government to the burden of proving possession of the firearm

1    beyond a reasonable doubt or will you not?  And it's not a trick

2    question.  We're just trying to find out --

3    A    No.

4    Q    -- if you can be fair.

5    A    I think I could be.

6    Q    Okay.  You seem to have a little reservation.

7    A    I know.  I want to be truthful.  Just --

8    Q    Right.  And let me just ask you this very last one.  If you

9    were sitting in his shoes, Mr. Price's, would you want somebody of

10   your same mindset judging your case with regard to that possession

11   charge or not?

12   A    I -- I can't really say if I would or not.  Because I, you

13   know, have a hesitancy.  That's what I mean.

14   Q    I see.

15   A    I'm sure I would do my best for sure.

16   Q    Okay.  That's all we're asking.

17   A    That's -- yeah.

18        MR. FOLEY:  Does anyone belong to any organizations that

19   deal with guns, either NRA on one side or some group that has

20   something against guns or possession of guns?

21        EXAMINATION BY MR. FOLEY:

22        OF JUROR MELLEN:

23   Q    And I'm looking at you because you had something about

24   shooting clay pigeons?

25   A    I'm what they call -- if you're not familiar with it, it's

1  called sporting clays. It's like trapper skeet. I do belong to a

2  club in Three Oaks, Michigan. It's a shooting club.

3  Q    And that is long guns?

4  A    Shotguns.

5  Q    Does that have any effect on your judgment in this case?

6  A    No.

7  Q    Do you possess handguns?

8  A    Yes.

9        MR. FOLEY:  Does anybody here have any sort of an adverse

10  feeling or conviction about handguns such as -- or so that it would

11  make you unfair and impartial -- or I should say partial -- unfair

12  and partial in this case?

13        Anybody?  Okay.

14        Now, the judge will also instruct you about -- and I'm

15  not sure, everybody seems like they watch "CSI" and things like

16  that. So, everyone probably already knows this. Anyone charged

17  with a criminal offense has a right not to testify, not to present

18  any evidence in the course of a trial.

19        And during the course of this trial, Mr. Price may or may

20  not testify. If he does not testify, is there anyone here that is

21  in some way going to be prejudiced concerning that? What I mean by

22  that is this.

23        When you go back to deliberate, is there anyone here that

24  would say or is more likely to say, you know, if he didn't do it,

25  why didn't he get up there and say he didn't do it?

1     Is there anybody going to -- or will you do the other,

2     and that is not even consider it, not even talk about it.  Is

3     everyone comfortable with that proposition?  Okay.

4          If not, don't be embarrassed to hold your hand up and

5     say, hey, listen, I don't agree with that.  Everybody is okay with

6     that proposition?

7          And you all understand that that may be my decision

8     whether or not he will testify.  And we may have disagreements,

9     myself and Mr. Price, during the course of the trial about that and

10    other things.  Will anyone hold that against Mr. Price?

11         Okay.  Because you know, you're not supposed to,

12    obviously.  That's why I'm asking the question.

13         Is anyone here related to anybody in law enforcement,

14    that is a police officer?

15         THE COURT:  Mr. Foley, I'm going to ask a whole series of

16    other questions that relate to the more general kind of questions

17    about that sort of thing.

18         MR. FOLEY:  Right.

19         THE COURT:  I guess I was just asking if you had any

20    follow-up on the initial questioning that I had of the jurors.

21         MR. FOLEY:  Okay.  Thank you.  And I apologize.

22         EXAMINATION BY MR. FOLEY:

23         OF JUROR WEBBER:

24    Q    And it's Diane Webber, right?

25         And you've -- you work for Judge Chidester.  And I think I've

1    seen you --

2    A    Yes.

3    Q    -- a few times.  You won't hold that against me, will you?

4    A    No.

5    Q    That won't affect your decision in this case?

6    A    No.

7         EXAMINATION BY MR. FOLEY:

8         OF JUROR PEARSON:

9    Q    Mr. Pearson?

10   A    Yes.

11   Q    On your questionnaire, it said something about your wife being

12   a victim of a robbery?

13   A    Yeah, she was held hostage.

14   Q    And obviously, the striking question that I have concerning

15   that is will that in any way affect your judgment in this case?

16   A    Oh, no.  Not at all.

17        MR. FOLEY:  That's all I have.  Thank you.

18        THE COURT:  All right.  I'm going to ask a series of

19   follow-up questions that are going to be much more general in

20   scope, and it's going to require you to raise your hand if you need

21   to answer any of these questions or to provide any additional

22   information to me and to the parties.

23        All right.  As I mentioned earlier, the trial of this

24   case is going to take about -- about three to four days.  And many

25   of the witnesses who will be called -- there will be many witnesses

1    called.  And obviously, in a trial, it doesn't sort of magically

2    appear before your eyes.  It comes in in a piecemeal fashion, the

3    evidence does.  Comes in over the period of several days.

4         And the question is, can each and every one of you keep

5    an open mind until you've heard all of the evidence, and you've

6    heard the final instructions on what the law is and any arguments

7    of counsel?

8         In other words, can you continue to keep an open mind and

9    not judge the case until you've heard all of the evidence?

10        Anybody have any problems with that concept?

11        Now, during the deliberations, you're going to be

12   required to listen to and to consider the opinions of your fellow

13   jurors, and to reassess your own opinions in an effort to

14   potentially reach a verdict.

15        However, your vote must be based upon your own good faith

16   opinion, and you can't simply vote some way simply because you want

17   to reach a verdict and you want to get out of here.

18        Does anybody have a problem with that concept?

19        All right.  Has anyone talked about this case or

20   discussed the case in your presence?

21        Have any of you formed or expressed an opinion on this

22   case?

23        Are any of you familiar with the facts of this case?

24   Ever read about it, hear about it, anything like that?

25        Do any of you know Mr. Price?

1    Do any of you know Mr. Foley?

2    EXAMINATION BY THE COURT:

3    OF JUROR WEBBER:

4    Q    Now, Miss Webber, I know you mentioned you are a bailiff in

5    Judge Chidester's Court.  Other than seeing Mr. Foley in court,

6    have you had any personal interaction with him?

7    A    No, just court.

8    Q    Okay.  Not social friends or anything like that?

9    A    No.

10    THE COURT:  Anybody else?  Anyone else know personally

11    Mr. Foley?

12    Any -- any of you know Special Agent Mitten or Mr. Lanter

13    or Mr. Padilla, the two lawyers for the Government?

14    All right.  Is there anyone who cannot read, write or

15    understand the English language?

16    Is there anyone who cannot see or hear well?

17    Is there anybody with any health problems that would

18    interfere with your ability to serve as a juror?

19    All right.  Is there any juror who would be unduly

20    burdened with financial, business, family or medical problems if

21    the trial of this case were to require as many as -- as I

22    mentioned, three or four days to try?

23    EXAMAINTION BY THE COURT:

24    OF JUROR GREINER:

25    Q    All right.  Mr. Greiner?

1   A    Right.

2   Q    That's the issue we talked a little bit about.  But I'm not

3   sure I'm clear on what the issue is.  Maybe you can help me here.

4   How will you be burdened financially or through your business or

5   family if you were here for three or four days?

6   A    Business wise, obviously, the business will fall, fall behind.

7   I have a trip to Seattle next week.  So, I'm not going to be able

8   to catch up.  There is only two of us at the consulting firm, so --

9   and that's the main one I'm concerned about.  Financially, I'm not

10  -- honestly not going to be burdened financially.  I'm not going to

11  make as much money, but I'm not going to be burdened in that sense.

12  It's basically time.  And tonight I have -- at 5:00 o'clock, I have

13  a final at Valpo.  Aside from that, that's it.  But if that's under

14  -- falls under the guidelines where I'm still supposed to serve,

15  then I'll do my best to be fair and impartial.

16  Q    Okay.

17           THE COURT:  Anybody else?

18           All right.  Has anybody ever served on a jury before or

19  on a Grand Jury, either in state court or Federal court?

20           EXAMINATION BY THE COURT:

21           OF JUROR PEARSON:

22  Q    Yeah, Mr. Pearson?

23  A    I served in Crown Point.

24  Q    What kind of trial was that?

25  A    Criminal.

1   Q    And do you remember what the person was charged with?

2   A    Not right offhand, no.

3   Q    How long ago was it?

4   A    Probably about three years.

5   Q    You don't have any recollection of what the charge was?

6   A    It was a gentleman, I think, stalking and attempted murder of

7   a young a lady.

8   Q    Did the jury reach a verdict in the case?

9   A    Yes, we did.

10  Q    What was the verdict?

11  A    Guilty.

12  Q    Were you a foreperson in the jury?

13  A    No.

14  Q    Now, you understand, obviously, that what took place over in

15  state court three or four years ago really has no bearing on what

16  we're going to do in this courtroom?

17  A    Right.

18  Q    And you're going to decide this case based on the evidence

19  that's presented in this courtroom and on the law as I give it to

20  you.  Do you have any quarrel with that?

21  A    No, I don't.

22  Q    You'd be able to sort of set aside your prior jury experience

23  and decide this case based on those bases?

24  A    Yes.

25           THE COURT:  All right.

```
 1           Miss -- I think I saw -- I'll get down to you in a
 2    second.
 3           EXAMINATION BY THE COURT:
 4           OF JUROR LOPEZ:
 5    Q    But Miss Lopez?
 6    A    Yes.
 7    Q    Where did you serve at before?
 8    A    The other building in Hammond here.
 9    Q    Federal Court?
10    A    A Judge Pete.
11    Q    Okay.  Over in state court?
12    A    Yeah.
13    Q    Was that a civil case or criminal case?
14    A    Civil case.
15    Q    And what was the nature of that dispute?
16    A    The Plaintiff wanted medical expenses.  He was hit by -- he
17    was on a motorcycle and he was turning and he got hit by this man's
18    truck.
19    Q    All right.  Now, did you arrive at a verdict?
20    A    Yes, we did.
21    Q    Did you find for the Plaintiff or the Defendant?
22    A    The Defendant.
23    Q    All right.  Now, you understand that that -- obviously, that
24    was a civil case?
25    A    Right.
```

1    Q    And this is a criminal case.  And there is a world of

2    difference between the two.  Not the least of which is that in a

3    civil case, the burden of proof is on the Plaintiff to prove their

4    case by what is known as a preponderance of the evidence.  But in a

5    -- in a criminal case, as Mr. Foley alluded to, the burden is on

6    the Government, and stays on the Government, to prove its case

7    beyond a reasonable doubt.

8    A    Right.

9    Q    Which is a different standard.  Do you understand that?

10   A    Yes.

11   Q    Do you understand that distinction?

12   A    Yeah.

13   Q    Do you have any difficulty in sort of setting aside your prior

14   jury experience and decide this case based on the law as I give it

15   to you?

16   A    No problem.

17   Q    Any question about that?

18   A    No.

19   Q    Okay.  Thank you.

20            EXAMINATION BY THE COURT:

21            OF JUROR WESLEY:

22   Q    Miss Wesley, I think you had your hand up.

23   A    Yes.

24   Q    Where did you serve at?

25   A    Here.

1   Q     In Federal Court?

2   A     Yeah.

3   Q     And how long ago was that?

4   A     I think it was in 2003.

5   Q     2003?

6   A     Yeah.

7   Q     And do you remember, was it a civil case or criminal case?

8   A     I think it was criminal.

9   Q     And what was the nature of the case?

10  A     Ghost payroll and a bunch of stuff.  Should I mention the

11  person's name?

12  Q     You know, I can barely hear you.

13        THE COURT:  Who's got the microphone?  Yeah.

14  A     I can't remember all the stuff, but it was something like

15  ghost payroll and a whole bunch of stuff.

16        THE COURT:

17  Q     That related to the Gary city Clerk's office?

18  A     (Nods head.)

19  Q     You have to answer.

20  A     Yes, yes.  I'm sorry.

21  Q     Okay.  Now, were you actually seated as a juror in that case?

22  A     Yes, I was.

23  Q     Now, there wasn't a verdict rendered in that case?

24  A     No.

25  Q     Correct?

```
 1   A    No.
 2   Q    There -- okay.  Now, is there anything about that experience
 3   that in any way causes you to be prejudice in this case either for
 4   or against the Government or for or against Mr. Price?
 5   A    No, it won't.
 6   Q    You, like the others, would be able to set aside that prior
 7   experience and decide this case on the evidence that's presented
 8   here and on the law as I give it to you?
 9   A    Right.  Yes.
10   Q    Any question about that?
11   A    No.
12   Q    All right.  Is that your only service that you've had?
13   A    Yes.
14   Q    Okay.
15             EXAMINATION BY THE COURT:
16             JUROR BAKER:
17   Q    There was one other I believe.  Yeah, Miss Baker.
18   A    Yes, I served at the Daley Center in Chicago, Illinois.
19   Q    All right.  How long ago was that?
20   A    16 maybe years ago.
21   Q    Okay.  And was it a civil case?
22   A    Civil.
23   Q    What was the nature of the charge or the allegations?
24   A    Gentleman got hit on the Dan Ryan.
25   Q    And did you -- he was bringing a lawsuit for damages?
```

```
 1   A     Right.

 2   Q     And did you find for the Plaintiff or the Defendant?

 3   A     Defendant.

 4   Q     And obviously, do you understand, Miss Baker, that was a civil

 5   case?

 6   A     Yes, I do.

 7   Q     Governed by this preponderance of the evidence standard.  And

 8   again, as I mentioned to Miss Lopez, this is -- this is obviously a

 9   criminal case governed by a totally different standard of proof

10   beyond a reasonable doubt.

11   A     Yes, I do.

12   Q     Do you understand that distinction?

13   A     Yes, sir.

14         THE COURT:  Is there anything about -- any of you who

15   served on a prior jury, is there anything about that, just the

16   experience itself, that left a bad taste in your mouth, soured you

17   in any way, anything like that, that would prevent you from being

18   fair and impartial in this case either for or against Mr. Price or

19   for or against the Government?  Anything like that?

20   Miss Baker?

21         JUROR BAKER:  No.

22         THE COURT:  Any of the others?

23         Okay.

24         THE COURT:  Was that your only jury service?

25         JUROR BAKER:  Yes, sir, that was it.
```

1    THE COURT: Anybody else ever serve on a jury before or

2    Grand Jury?

3        All right. Do any of you or any member of your family

4    have any physical impairment that might affect your judgment in

5    this case?

6        Have any of you ever testified as a witness in a trial

7    before?

8        All right. We've talked a little bit about this, but do

9    any members of your immediate family have any special legal

10    training either by way of educational courses or through an

11    occupation?

12        Obviously, Miss Webber, we've talked about your work with

13    Judge Chidester.

14        Anybody else?

15        All right. This sort of picks up on a question Mr. Foley

16    asked, but do you know of any reason why you may be prejudiced, any

17    of you, be prejudiced in this case either for or against the

18    Government or for or against Mr. Price just because of the nature

19    of this -- of this case, just because the nature of the charge? Is

20    there anything about that, that simply alone, that causes you to be

21    prejudice in any way?

22        All right. Let me read a list of witnesses. And I want

23    to -- please listen up. And I'd ask everybody in the audience to

24    listen up as well. Because if any of you get placed up here, I'm

25    going to ask all these general questions I'm going to ask of you,

1     but I'm also going to ask if you know any of these witnesses.

2          Special Agent David Coulson.

3          ATF fingerprint specialist Victor Dove.

4          Special Agent Jeff Emmons.

5          Officer Justin Illyes of the Gary Police Department.

6          Patty Kaspar of the Hammond Police Department.

7          Joe Molina.

8          Agent Mitten, Daniel Mitten.

9          Special Agent Kevin O'Malley.

10          Benjamin Price.

11          Task Force Agent Larry Robertson.

12          Veronica Sanchez.

13          Officer Terry Smith of the Gary Police Department.

14          And Officer Sarita Titas of the Gary Police Department.

15          Do any of you know any of those individuals?  Ever heard

16     of them?

17          All right.  Do any of you or are any of you acquainted

18     with law enforcement officers, have a brother, sister, family

19     member, close family member who is in law enforcement?

20          EXAMINATION BY THE COURT:

21          OF JUROR GREINER:

22     Q     All right.  Mr. Greiner.

23     A     My cousin is actually somewhere in Southern Indiana.  I can't

24     remember the county.  A sheriff.

25     Q     Okay.  Do you have a close relationship with your cousin?

```
 1   A    Not really close, but --
 2   Q    Do you talk to him or her frequently about their experience in
 3   law enforcement?
 4   A    Not regularly.
 5            EXAMINATION BY THE COURT:
 6            OF JUROR PEARSON:
 7   Q    All right.  Mr. Pearson, how about you, sir?
 8   A    I have a nephew that's a police officer in Hammond.
 9   Q    All right.  And what is his name?
10   A    Frank Delgado.
11   Q    Do you have a close relationship with Officer Delgado?
12   A    Not real close, no.
13   Q    Do you talk to him at all about the kind of things he works
14   on?
15   A    No.
16            THE COURT:  Will both of you be able to set aside your
17   relationship with these two law enforcement officers and, again,
18   decide this case -- for the purposes of this case, sort of
19   disassociate yourself from those two people, and decide this case
20   based on the evidence that's presented here and on the law as I
21   give it to you?  Either of you unable or unwilling to do that?
22            JUROR PEARSON:  I have no problem.
23            THE COURT:  Mr. Greiner.
24            JUROR GREINER:  No.
25            JUROR PEARSON:  Excuse me?
```

1              EXAMINATION BY THE COURT:

2              OF JUROR PEARSON:

3     Q    Yeah?

4     A    I also have a cousin who works for the IRS in Gary.

5     Q    Is he on the criminal side or civil side?

6     A    I'm not sure.  I don't see him very often, but I see him on

7     special occasions, that's about it.

8     Q    Is there anything about the relationship with your cousin,

9     that he works for the Government, the IRS, does that in any way

10    cause you to be bias or prejudice in this case --

11    A    No.

12    Q    -- either for or against the Government or for or against Mr.

13    Price?

14    A    I don't see him that often to discuss anything about anything.

15             THE COURT:  All right.  Has anyone or anyone close to any

16    of you had any difficulty with the law?

17             All right.  Have any of you ever had any experience with

18    law enforcement officers or Government agents which would cause you

19    to be prejudice either for or against the Government or for or

20    against the Defendant?  In other words, any -- any experience with

21    law enforcement that left a bad taste in your mouth, anything like

22    that?

23             All right.  This case is being prosecuted by the United

24    States Attorney's office for the Northern District of Indiana.

25    Have any of you had any prior dealings with the United States

1    Attorney's office that might affect your ability to be fair and

2    impartial?

3        All right.  If you're selected to sit as a juror in this

4    case, you're going to be required to set aside any feelings of

5    passion or prejudice and, again, decide the case solely on the

6    evidence presented in this courtroom and on the law as I give it to

7    you, disregarding any other ideas or notions or beliefs that you

8    may have about the law.

9        Are any of you unable or unwilling to do that?  What I'm

10   asking is, you may personally disagree with the law as I give it to

11   you.  But you still have to follow the law.  Is there anybody who

12   thinks that they will be unable to do that?

13       All right.  Have any of you ever been involved in a

14   criminal matter, either as a Defendant or as a witness or as a

15   victim?

16       Do any of you have any problem with the rule of law or

17   any reservations about this at all that requires you to presume the

18   innocence of the Defendant throughout this case?  And even as

19   you're deliberating, to presume his innocence and that the

20   Government must prove the Defendant guilty beyond a reasonable

21   doubt?

22       Anybody quarrel or have an issue with that concept?

23       All right.  Lastly, if any of you were the Defendant in

24   this case or the Assistant US Attorneys prosecuting this case, do

25   you know of any reason why you would not be content having this

1   case tried by somebody in your frame of mind?

2           Okay.  Counsel, you can make your strikes now.

3           Do either have any follow-up questions?

4           MR. FOLEY:  Just a question, if I may.

5           THE COURT:  Sure.

6           MR. FOLEY:  During the course of the trial, I -- the

7   judge already asked you about whether or not anybody is related to

8   law enforcement.  And law enforcement officers are held basically

9   to the same standard of credibility as any other witness.  I'm just

10  asking, is there anyone here that would hold a law enforcement

11  officer to either a higher or lower standard of credibility?  That

12  is, a law enforcement officer testifies, agent or whomever, are you

13  going to give that person more credibility than any other witness?

14  Is there anybody here that would give a law enforcement officer

15  more credibility or less?

16          And lastly, you all understand that anyone can make a

17  mistake or even fabricate when they -- when they testify.

18  Regardless of their position, everybody agree with that?

19          That's all, Your Honor.

20          THE COURT:  Okay.  Counsel, I'll give you time to confer

21  and to make your challenges.

22          (Bench conference.)

23          THE COURT:  All right.  Any challenges for cause?

24          MR. LANTER:  No, Your Honor.

25          MR. FOLEY:  No.

1          THE COURT:  Your peremptory challenges.

2          MR. LANTER:  The Government challenges Mr. Steinkraus in

3     seat number 2.

4          THE COURT:  The Defendant challenges also Mr. Steinkraus,

5     Mr. Jones, Miss Veselica, Mr. Pearson, and Mr. Mellen.

6          So, that's --

7          Do you have objections to those peremptories, Mr. Lanter?

8          MR. LANTER:  No.

9          MR. FOLEY:  We both are credited with one strike for

10    Mister --

11         THE COURT:  Correct.  You both assessed that.

12         MR. FOLEY:  Assessed that.

13         THE COURT:  Mr. Foley, you have five left.  And the

14    Government also has five left.  Okay.

15         (End of bench conference.)

16         THE COURT:  Okay.  I'm going to dismiss the following

17    people.  Miss Veselica, Mr. Steinkraus, Mr. Jones, Mr. Mellen, and

18    Mr. Pearson.  Thank you all very much for coming and being

19    forthright and honest in your answers.  Just because you're

20    stricken, it's obviously not a reflection on you personally.  It's

21    judgments that are made by the lawyers, which they are allowed to

22    do under our system.  But I thank you all very much for responding

23    to the summons and being here in a timely way.  And thank you very

24    much for doing your civic duty.  So, you're excused.

25         THE COURT:  Noel, could you call six new names, please.

```
 1              THE CLERK:  Patricia Jordan.
 2         Lonnie McDade.
 3         Susan Gray.
 4         Tina Martisauskas.
 5         Jodi Roark.
 6         EXAMINATION BY THE COURT:
 7         OF JUROR JORDAN:
 8    Q    Miss Jordan, if we can start with you, please.  State your
 9    full name and tell us where you reside?
10    A    Patricia Ann Jordan.  Portage, Indiana.
11    Q    How long have you lived in Portage?
12    A    12 years.
13    Q    Are you employed, ma'am?
14    A    Yes, I am.
15    Q    Where do you work at?
16    A    Excenture in Chicago.
17    Q    And how long have you worked at Excenture?
18    A    21 years.
19    Q    What do you do for them?
20    A    I am an executive assistant.
21    Q    Okay.  And could you tell me a little bit of what that --
22    A    I am a secretary.
23    Q    Okay.  And who do you actually work with?
24    A    I support three partners, an associate partner and a senior
25    manager, and they -- they work in various industries.  Like, one is
```

```
 1   pharmaceuticals, communications and high tech.
 2   Q      Excenture is a consulting firm?
 3   A      It is.
 4   Q      It's a -- I guess a successor to Arthur Anderson, am I right
 5   about that?
 6   A      They were a part of Arthur Anderson at one time, and they
 7   divorced themselves from them several years ago.
 8   Q      Probably a good move?
 9   A      Yes.
10   Q      Now, are you married?
11   A      No, I'm not.
12   Q      Have you ever been married?
13   A      No.
14   Q      And do you have any family in the area?
15   A      Yes, I do.  My parents -- my parents and I own a home
16   together.  And I do have a son.  He's 22.
17   Q      Okay.  And is your son still at home with you?
18   A      Yes, he is.
19   Q      And does he go to school or does he work?
20   A      No, he works.  He works for Harbor Honda in Merrillville, and
21   he works for Advanced Auto Parts.
22   Q      Okay.  And that's your only child?
23   A      Yes.
24   Q      What is the extent of your education?
25   A      High school, some college courses.
```

1    Q     Okay.  Do you belong to any clubs or organizations?

2    A     No, I do not.

3    Q     Did you ever serve in the military?

4    A     No.

5    Q     Now, do you own the home that you live in or is that your

6    folks' home?

7    A     We own it together.

8    Q     What do you like to do in your spare time?

9    A     I knit.  I garden.  Watch TV, read.

10   Q     What kind of things do you read?

11   A     Mysteries.

12   Q     How about on TV, what kind of things do you like to watch on

13   TV?

14   A     "CSI."

15   Q     And it always, I guess, helps to reiterate.  Obviously, what

16   you see on TV, you can't -- you have to sort of disassociate

17   yourself --

18   A     Right.

19   Q     -- with that kind of stuff, and decide this case based upon

20   what takes place in this courtroom, based on the evidence,

21   witnesses, and on the law as I give it to you.

22   A     Right.

23   Q     You able to do that?

24   A     Yes.

25   Q     Any question about that?

```
 1   A    NO.
 2   Q    Do you know of any reason whatsoever why you can't be a fair
 3   and impartial juror in this case?
 4   A    No, I do not.
 5   Q    All right.  Thank you, ma'am.
 6              EXAMINATION BY THE COURT:
 7              OF JUROR MCDADE:
 8   Q    All right.  Mr. McDade?
 9   A    Yes, sir.
10   Q    State your full name and tell us where you live?
11   A    Lonnie McDade.  Live in Gary, Indiana.
12   Q    How long have you lived in Gary?
13   A    50 years.
14   Q    Are you employed, sir?
15   A    Yes, I'm employed with the Department of Justice at the
16   Federal prison in Chicago, MCC Chicago.
17   Q    Okay.  How long have you been with the --
18   A    19 years.
19   Q    And now, you are a correctional officer?
20   A    No, I'm the general -- the volunteer coordinator there.
21   Q    What does that mean?
22   A    I work along with the chaplain.  I recruit volunteers to come
23   in there for religious services, education, other disciplines
24   within the institution.
25   Q    Okay.
```

1    A      I just want to go ahead and I say that I do -- well, I have

2    seen the -- ?

3    Q      Okay.

4            THE COURT:  Counsel, approach the bench.

5            (Bench conference.)

6            THE COURT:  I just wanted to cut him off before the other

7    jurors found out exactly what the MCC is, so that they don't know

8    that he's in custody.

9            Would you prefer that I dismiss him or ask further

10   questions of him?

11           It's going to be a difficult tightrope to walk.

12           MR. FOLEY:  I understand.  I would think he should be

13   dismissed.  But I am going to have to move for a mistrial.  The

14   basis for the mistrial is that the juror has indicated that he

15   works at the MCC.  And obviously, we all know what that is,

16   Metropolitan Correctional Center.  I don't know if the other jurors

17   do or not.  However, he started to say I have -- he said the words

18   I have seen -- and he looked at my client when he said that.

19           The inference that I gather from that, the logical

20   inference is that in the correctional -- and he's already indicated

21   that -- I believe the inference can be made from the statements

22   that he's made that he works in a correctional institution in a

23   capacity where he deals with volunteers apparently in the

24   institution.

25           And from that statement, it can be reasonably derived

Ross vs. Oklahoma
487 U.S. 81, 85-86 (1988)

1   that my client is in present custody.  That certainly is
2   prejudicial to my client.  And (if any) jurors have picked up on
3   that, then the entire jury panel could be tainted.  So, for that
4   reason, I'm asking for a mistrial, and ask for -- that a new jury
5   be empaneled.
6           THE COURT:  All right.  What is your response?
7           MR. LANTER:  The Government's position is that doesn't
8   warrant a mistrial.  I believe that the juror was cut off
9   sufficiently soon enough.  There is other inferences that the
10  jurors, if they are going to make inferences, could take from that
11  including that I think the jurors are going to hear that he is a
12  convicted felon.  The other inference is that he could have been
13  involved through this prior felony conviction.  And I think that
14  him saying "I have seen," looking over at the Defendant, is
15  sufficiently derived from the discussion about where he works, that
16  it's not clear that the Defendant is clearly in custody right now.
17  I believe there is a number of inferences that the rest of the
18  jurors would have to make in order to get to that position.
19          THE COURT:  All right.  Any response, Mr. Foley?
20          MR. FOLEY:  Just simply the fact that if he is in present
21  custody, and obviously he is, if that were determined by the
22  jurors, that certainly would be prejudice to my client, being in
23  present custody.
24          THE COURT:  Okay.  I'm going to deny your motion for a
25  mistrial.  I am going to dismiss Mr. McDade.  Did either of you all

1    know that this guy worked at the MCC?  Because I think it might

2    have been better if you --

3         MR. LANTER:  Right.

4         THE COURT:  -- brought it to my attention.

5         MR. LANTER:  Right.  In retrospect, we had the -- the

6    questionnaire.  And to be honest, we didn't know he was going to

7    bust out with that.  If we had to play this over, we should have

8    asked to approach before we started down this road.

9         MR. FOLEY:  I honestly didn't see it.  I didn't see that

10   reference.

11        THE COURT:  I did not catch it either --

12        MR. LANTER:  I didn't --

13        THE COURT:  -- in my review of the -- of the juror

14   questionnaire.  But in any event, as soon as I heard him say that

15   he works for the MCC, I believe I cut him off.  Mr. Foley is

16   correct that he did get the words out, "I have seen," and he looked

17   at the Defendant.

18        But I think it was so sufficiently innocuous that none of

19   the jurors could possibly have really picked up on it or made any

20   connection in that regard.  So, I'm simply going to dismiss Mr.

21   McDade and deny your motion for mistrial.  Okay.

22        (End of bench conference.)

23        THE COURT:  All right.  Mr. McDade, I'm going to excuse

24   you, sir.  Thank you very much for coming.

25        All right.  Noel, call another name.

          THE CLERK:  Alan Jones.

          EXAMINATION BY THE COURT:

          OF JUROR JONES:

Q    All right.  Sir, would you please state your name and tell us

where you reside?

A    Alan Jones.  Merrillville, Indiana.

Q    How long have you lived in Merrillville?

A    About 60 years.

Q    Are you employed, sir?

A    Retired.

Q    From where?

A    NIPSCO.

Q    How long did you work at NIPSCO?

A    25 years.

Q    And what did you do for them?

A    I was a supervisor at Dean Mitchell generating station.

Q    All right.  Are you married, sir?

A    Yes, I am.

Q    Is your wife employed?

A    She is retired also from NIPSCO and works part time.

Q    And what did she do at NIPSCO?

A    She was a supervisor in fuel procurement.

Q    All right.  Do you have any children?

A    Yes, two.

Q    How old are they?

```
 1   A     42 and 39.

 2   Q     What does your 42 year old do?

 3   A     He is a consultant in Florida.  He used to be a PGA golf

 4   instructor.

 5   Q     Is he still in the golf business?

 6   A     Part time.  Him and his wife work with the state, with

 7   children in the State of Florida.

 8   Q     Okay.  How about your 39 year old?

 9   A     She is a housewife in Milwaukee.

10   Q     All right.  She's married, I take it?

11   A     Yes.

12   Q     What does her husband do?

13   A     He's a security guard for a local company in the Milwaukee

14   area.

15   Q     Okay.  What do you like to do in your spare time, sir?

16   A     Golf.

17   Q     Do you belong to any clubs or organizations?

18   A     I am -- I belong to a Masonic fraternity and active in our

19   church.

20   Q     And what denomination is that?

21   A     It's a Christian church out of Saint John.

22   Q     And how about your -- have you had any military experience?

23   A     I had nine and a half years in the Air Force.

24   Q     During what --

25   A     Vietnam.
```

```
 1   Q    Okay.  What kind of things do you like to read by way of
 2   magazines, newspapers, books?
 3   A    Little bit of golf magazines and a novel once in awhile,
 4   Grisham and things like that.
 5   Q    How about TV, what kind of things do you like to watch?
 6   A    I like the travel channel, history channel, military channel,
 7   golf channel.
 8   Q    Sir, if you're selected as a juror, will you be able to render
 9   a verdict solely on the evidence presented and the law as given to
10   you by this Court?
11   A    Yes.
12   Q    Do you know of any reason whatsoever why you cannot sit as a
13   fair and impartial juror in this case?
14   A    No.
15   Q    All right.  Thank you, sir.  If you'd give the -- give it to
16   Dave there.
17            EXAMINATION BY THE COURT:
18            OF JUROR GRAY:
19   Q    Miss Gray, please state your full name and tell us --
20   A    Susan Lynn Gray.  I live in Crown Point, Indiana.
21   Q    How long have you lived down there?
22   A    About 13 years.
23   Q    Are you married?
24   A    Yes, I am.
25   Q    Is your husband employed?
```

```
 1   A    Yes, he is.

 2   Q    What does he do?

 3   A    He works for UPS.

 4   Q    In what --

 5   A    He is a manager.  He works with the guys who unload and load

 6   up the semis and the train cars.

 7   Q    Are you employed?

 8   A    Yes.  I am self-employed now.  Still looking for a full time

 9   job, uh-huh.

10   Q    What did you do before?

11   A    I am a tax consultant.  I work with CPA firms and consulting

12   firms.

13   Q    Are you a CPA yourself?

14   A    Yes, I am.

15   Q    How long have you been a CPA?

16   A    17 years.

17   Q    And then when you say you're self-employed, you do some --

18   A    I am doing contract --

19   Q    We can't interrupt each other.

20   A    I'm sorry.  I'm doing contract --

21   Q    We'll drive this lady crazy.

22   A    Okay.

23   Q    Let me finish the question, and then you give me the answer.

24   Tell me about your part time work.

25   A    I do consulting for several CPA firms, helping either with --
```

1    with whatever they need help with.  Setting up exempt

2    organizations, helping with individual income taxes, working with

3    business restructures, things like that.

4    Q    And I take it you have a college degree?

5    A    Yes.

6    Q    Is your BA in accounting, I take it?

7    A    It's actually in business administration.

8    Q    Okay.  Do you have any children?

9    A    Yes, I do.  I have two.  They are 7 and 10.

10   Q    All right.  What do you like to do in your spare time?

11   A    Chase my kids around to their activities.

12   Q    Okay.  What kind of things do you like to read?

13   A    Recently, we just finished the fourth Harry Potter book.  It's

14   basically whatever my kids are doing in school.

15   Q    Do you belong to any clubs or organizations?

16   A    Just professional membership societies.

17   Q    All right.  Ma'am, if you're selected as a juror, will you be

18   able to render your verdict solely on the evidence presented in

19   this courtroom and on the law as I give it to you?

20   A    Yes.

21   Q    Do you know of any reason whatsoever why you can't serve as an

22   impartial juror in this case?

23   A    No.

24         THE COURT:  All right.  Thank you.

25

```
 1          EXAMINATION BY THE COURT:

 2          OF JUROR MARTISAUSKAS:

 3   Q    Miss --

 4   A    Martisauskas.

 5   Q    Martisauskas.  Okay.  State your full name and tell us where

 6   with you reside?

 7   A    Tina Marie Martisauskas.  And I live in Highland.

 8   Q    And how long have you lived in Highland?

 9   A    For seven years.

10   Q    Are you married?

11   A    Yes, I am.

12   Q    Is your husband employed?

13   A    Yes, he is.

14   Q    What does he do?

15   A    He's a maintenance technical mechanic.

16   Q    Where at?

17   A    Hutamaki.

18   Q    What is that?

19   A    They make the Chinet plates, Solo cups, stuff like that.

20   Q    Where is that located at?

21   A    Hammond.

22   Q    Are you employed?

23   A    No.  I'm a full-time college student and a full-time mom.

24   Q    How many children do you have?

25   A    I have three.  Two of them are at home.
```

```
 1   Q    And there is one who is grown and gone?
 2   A    She is 8.  She lives in Florida.
 3   Q    Okay.  With an ex-spouse, I take it?
 4   A    No, I was a surrogate mother.
 5   Q    Interesting.
 6            Now, you mentioned that you're a full-time student?
 7   A    Yes.
 8   Q    What discipline are you studying?
 9   A    Radiology.
10   Q    And where do you go to school?
11   A    Indiana University Northwest.
12   Q    Do you want to be actually a doctor or radio technology?
13   A    An X-ray tech.
14   Q    X-ray tech.  Okay.  Do you belong to any clubs or
15   organizations?
16   A    No.
17   Q    How far along are you in college now?
18   A    A year and a semester.
19   Q    Okay.  What do you like to do in your spare time?
20   A    Kids, softball, family, friends.
21   Q    How about reading, do you -- what kind of things do you like
22   to read?
23   A    Stephen King.  I have to read school books.  I'll read them.
24   You know, that's about it.
25   Q    All right.  Do you own your own home, ma'am?
```

1   A    Yes.

2   Q    If you're selected as a juror, will you be able to render a

3   verdict solely on the evidence presented and the law as I give it

4   to you?

5   A    Yes.

6   Q    Do you know of any reason whatsoever why you can't be a fair

7   and impartial juror?

8   A    No.  However, I do know one of the witnesses.  Related to him.

9   Q    Okay.  Which witness is that?

10   A    Officer Robertson.

11        THE COURT:  And he's with the -- he's an ATF Task Force

12   agent, is that right?

13        MR. LANTER:  That's correct, Your Honor.

14   A    Uh-huh.

15        THE COURT:  What department does he work for?

16        MR. LANTER:  Gary Police Department.

17        THE COURT:

18   Q    I want to make sure we're talking about the same Officer

19   Robertson.  Is that him?

20   A    Uh-huh.  Yes, it is.

21   Q    How well do you know Officer Robertson?

22   A    He is my brother-in-law.

23   Q    That's pretty well.

24   A    Yeah.

25   Q    I'm going to excuse you, ma'am.  Thank you.

1    A    Thank you.

2            THE COURT:  Noel, if you could call the next name.

3            THE CLERK:  Kirby Brakley.

4            EXAMINATION BY THE COURT:

5            OF JUROR BRAKLEY:

6    Q    All right.  Sir, would you state your full name and tell us

7    where you reside?

8    A    Kirby Alan Brakley.  Merrillville, Indiana.

9    Q    How long have you lived in Merrillville?

10   A    About 16 years.

11   Q    Are you employed, sir?

12   A    No, I am retired.

13   Q    From where?

14   A    Rex Construction.

15   Q    What kind of construction firm is that?

16   A    It's a sewer and water, street work.

17   Q    What did you do for them?

18   A    Laborer.

19   Q    And how many years did you have in at that outfit?

20   A    I had 15 in there and 25 in the union.

21   Q    Did you -- what union did you --

22   A    The laborers -- International Laborers Union.

23   Q    Did you ever hold any positions in the union?

24   A    No.

25   Q    As a BA or --

```
 1   A   No.
 2   Q   -- anything like that?
 3           Are you married, sir?
 4   A   Yes.
 5   Q   Is your wife employed?
 6   A   Yes.
 7   Q   What does she do?
 8   A   She is a closer for Chicago Title.
 9   Q   How long has she done that?
10   A   Probably eight years.
11   Q   Do you have any children?
12   A   Yeah, one.
13   Q   How old?
14   A   She is 25.
15   Q   And what does she do?
16   A   She -- she is a mother and works at an oil change company.
17   Q   Okay.  Other than the union, do you belong -- or have you
18   belonged recently to any clubs or organizations?
19   A   No.
20   Q   What do you like to do in your spare time?
21   A   Camping, gardening.
22   Q   What is the extent of your education, sir?
23   A   High school.
24   Q   What kind of things do you like to read in your spare time?
25   A   I read a lot of sports magazines, newspapers.
```

```
1    Q    Do you have any military experience?

2    A    No.

3    Q    Sir, if you're selected as a juror in this case, will you be

4    able to render a verdict solely on the evidence presented in this

5    courtroom and on the law as I give it to you?

6    A    Yes.

7    Q    Do you know of any reason whatsoever why you cannot sit as a

8    fair and impartial juror in this case?

9    A    No.

10   Q    All right.  Thank you, sir.

11              EXAMINATION BY THE COURT:

12              OF JUROR ROARK:

13   Q    Miss Roark?

14   A    Yes.

15   Q    State your full name and tell us where you reside?

16   A    Jodi Lynn Roark.  Crown Point.

17   Q    And how long have you lived in Crown Point?

18   A    About four years.

19   Q    How about before that?

20   A    Merrillville.

21   Q    Are you employed?

22   A    Yes, I work for Fifth Third Bank in Schererville part time.

23   Q    What do you do for the bank?

24   A    I am a teller.

25   Q    How long have you been with that bank?
```

```
 1   A    With the bank, about 30 years.  It's just changed names, but
 2   it's been about 30 years.
 3   Q    And are you married?
 4   A    Yes.
 5   Q    Is your husband employed?
 6   A    Yes, he works for outside sales for April Paper.
 7   Q    And he's a sales rep?
 8   A    Yes.
 9   Q    Do you have any children?
10   A    Yes, I have two.  My daughter is 24 and my son is 14.
11   Q    What's your daughter, who is older --
12   A    She is a teacher at Merrillville High School.
13   Q    What does she teach?
14   A    She teaches math.
15   Q    Where did she go to college?
16   A    She graduated from IU Bloomington.
17   Q    Do you belong to any clubs or organizations?
18   A    No.
19   Q    What do you like to do in your spare time?
20   A    Watch my son play sports.  He's real involved in sports.
21   Q    Ma'am, if you're selected as a juror, will you be able to
22   render a verdict solely on the evidence presented in this courtroom
23   and on the law as I give it to you?
24   A    Yes.
25   Q    Do you know of any reason whatsoever why you can't be a fair
```

1    and impartial juror?

2    A    No.  I've been in a robbery once.  I don't know if that would

3    --

4    Q    We'll get to that in a second.  Let's just talk about it right

5    now.  You were the victim of a robbery?

6    A    Yes.

7    Q    Now, was -- was there somebody eventually charged in that

8    offense?

9    A    I don't know.  I don't know what actually was the outcome of

10   it.

11   Q    Did you ever have to go to court and testify?

12   A    No.  No, I did not.

13   Q    How long ago was that?

14   A    About a year and a half.

15   Q    Obviously, it's a traumatic thing to go through.  But I guess

16   my question to you is, will you be able to set that event aside

17   and, again, decide this case based on the evidence that's presented

18   in this courtroom, and on the law as I give it to you?

19   A    I would hope to.  I mean, I would try, yes.

20   Q    What is it that at all gives you some hesitancy?

21   A    Just firearms I'm not real big on, I'll be honest.

22   Q    Is that as a result of this?

23   A    In general.  Yeah, but that -- the robbery helps.

24   Q    Okay.  Now, we'll come back to that in a second.

                THE COURT:  But let me ask all of the new people that are

25

1    in the jury box a series of some more general questions. Theses are

2    the general questions that I asked the prior panel. And I want the

3    people out in the audience section again to listen up, so if you --

4    I'm not going to repeat these a third time.  So, if you would have

5    answered yes to any of these questions, if you're called to the

6    jury box, I'm just going to ask you that and you're going to have

7    to volunteer the information.

8         So, as I mentioned, you know, the trial of this case is

9    going to take about three or four days, and you're going to --

10   there are many witnesses who will be called and the evidence is

11   presented in sort of a piecemeal fashion.

12        Is there anybody who has an issue with the concept that

13   you have to continue to keep an open mind until you've heard all of

14   the evidence and the law as I'll give it to you?  Any of you knew

15   people in the box have a quarrel with that concept?

16        Now, during your deliberations, you're going to have to

17   listen to the views of your fellow jurors and perhaps change your

18   opinion or reassess your own opinion in an effort to reach a

19   verdict.

20        But again, you can't just vote a certain way simply

21   because you want to reach a verdict and you want to get out of

22   here.  Does everybody understand that idea?  Anyone have a problem

23   with that?

24        Has anyone -- again, I'm addressing the five or six new

25   people in the box.  Has any talked to you about this case or

1    discussed it in your presence?

2         Has anybody -- have any of you formed or expressed an

3    opinion as to the merits of the case?

4         Is any juror familiar with the facts of this particular

5    case?

6         Do any of you know Mr. Price, the Defendant in this case?

7         Do any of you know Mr. Foley or any of the lawyers

8    representing the Government or any of the witnesses that I read

9    earlier?  Do of any you know any of those people?

10        All right.  Have you or any member of your family ever

11   been represented by any of these lawyers?

12        Do any of you know me?

13        Is there anyone here who cannot -- any of the newer

14   people in the box who cannot read, speak or write the English

15   language?

16        Is there anyone who cannot hear or see well?

17        Is there anyone here with any health problems that will

18   interfere with their ability to serve as a juror in this case?

19        Is there anyone who will be unduly burdened with family,

20   business, or financial or medical problems if the trial of this

21   case were to last as many as four days?

22        Have any of you newer people who are in the jury box ever

23   served on a jury before?

24        EXAMINATION BY THE COURT:

25        OF JUROR JORDAN:

```
 1   Q    All right.  Miss Jordan?

 2   A    Yes.

 3   Q    Where did you serve before?

 4   A    In Chicago at the Daley Center.

 5   Q    Was that a civil case?

 6   A    Yes.

 7   Q    What was the nature of that case?

 8   A    A women's husband had gotten killed on an electrical power

 9   line.  And it actually ended up in a mistrial.  Because when the

10   judge polled the jury, one juror said she didn't agree with the

11   outcome of what was said.

12   Q    Did you actually deliberate on the case?

13   A    Yes, we did.

14   Q    Prior to this one juror changing their mind when they were

15   being polled at the end of the case, what was the verdict going to

16   be, I suppose?

17   A    Well, we felt that her husband was educated, and the problem

18   that had happened, but there was -- it's a long story, but --

19   Q    Were you going to find for the Plaintiff or for the Defendant?

20   A    Well, for the Plaintiff.

21   Q    Okay.

22   A    Yes.

23   Q    And had you arrived at a sum of money you were going to award

24   them?

25   A    Yes, uh-huh.
```

```
 1   Q    How much was that?
 2   A    Well, she was asking for one-tenth of the wealth of
 3   Commonwealth Edison.
 4   Q    Okay.
 5   A    And we said no way, you know.  But we were willing to award
 6   her a certain amount of damages.  And I think it was something like
 7   $500,000.
 8   Q    Okay.  Now, again, ma'am, you understand that was a civil
 9   case?
10   A    Yes.
11   Q    And it's governed by a preponderance of the evidence standard.
12   And this is a criminal case, and it's beyond a reasonable doubt.
13   That's the burden that the Government carries throughout the case
14   and throughout your deliberations.  They have to establish the
15   Defendant's guilt beyond a reasonable doubt.
16          You understand that distinction?
17   A    Yes.
18   Q    Is there anything about that prior jury service that in any
19   way causes you to be fair or impartial or prevents you from being
20   fair and impartial either for or against the Government or for or
21   against Mr. Price?
22   A    No.
23          THE COURT:  Anybody else serve on a jury before?
24          All right.  Do any of you or any member of your family
25   have any physical impairment or defect which might affect your
```

1    judgment in this case?

2            Have any of you ever testified in a trial before?

3            EXAMINATION BY THE COURT:

4            OF JUROR GRAY:

5    Q    Yeah, Miss --

6    A    Gray.

7    Q    Miss Gray.

8    A    Back when I was in high school, I was a witness to a fight and

9    I had to testify at that.  There were two individuals that somebody

10   had brought charges.  I also --

11   Q    Was that a criminal case?

12   A    It was a criminal case.  And I believe the Defendant got three

13   years probation on that.

14           I was also -- my bike was stolen and it was -- sorry, it

15   was attempted kidnapping.  And Defendants were also incarcerated

16   for that one.

17   Q    Now, were you the victim of that?

18   A    (Nods head.)

19   Q    How long ago was that, ma'am?

20   A    Probably about 22 years ago.

21   Q    Obviously, it still has a -- bears on you obviously.

22           Do you think you'll be able to -- obviously, that is a

23   terrible thing for anybody to go through.

24           But the question I have to ask you is, will you be able

25   to set that event aside and decide this case based on the evidence

1    that's presented in this courtroom and on the law as I give it to

2    you?

3    A    I've seen the justice system work.  So, I think so.

4    Q    Is there any question about that?

5    A    No.

6    Q    Okay.

7         THE COURT:  Anybody else ever been a witness?

8         All right.  Did everybody hear me read the list of the

9    witnesses?  Any of you know any of those people?  Ever heard of

10   those people, anything like that?

11        All right.  As Mr. Foley's asked, and as you can tell by

12   the witness list, there is going to be several law enforcement

13   officers who may testify in this case.

14        And the question is, would you have any difficulty giving

15   the testimony of law enforcement officers and agents the same

16   weight and the same consideration that you would give the testimony

17   of any other witness?  Anybody have a problem with that concept?

18        Are any of you acquainted with -- relative, close friend

19   who are in law enforcement?

20        All right.  Have any of you or anyone close to you had

21   any difficulty with the law?

22        Have any of you had any experiences with law enforcement

23   or with Government agents which might cause you to be biased or

24   prejudiced either for or against a law enforcement or for or

25   against the Government where it was a really positive experience,

1    or for or against the Defendant where it was a not so positive

2    experience?  Anyone have anything like that?

3        All right.  As I mentioned earlier, the case is being

4    prosecuted by the United States Attorney's office for this

5    district.  Have any of you had any prior dealings with the US

6    Attorney's office that might prevent you from being fair and

7    impartial in this case?

8        All right.  Again, for you six new folks, if you're

9    selected to sit as a juror in this case, you're going to be

10   required to put aside any feeling of passion or prejudice and to

11   decide this case solely on the evidence that's presented in this

12   trial, and in the context of the law as I give it to you.  Even if

13   you personally disagree with the law.

14       Will all of you be able to or will any of you not be able

15   to follow the law even if you personally disagree with it?

16   Anybody?

17       We talked with Miss Gray a little bit about this.  Have

18   any of you others been involved in a criminal matter either as a

19   Defendant or as a -- or have any of your close family members or

20   friends been involved in a criminal case as a victim or as a

21   Defendant or as a witness?

22       Do any of you know of any reason why you may be prejudice

23   in this case, just in general, either for or against the Government

24   or for or against the Defendant?

25       How about again, the nature of this charge, the

1  particular kind of crime that is alleged here, is there anything

2  about that, just the nature of the charge which causes you to be

3  bias or prejudice in this case either for or against the Government

4  or for or against the Defendant?

5      All right.  Do any of you have any problems or

6  reservations with the rule of law which requires you to presume the

7  innocence of Mr. Price throughout the trial and throughout your

8  deliberations, and that the Government must prove its case beyond a

9  reasonable doubt?

10      Anybody quarrel with that concept?

11      All right.  Lastly, again, directing my attention to the

12  six newer people.  If you were the Defendant, or you were the

13  Assistant United States Attorneys prosecuting this case, would you

14  be content having somebody in your frame of mind sitting in

15  judgment in the case?

16      Okay.  Counsel, approach the bench.

17      (Bench conference.)

18      THE COURT:  Mr. Foley, do you have any follow-up

19  questions?

20      MR. FOLEY:  I just have a few, yeah.  Do you want me to

21  tell you?

22      THE COURT:  No.  But at this point, are there any

23  challenges for cause?

24      MR. FOLEY:  Well, not a challenge for cause, but I would

25  not disagree with Susan Gray being excused only because of her

1    emotional -- the degree of emotion that she showed that she was
2    talking about being the victim of a crime.  I don't know if she is
3    going to have any difficulty deliberating because of that.  I will
4    not challenge her for cause, because I don't think I have a cause.
5    I am saying if there is an agreement to excuse her, I don't have a
6    problem.

7         THE COURT:  I'm not going to excuse her.  But if you want
8    to strike her, you're free to do that.  What I'm going to do is let
9    you have a very short period of follow-up if you have any more
10   questions.

11        Mr. Lanter, are you going to have any follow-up
12   questions?

13        MR. LANTER:  No, Your Honor.

14        THE COURT:  And I'll have you do your challenges for
15   cause and peremptories

16        (End of bench conference.)

17        THE COURT:  Mr. Foley, you may proceed if you have any
18   follow-up questions for the new people, the new members of the
19   jury.

20        MR. FOLEY:  Just a couple, Your Honor.  I always say
21   that, just a couple.  And I do just have a couple.

22        EXAMINATION BY MR. FOLEY:

23        OF JUROR GRAY:

24   Q    Susan, you indicated that you had been the victim of a crime.
25   And obviously, you got a little emotional concerning that.  And my

1   concern is that you're going to be fair and impartial here with my

2   client.  Is there anything about that incident that would make you

3   something other than fair and impartial?  That is, do you already

4   have a preconceived prejudice against somebody that may have had a

5   prior felony conviction or somebody that has a firearm or anything

6   like that, that would make you prejudice against my client in this

7   case?

8   A   I don't think so.

9   Q   Okay.  All right.

10              EXAMINATION BY MR. FOLEY:

11              OF JUROR ROARK:

12  Q   And Jodi, you said that you were the victim of a robbery?

13  A   Yes.

14  Q   Basically, the same question.  I am not going to repeat it.

15  Is there anything as a result of that incident that would make you

16  something other than fair and impartial?

17  A   I would hope not.  It was a traumatic incident, but I never --

18  you know, I haven't had to judge anybody.  I hope I would be very

19  impartial.  I would try.

20  Q   When you go back in the jury room, will you be able to set

21  that aside and say look, I'm looking at this case, and I can't let

22  that affect me?  Would you be able to do that?

23  A   I will do my best, yes.  I would try.  I -- that's all I can

24  tell you.

25  Q   That's all we can ask.

1          EXAMINATION BY MR. FOLEY:

2          OF JUROR JONES:

3     Q    And Mr. Jones.

4     A    Yes.

5     Q    Alan, I think you said something about somebody in your family

6     being a security officer?

7     A    Yes.  Private security company in Milwaukee, yeah.  I'm not

8     that close to it.  They do security work for several buildings,

9     Federal buildings and such around the Milwaukee area.

10    Q    Would that have any effect on your judgment in this case?

11    A    No.

12         MR. FOLEY:  And in essence, I'm going to ask this of all

13    the new jurors.  We've talked about this several times.  But with

14    regard to law enforcement, is there anybody on the panel that would

15    have a problem with making a finding in this case, a judgment in

16    this case that would be contrary to what many law enforcement

17    officers may be testifying to?

18         Anyone that would disagree that a law enforcement

19    officer, like anybody else, is capable of lying?

20         That's all.  Thank you very much.

21         THE COURT:  All right.  Counsel, I'd give you time to

22    confer and to make your challenges.

23         (Bench conference.)

24         THE COURT:  All right.  Any challenges for cause, Mr.

25    Foley?

1      MR. FOLEY:  I would ask that Susan Gray be challenged for

2  cause just based upon her emotional responses concerning her

3  ability to be fair and impartial.

4      THE COURT:  Mr. Lanter.

5      MR. LANTER:  Government would object to that.  She

6  indicated she can be fair and impartial, and she also indicated

7  that she takes the justice system very importantly and very

8  strongly and she could be fair and impartial.

9      THE COURT:  I agree.  I really do not see any reason to

10  strike her for cause.  You -- she strikes me as somebody who is

11  answering as honestly as she possibly can.

12      And she said that would be fair and impartial.  She did

13  go through a difficult event 22 years ago, but has said she can

14  decide this case based on the evidence and the law as I give it to

15  her.  And I take her at her word.  So, that is denied.

16      Any peremptory challenges?

17      Okay.  The Government challenges Patricia Jordan.  And

18  the Defendant challenges Susan Gray and Mr. Brakley.  Where is he

19  at?  Kirby Brakley in seat 10.  And Jodi Roark in seat 12.

20      Okay.  Any objection to any of those strikes, Mr. Lanter?

21      MR. LANTER:  No, Your Honor.

22      THE COURT:  Mr. Foley.

23      MR. FOLEY:  No objection.

24      THE COURT:  Okay.  That leaves you with two strikes, and

25  got Government has four.  So, get going here.

 1          (End of bench conference.)

 2          THE COURT:  Okay.  I'm going to excuse Miss Jordan, Miss

 3     Gray, Mr. Brakley, and Miss Roark.  Thank you all very much.

 4     Again, thank you for responding to the summons and answering so

 5     forthrightly.

 6          THE COURT:  All right.  Noel, if you could call four more

 7     names.

 8          THE CLERK:  Patricia Ewing.

 9          Charles Smith.

10          Jane Franz.

11          THE COURT:  One more, Noel.

12          THE CLERK:  Sorry.  Katherine Chermak.

13          EXAMINATION BY THE COURT:

14          OF JUROR EWING:

15     Q    All right.  Miss Ewing, good morning.  Please state your full

16     name and tell us where you reside?

17     A    My name is Patricia A. Ewing.  And I live in Whiting, Indiana.

18     Q    And are you employed, ma'am?

19     A    Yes, I am.

20     Q    Where do you work at?

21     A    I work for Calumet Flexicore here in Hammond.

22     Q    How long have you worked there?

23     A    I've been with them for 13 years.

24     Q    Are you married?

25     A    Divorced.

1    Q    And do you have any children?

2    A    Yes, I have four.

3    Q    Are they all grown and gone?

4    A    Yes, they are.  They all are out on their own raising their

5    own families.

6    Q    Can you tell me what they do?

7    A    Oldest son is 47.  He works for Rubicon and lives in

8    Louisiana.  Daughter works up in Chicago as a business manager for

9    AIG.  Second son works down in Louisiana for Oxydental Chemical.

10   And third son works up in Chicago for General Electric.

11   Q    What is the extent of your education?

12   A    High school plus training thereafter on the job.

13   Q    Okay.  How long have you lived over in Whiting?

14   A    Well, I lived there for 18 years, took off for 22 years, and

15   came back and have been there another 22 years.  So, about 44

16   years.

17   Q    Where did you live in the interim?

18   A    Well, all over the United States with the United States Marine

19   Corps.

20   Q    Was your ex-husband in the Marine Corps?

21   A    Yes, he was.

22   Q    Now, do you belong to any clubs or organizations?

23   A    No, sir.

24   Q    What kind of -- what kind of things do you like to read in

25   your spare time?

```
 1   A    I am a history buff.  I've been following up on the -- not so
 2   much the history of the United States, but the wars, Civil War on
 3   to the First World War.  And I have just gotten into the second
 4   world war.  And I do that through the history club and their
 5   magazines, books and tapes.
 6   Q    And what kind of things do you like to watch on TV?
 7   A    Oh, of course, "CSI."  Basically that.  And I do enjoy the
 8   history channel and the learning channel.
 9   Q    Ma'am, if you're selected as a juror in this case, will you be
10   able to render a verdict solely on the evidence presented in this
11   courtroom and on the law as I give it to you?
12   A    Yes, sir.
13   Q    Do you know of any reason whatsoever why you can't be a fair
14   and impartial juror?
15   A    No, sir.
16   Q    Thank you, ma'am.
17           THE COURT:  All right.  I guess we are in the back row.
18           EXAMINATION BY THE COURT:
19           JUROR CHARLES SMITH:
20   Q    Mr. Smith?
21   A    Yes, Charles Smith.  Hammond, Indiana.
22   Q    How long have you lived here in Hammond?
23   A    All my life.  Except for my time in the military.
24   Q    What branch of the service were you in?
25   A    Air Force for eight years.
```

```
 1   Q    All right.  Are you employed, sir?

 2   A    Yes, sir.

 3   Q    What do you do?

 4   A    I am a bricklayer superintendent for a small contractor out of

 5   Griffith.

 6   Q    Are you in the union, the bricklayers' union?

 7   A    Yes.

 8   Q    How long have you worked for this contractor?

 9   A    I've been with them for nine years.

10   Q    All right.  Are you married, sir?

11   A    Yes, I am.

12   Q    Is your wife employed?

13   A    Yes, she is, at K-mart.

14   Q    Do you have any children?

15   A    One daughter, yes.

16   Q    How old is she?

17   A    31.

18   Q    Is she off on her own now, I take it?

19   A    Yes.

20   Q    What does she do?

21   A    She is a fitness trainer at Omni.

22   Q    Okay.  What is the extent of your education?

23   A    High school.

24   Q    Do you belong to any clubs or organizations?

25   A    No.  Just my union.
```

```
 1   Q    Do you own your own home?

 2   A    Yes, I do.

 3   Q    What kind of magazines, newspapers, those sorts of things do

 4   you read?

 5   A    The Hammond Times and newspapers and that, and one fishing

 6   magazine.  I get a magazine every month I read.  Other than that,

 7   that's about it.

 8   Q    What kind of things do you like to do in your spare time?

 9   A    Fish and golf.

10   Q    Sir, if you're selected as juror in this case, will you be

11   able to render a verdict solely on the evidence presented in this

12   courtroom and on the law as I give it to you?

13   A    Yes, sir.

14   Q    Do you know of any reason whatsoever why you can't be a fair

15   and impartial juror?

16   A    No, sir.  Not at all.

17   Q    All right.  Thank you, sir.

18   A    Sure.

19            EXAMINATION BY THE COURT:

20            OF JUROR FRANZ:

21   Q    Miss Franz, is it?

22   A    Yes.

23   Q    Would you tell us your full name and tell us where you reside?

24   A    Jane Ann Franz.  Merrillville, Indiana.

25   Q    And how long have you lived in Merrillville?
```

```
1    A    32 years.

2    Q    Are you employed, ma'am?

3    A    Yes, I am.

4    Q    Where do you work at?

5    A    For two podiatrists in Merrillville.

6    Q    And what do you do for that podiatrist?

7    A    Patient coordinator, technician.

8    Q    What podiatrist do you work for?

9    A    Friendly Foot Care.  Dr. Nirenberg and Dr. Carroll.

10   Q    And are you married?

11   A    Yes, I am.

12   Q    Is your husband employed?

13   A    Yes, he is.

14   Q    What does he do?

15   A    He is an analyzing technician for Master Photo Lab in Crown

16   Point.

17   Q    Do you have any children?

18   A    We have three.

19   Q    And how old are they?

20   A    31, 26, and 23.

21   Q    What do they do?

22   A    The oldest has -- is he a clinical director for Pathway House

23   in Indianapolis.  The middle one was just certified nationally as a

24   paramedic.  And our daughter is a phlebotomist.

25   Q    What do you like to do in your spare time?
```

1   A    I am a bowler and create and design wedding cakes.

2   Q    And how about newspapers, magazines, what kind of things do

3   you read?

4   A    Cake Design and once in awhile the Hammond Times.

5   Q    There's actually a magazine called Cake Design?

6   A    Yes, there is.  For technique and --

7   Q    Okay.  Ma'am, if you're selected as a juror in this case, will

8   you be able to render a verdict solely on the evidence presented in

9   this courtroom and on the law as I give it to you?

10  A    Yes, I would.

11  Q    Do you know of any reason whatsoever why you can't be a fair

12  and impartial juror in this case?

13  A    No, I don't.

14  Q    All right.  Thank you, ma'am.

15               EXAMINATION BY THE COURT:

16               OF JUROR CHERMAK:

17  Q    Miss Chermak?

18  Q    Katherine Chermak.  Lowell.

19  Q    Chermak, I'm sorry.

20  A    That's okay.

21  Q    Are you employed?

22  A    Yes, I am.

23  Q    Where do you work at?

24  A    I am a secretary at the Lowell Church of Christ.

25  Q    And what -- is that a law firm or --

| | | |
|---|---|---|
| 1 | A | No. Lowell Church of Christ. It's a church. |
| 2 | Q | Lowell Church of Christ. I thought you ran a bunch of names |
| 3 | | together. |
| 4 | | How long have you done that for? |
| 5 | A | Seven years. |
| 6 | Q | And are you married? |
| 7 | A | Yes. |
| 8 | Q | And what does your husband do? |
| 9 | A | He is an electrician. |
| 10 | Q | Do you have any children? |
| 11 | A | Two. |
| 12 | Q | They young kids still with you? |
| 13 | A | Daughter, 22. And a son, 19. |
| 14 | Q | What does your daughter do? |
| 15 | A | She'll graduate from college this Sunday. |
| 16 | Q | Good for you. Where is she graduating from? |
| 17 | A | University of Southern Indiana. |
| 18 | Q | What did she study down there? |
| 19 | A | Child psychology. |
| 20 | Q | Got a job yet? |
| 21 | A | No. |
| 22 | Q | How about your little one? |
| 23 | A | The 19 year old? |
| 24 | Q | Yeah. |
| 25 | A | He's going for law enforcement at IUN Northwest. |

```
1   Q    Okay.  Is he -- how far along?  Is he like a sophomore?

2   A    Freshman.

3   Q    Okay.  What do you like to do in your spare time?

4   A    Garden, decorate, yard work.

5   Q    What is the extent of your education?

6   A    High school diploma.

7   Q    How about your husband?

8   A    Same.  And then in the trade.  He's in the union.

9   Q    Okay.  Do you belong to any clubs or organizations?

10  A    No.

11  Q    What kind of things do you like to read?

12  A    Fictional.  Dean Koontz, stuff like that.

13  Q    How about television, what kind of things do you like to watch

14  on TV?

15  A    "CSI," those types of things.

16  Q    Miss Chermak, if you're selected as a juror in this case, will

17  you be able to render a verdict solely on the evidence presented in

18  this courtroom and on the law as I give it to you?

19  A    Yes.

20  Q    Do you know of any reason whatsoever why you can't be a fair

21  and impartial juror?

22  A    No.

23       THE COURT:  Okay.  Now, the four new people that are in

24  the box, speaking now to -- well, the four new people, did you hear

25  the whole series of questions that I asked twice now to the earlier
```

1  panel? Everybody heard those? Would any of you answered any of

2  those questions affirmatively?

3         For example, did you ever serve on a jury before?

4         Have you ever been a witness in a criminal or any kind of

5  trial?

6         Have any of you ever formed or expressed an opinion on

7  this case before?

8         Have you ever heard of this case?

9         Any of you familiar with the facts of this case at all?

10        Do any of you know Mr. Price or Mr. Foley or myself or

11  any of the lawyers or the Government agent that is sitting in the

12  courtroom? Any of you know any of these people?

13        How about the witnesses that you read, any of you know

14  any of the witnesses?

15        Okay. Any of you who cannot read, right or speak the

16  English language?

17        Is there anyone who can't hear and see well?

18        Anybody who is going to be unduly burdened in their

19  business or financial situation or medical condition or family

20  problem if you have to be here for perhaps as long as four days?

21  Anybody who can't do that?

22        Any of you have any close family members or -- in law

23  enforcement, or close friends?

24        Any of you have close friends or family members who are

25  lawyers?

1    Any of you had any experiences with law enforcement

2 officers that have been overly positive or not so positive that

3 might cause you to be bias or prejudice in this case either for or

4 against the Government or for or against Mr. Price?

5    Any experiences with the US Attorney's office that might

6 cause you to be bias or prejudice either way in this case?

7    You know, if you're selected, again, to sit in this case,

8 you're going to have to set aside any feelings of passion or

9 prejudice or bias, and decide the case solely on the evidence

10 that's presented in this courtroom and on the law as I give it to

11 you. Are any of you unable to do that or unwilling to do that?

12    Do any of you have a quarrel with the concept that even

13 if you personally disagree with what the law is, that you take an

14 oath to follow the law?

15    Are any of you unable or unwilling to do that?

16    Any of you bias or prejudice, again, because the nature

17 of this -- of this offense, the type of offense that's charged?

18    Do any of you have any problems or reservations about the

19 rule of law which requires you to presume the innocence of the

20 Defendant, and to presume his innocence throughout the trial, and

21 that the Government must prove its case beyond a reasonable doubt?

22 Anybody have an issue with that concept?

23    Again, if -- again, talking to the four newer jurors, if

24 you were the Defendant or if you were the Government lawyers

25 prosecuting this case, do you know of any reason why you would not

1   be content or happy with somebody in your frame of mind deciding

2   this case?

3           All right.  Mr. Foley, do you have any follow-up

4   questions?

5           MR. FOLEY:  Just a couple, Judge.

6           THE COURT:  Sure.

7           EXAMINATION BY MR. FOLEY:

8           OF JUROR CHERMAK:

9   Q    Katherine Chermak, is it?

10  A    Uh-huh.

11  Q    I know you indicated that your son is going to law

12  enforcement?

13  A    He's a freshman at IUN.  So, basically, this year is just

14  basics.  But yes, that is what he wants to go into.

15  Q    Like a criminal justice major or something like that?

16  A    Uh-huh.

17  Q    Do you think that's going to affect your judgment in this case

18  with regard to the credibility of police officers testifying?

19  A    No.

20  Q    And I just -- usually people going into law enforcement, they

21  know somebody or have a mentor or somebody like that.  Does he have

22  anybody?

23  A    His golf coach was a police officer.

24  Q    And I am assuming you knew the golf coach?

25  A    I know him, yes.  I don't socialize with him.  I just knew him

1    as the golf coach.

2    Q    During the course of the trial, as already indicated, there

3    may come a time when I may be questioning the credibility of some

4    police officers.

5    A    Uh-huh.

6    Q    Do you have a problem with that at all?

7    A    No.

8    Q    And would you be willing to judge the credibility of a law

9    enforcement officer just like any other witness, any other human

10   being?

11   A    Yes.

12   Q    You don't feel any kind of a duty to return a verdict for the

13   Government because your son is going into law enforcement or

14   anything like that?

15   A    No.  No.

16        MR. FOLEY:  And very lastly, and this goes to all of the

17   new jurors.  The judge indicated that the burden is on the

18   Government throughout the entire trial to prove guilt beyond a

19   reasonable doubt.  And certainly, by implication, that means that

20   the Defendant has no burden whatsoever.  Do you all feel

21   comfortable with that concept?

22        And I take it that everybody feels comfortable by not

23   saying anything.

24        Do you also understand that the Defendant doesn't have to

25   prove anything at all, doesn't have to testify, bring forth any

1   evidence, whatsoever, and that cannot be a factor in your decision?

2        You all feel comfortable with that?

3        Nobody here is going to say well, gees, you know, he

4   should have presented some evidence or should have testified or

5   something, otherwise, he must be guilty?

6        Nobody is going to go back there and say that, is that

7   correct?

8        All right.  Thank you.

9        THE COURT:  All right.  Thank you, Mr. Foley.

10       Mr. Lanter or Mr. Padilla, do you have anything?

11       MR. LANTER:  No, Your Honor.

12       THE COURT:  All right.  You can confer and do your

13  strikes.

14       (Bench conference.)

15       THE COURT:  Any challenges for cause?

16       MR. FOLEY:  No, Your Honor.

17       MR. LANTER:  No, Your Honor.

18       THE COURT:  Peremptories.

19       The Government challenges no one, and the Defendant

20  challenges Katherine Chermak.

21       Mr. Foley, you have one left.  And the Government still

22  has four remaining.

23       (End of bench conference.)

24       THE COURT:  All right.  Noel, call -- oh, I'm sorry.

25       Miss Chermak, I'm going to excuse you.  Thank you very

1   much for coming.

2           Noel, if you could, call one more name.

3           THE CLERK:  Elizabeth Smith.

4           EXAMINATION BY THE COURT:

5           OF JUROR ELIZABETH SMITH:

6   Q   Good morning, Miss Smith.  Please state your full name and

7   tell us where you reside?

8   A   My name is Elizabeth Ann Smith.  And I reside in Gary, Indiana

9   for the last 45 years.

10  Q   Are you employed?

11  A   Yes, sir.

12  Q   Where do you work at?

13  A   In a lab supervisor for Alverno Clinical Laboratories.

14  Q   And where is that out of?

15  A   Hammond.

16  Q   And are you married?

17  A   Yes.

18  Q   Is your husband employed?

19  A   Yes.  He's a carpenter for Local 1005.

20  Q   Do you have any children?

21  A   Yes, I have a daughter that's 14.

22  Q   What do you like to do in your spare time, ma'am?

23  A   I like to garden.  A beach bum.  I'm about a block away from

24  the beach.  Spend a lot of time there.

25  Q   What is the extent of your education?

1   A   I have an Associate's degree in medical laboratory science.

2   Q   And how about your husband, what is the extent of his

3   education?

4   A   High school, and on-the-job training.

5   Q   Okay.  Do you belong to any clubs or organizations?

6   A   Not other than professional organizations, my credentialing.

7   Q   Have you ever served in the military?

8   A   No.

9   Q   What kind of things do you like to read and watch on TV?

10  A   Well, to be different, I like "Queer Eye For The Straight

11  Guy."  But I also watch all the "CSI's."  I am a freak for that.

12  Fiction.  Romance novels.  I run the gamut.

13  Q   How long did you say you've lived over in Gary?

14  A   45 years.

15  Q   45 years.  Okay.

16      Ma'am, if you're selected as a juror, will you be able to

17  render a verdict solely on the evidence presented and the law as

18  given to you by the Court?

19  A   I believe I can.

20  Q   Do you know of any reason whatsoever why you can't be a fair

21  and impartial juror?

22  A   No.

23  Q   All right.  Now, Miss Smith, did you hear me ask that whole

24  range of other questions --

25  A   Yes, sir.

```
1   Q     -- that I've asked of all of the other people?

2           Would you have answered affirmatively to any of those?

3   A     No.

4   Q     Never served on a jury before --

5   A     No.

6   Q     -- for example?

7           Never expressed or formed an opinion about this case?

8   A     Don't have any knowledge of it.

9   Q     Don't know anything about it?

10  A     No.

11  Q     Do you know any of the lawyers or Mr. Price or myself or

12  anybody else that's associated with the case including the witness

13  list?

14  A     No.

15  Q     Would you be able to decide this case solely based upon the

16  evidence that's presented in this courtroom and on the law as I

17  give it to you?

18  A     Yes.

19  Q     And will you be able to -- even if you personally disagree

20  with what the law is, will you be able to follow it?

21  A     Sure.

22          THE COURT:  All right.  Mr. Foley, do you have any

23  follow-up questions for Miss Smith?

24          EXAMINATION BY MR. FOLEY:

25          OF JUROR SMITH:
```

1   Q    The whole range of questions that I asked, any -- raise any

2   questions or concerns with you about what I've already asked the

3   other jurors?

4   A    No.

5   Q    So, you think you would be fair and impartial in light of

6   everything that I've already asked?  No different answers than what

7   anybody else has given?

8   A    No.

9   Q    Okay.  Thank you.

10           THE COURT:  Mr. Lanter, do you have anything else?

11           MR. LANTER:  No, Your Honor.

12           THE COURT:  All right.  I'll give you time to consult,

13   confer.

14           (Bench conference.)

15           THE COURT:  Any challenges for cause?

16           MR. LANTER:  No, Your Honor.

17           THE COURT:  Peremptories.

18           Government has none.  Defendant has none.

19           Does the Defendant accept this jury?

20           MR. FOLEY:  Yes.

21           MR. LANTER:  Yes, Your honor.

22           THE COURT:  What we'll do is select two alternates.

23           And I will ask you that again afterwards.

24           But you have one strike as it relates to the alternates.

25   And the strikes don't carry over from the previous ones.

```
 1           So, we'll select two alternates, and then probably go to
 2   lunch and have you do opening statements right after.  Okay.
 3           (End of bench conference.)
 4           THE COURT:  All right.  Noel, if you would, please call
 5   two more names.
 6           THE CLERK:  April Neri.
 7           Patricia Kerr.
 8           EXAMINATION BY THE COURT:
 9           OF JUROR NERI:
10   Q    All right.  Miss Neri, let's start with you.  Would you please
11   state your full name and tell us where you reside?
12   A    April Susan Neri.  I live in Beverly Shores.
13   Q    How long have you lived in Beverly Shores?
14   A    Three years.
15   Q    Where did you live before that?
16   A    Crown Point.
17   Q    Are you employed?
18   A    Yes.
19   Q    Where do you work at?
20   A    Chicago Mercantile Exchange.
21   Q    What do you do at the Merc?
22   A    I'm a systems programmer, computer.  I work with computers.
23   Q    How long have you worked there?
24   A    Four years.
25   Q    Are you married?
```

```
 1   A    No.

 2   Q    And what is the extent of your education?

 3   A    Associate degree in information technology.

 4   Q    Where did you work at before you worked at the Mercantile

 5   Exchange?

 6   A    I worked as a consultant.  It's all in the same field,

 7   information technology.  And I also worked in the steel mills.

 8   Q    Okay.  Do you have any children?

 9   A    Yes, I have two.

10   Q    Okay.  And how old are your children?

11   A    26 and 22.

12   Q    Are they grown and gone, I take?

13   A    They are grown, but not gone.

14   Q    What does your 26 year old do?

15   A    She is an attorney.

16   Q    And what kind of lawyer is she?

17   A    She is an insurance defense lawyer.

18   Q    And who does she work for?

19   A    She works for Garretson & Cintorro.  It's in Chicago.

20   Q    She still lives with you though?

21   A    Yes.

22   Q    She's 26.  She's probably been practicing law for a very short

23   period?

24   A    Very short time, yes.

25   Q    Where did she go to law school at?
```

1    A    She went to Valpo.

2    Q    Does she do any criminal work at all?

3    A    She -- she did as an intern for another judge.  But what she

4    does now is all insurance -- like I say, insurance defense.

5    Q    What does your other child do?

6    A    She is finishing her student teaching.  She'll graduate in

7    May.

8    Q    Your daughter who is a lawyer, you understand that if you're

9    selected to serve in this case, you can't go home and discuss the

10    case with your daughter and ask her questions about what may have

11    taken place in here.  You have to keep everything pretty much to

12    yourself.  In fact, not pretty much; totally to yourself.

13    A    Right.  I understand.

14    Q    You going to be able to do that?

15    A    Yes.

16    Q    Any question about that?

17    A    No.

18    Q    Now, at the conclusion of the trial, if you're selected as a

19    juror, I'll release you from that, and you can go and talk to your

20    daughter about your experience and -- but while the trial is going

21    on and prior to any deliberations, you have to be very circumspect

22    and keep matters to yourself.  And I take it you'll be able to do

23    that?

24    A    Yes.

25    Q    Do you belong to any clubs or organizations?

1  A    No.

2  Q    What kind of things do you like to do in your spare time?

3  A    I like to golf and bowl.

4  Q    And what kind of things do you read in your spare time?

5  A    Science fiction.  I read Rolling Stone.  I read the newspaper

6  daily.

7  Q    Okay.  Ma'am, if you're selected as a juror in this case, will

8  you be able to render a verdict solely on the evidence presented

9  and the law as I give it to you?

10 A    Yes.

11 Q    Do you know of any reason whatsoever why you can't be a fair

12 and impartial juror in this case?

13 A    No.

14 Q    If you could hand the mic to the person behind you.

15      MR. LANTER:  Your Honor, may we approach a minute?

16      THE COURT:  Sure.

17      (Bench conference.)

18      THE COURT:  All right.  Mr. Lanter.

19      MR. LANTER:  We might have the same issues with Miss Kerr

20 that we had with Lonnie McDade.  I don't know if the Defendant is

21 housed in the Lake County jail she works at.  I want to bring that

22 to everyone's attention.  We can go down the same path we went

23 before.

24      THE COURT:  Okay.  I want to --

25      MR. FOLEY:  She is a crisis counselor in the Lake County

1   jail.

2         THE COURT:  Has he been held in the Lake County jail

3   during the pendency of this case?

4         MR. FOLEY:  I -- since I've been representing him, he's

5   been at the MCC.  But he might have been at Porter.  I don't know

6   if he was at Lake County.  I'd have to ask him.  I was the second

7   attorney.

8         THE COURT:  Right.  Right.

9         MR. LANTER:  I think he was originally at Porter County

10   and then moved to the MCC.  But maybe we can ask him just -- I just

11   don't want us to get --

12         THE COURT:  Could you ask Mr. Price.

13         MR. FOLEY:  Sure.

14         (Attorney Foley leaves bench.)

15         (Conference between counsel and Defendant, not within

16         hearing.)

17         (Attorney Foley returns to bench)

18         (Continued bench conference.)

19         MR. FOLEY:  He indicates he was never there.

20         THE COURT:  Okay.

21         MR. FOLEY:  In this case it was just Porter and MCC.

22         THE COURT:  If I hear anything, I'll cut her off quickly.

23   Let's proceed.

24         (End of bench conference.)

25         EXAMINATION BY THE COURT:

```
1           OF JUROR KERR:

2    Q    Miss Kerr, where do you reside?

3    A    Dyer.

4    Q    And are you married?

5    A    Yes.

6    Q    Is your husband employed?

7    A    Yes.

8    Q    What does he do?

9    A    He just got his Masters degree.  So, he's substitute teaching.

10   He'll be teaching in the fall.

11   Q    Okay.  And are you employed?

12   A    Yes.

13   Q    Where do you work at?

14   A    I am a mental health counselor at Lake County jail.

15   Q    Okay.  And how long have you done that for?

16   A    Four years.

17   Q    Now, do you have any children?

18   A    No.

19   Q    Do you belong to any clubs or organizations?

20   A    No.

21   Q    Do you have any military experience?

22   A    No.

23   Q    What kind of things do you like to do in your spare time?

24   A    I spend a lot of time with friends and family, go to gym.

25   Q    What kind of things do you like to read?
```

```
 1   A    I read The Times, some clothing magazines, things like that.
 2   Q    Ma'am, if you're selected as a juror, will you be able to
 3   render a verdict solely on the evidence presented in this courtroom
 4   and on the law as I give it to you?
 5   A    Yes.
 6   Q    Do you know of any reason whatsoever why you can't sit as a
 7   fair and impartial juror in this case?
 8   A    No.
 9        THE COURT:  Now, Miss Kerr and Miss Neri, did you hear
10   the whole range of general questions that I had asked to the entire
11   panel several times now?
12        Did you hear those, Miss Kerr?
13        JUROR KERR:  Yes.
14        THE COURT:  Miss Neri?
15        JUROR NERI:  Yes.
16        THE COURT:  Would you have answered affirmatively or do
17   you have any other information that you need to provide to me or
18   the parties in answer to any of those more general questions?
19        JUROR NERI:  I served on a jury before.
20        EXAMINATION BY THE COURT:
21        OF JUROR NERI:
22   Q    Okay.  Let's talk about that.  Where did you serve on a jury?
23   A    It was Lake County.
24   Q    And was that a criminal case or civil case?
25   A    It was a criminal case.
```

```
 1   Q    What kind of criminal case was it?

 2   A    It was a murder trial.

 3   Q    And did you render a verdict in the case?

 4   A    Yes.

 5   Q    What was the verdict?

 6   A    Guilty.

 7   Q    Were you the foreperson on the case?

 8   A    No.

 9   Q    How long ago was that jury service?

10   A    It was probably 13 years ago.

11   Q    Is there anything about that earlier jury service that's going

12   to -- that left a bad taste in your mouth or anything that makes

13   you hold a grudge sort of against the system, as it were, or

14   anything like that?

15   A    No.

16   Q    Obviously, it was a different case.  It was a state case.

17   Different set of circumstances.  Different law applies.

18          The question I have is will you be able to set that prior

19   experience aside and, again, decide this case based on the evidence

20   that's presented in this courtroom and on the law as I give it to

21   you?

22   A    Yes.

23   Q    Do you know of any reason why you can't be a fair and

24   impartial juror in this case?

25   A    No.
```

1    Q    Any other -- would you have answered yes to any of those other

2    questions?

3         Do you know any of the participants in the case?

4    A    (Shakes head.)

5    Q    Do you know any of the witnesses in the case?

6    A    (Shakes head.)

7    Q    A lot of law enforcement officers are going to testify.  Will

8    you be able to treat the testimony of law enforcement officers in

9    the same way as you would treat anybody else's testimony?

10        THE COURT:  Both of you.

11        Any question about that?

12        Any of you have a problem with the concept that you have

13   to follow the law as I give it to you even if you personally

14   disagree with it?

15        Any of you have any specialized training or do you --

16   closely associated with, other than your daughter, with a lawyer?

17        Or law enforcement officers?

18        Any friends or close family members who are in law

19   enforce?

20        JUROR KERR:  A close friend of mine is a conservation

21   officer.

22        EXAMINATION BY THE COURT:

23        OF JUROR KERR:

24   Q    Okay.  Where is that conservation?

25   A    She is in Indiana.

1    Q    I take it nothing about that is going to prevent you from

2    being fair and impartial in this case?

3    A    (Shakes head.)

4         THE COURT:  Is there anything about the nature of this

5    criminal charge that's charged in this case that would cause you to

6    be prejudice merely because somebody is accused of that particular

7    crime?

8         Either of you have any problems or reservation about the

9    rule of law that presumes the innocence of Mr. Price, and that the

10   Government must prove its case beyond a reasonable doubt?  Any

11   problem with that concept or concern about that?

12        All right.  If either or both of you are selected as

13   jurors in this case, you're going to be required to put aside any

14   feelings of passion or prejudice, and to decide this case solely on

15   the evidence that's introduced during the trial and the

16   instructions that the Court will give you concerning the law.

17        Is there anyone who is unable or -- any of you who are

18   unable or unwilling to do that?

19        Lastly, as I've asked the others, if either of you two

20   were sitting in the position of the prosecutors prosecuting the

21   case or Mr. Price, who is charged with this offense, do either of

22   you know of any reason why you would not be content having somebody

23   in your frame of mind deciding this case?

24        All right.  Mr. Lanter, do you have any follow-up

25   questions?

```
 1          MR. LANTER:  No, Your Honor.

 2          THE COURT:  Mr. Foley.

 3          MR. FOLEY:  Yes, Your Honor.

 4          EXAMINATION BY MR. FOLEY:

 5          JUROR KERR:

 6   Q    Being that you work in the Lake County jail, you must have

 7   associates that are law enforcement?

 8   A    I work in booking also.  So, I see officers daily.

 9   Q    Once again, and I've asked this many times of the other jurors

10   about whether or not you would have a problem with me changing the

11   credibility of law enforcement officers in this case?

12   A    No.

13   Q    And do you agree with the concept that a law enforcement

14   officer, whether it's a Federal agent, a police officer,

15   correctional, anybody, is capable of either misrepresenting the

16   truth, lying, or making a mistake about the truth?

17   A    Yes.

18   Q    And you don't have any problem with that?

19   A    (Shakes head.)

20          MR. FOLEY:  No other questions.

21          THE COURT:  All right.  You can confer, and approach when

22   you're ready.

23          (Bench conference.)

24          THE COURT:  Any challenges for cause?

25          MR. FOLEY:  No.
```

```
 1            THE COURT:  Peremptory challenges.

 2            The Defendant has none, and the Government challenges

 3    Patricia Kerr.

 4            Okay.  You have one left, obviously, on the alternates.

 5    And the Government has none.

 6            (End of bench conference.)

 7            THE COURT:  Miss Kerr, I'm going to excuse you.  Thank

 8    you very much for coming.

 9            Noel, if you could call another name, please.

10            THE CLERK:  Lisa Ashenbrener.

11            EXAMINATION BY THE COURT:

12            OF JUROR ASHENBRENER:

13    Q     Will you please state your name and spell your last name?

14    A     Spell it?

15    Q     No, I'm sorry.  State your name and tell us where you reside?

16    A     Lisa Ashenbrener.  Schererville, Indiana.

17    Q     How long have you lived in Schererville?

18    A     Going on 17 years.

19    Q     Are you employed?

20    A     I recently retired.

21    Q     From what?

22    A     I was a business manager for two OB/GYN physicians.

23    Q     All right.  And are you married?

24    A     Yes.

25    Q     Does your husband work?
```

```
 1   A    Yes.

 2   Q    What's he do?

 3   A    He is an electrical engineer.

 4   Q    Who does he work for?

 5   A    US Steel.

 6   Q    And how long has he been over at US Steel?

 7   A    18 years.  18, 19 years.

 8   Q    Did you say -- were you an office manager or a nurse type,

 9   medical?

10   A    No, manager.

11   Q    You managed the office?.

12   A    Uh-huh.

13   Q    Do you have any children?

14   A    Two

15   Q    And how old are your children?

16   A    15 and 12.

17   Q    Do you belong to any clubs or organizations, ma'am?

18   A    Not since I retired.

19   Q    What before you retired?

20   A    The Northwest Indiana Health Information Management

21   Association.  I was on the executive board.

22   Q    What is the extent of your education?

23   A    Associate's in health information management.

24   Q    What do you like to do in your spare time?

25   A    Read, gardening.  We go hiking.  Things like that.
```

1  Q   Do you own your own home?

2  A   Yes.

3  Q   What kind of things do you like to read?

4  A   Mystery, fiction, you know, Dean Koontz and Stephen King, that

5  kind of stuff.

6  Q   All right.  Miss Ashenbrener, if you're selected as a juror,

7  will you be able to render a verdict solely on the evidence

8  presented in this courtroom and on the law as I give it to you?

9  A   Yes.

10  Q   Do you know of any reason whatsoever why you can't be a fair

11  and impartial juror in this case?

12  A   No.

13  Q   Ma'am, did you hear the whole series of questions that I

14  asked, the more general questions?

15  A   Yes.

16  Q   Would you have answered of any those questions affirmatively

17  had I asked them to you personally?

18  A   No.

19  Q   All right.  If you're selected as a juror in this case, will

20  you be -- you're going to be required to set aside any feelings of

21  passion or prejudice, and to decide this case solely on the

22  evidence presented in this courtroom and on the law as I give it to

23  you.  Are you going to be -- is there anything or -- or are you

24  unable or unwilling to do that?

25  A   No.

1  Q    And do you at all take issue with the concept that the

2  Defendant is presumed innocent as he sits here, and that

3  presumption of innocence stays with him throughout the trial and

4  into your deliberations, and it's over -- only overcome if you are

5  persuaded that the Government has proved its case beyond a

6  reasonable doubt?  Do you have any quarrel with that concept at

7  all?

8  A    No.

9  Q    Do you have any friends or close family members who are in law

10 enforcement?

11 A    No.

12 Q    Did you know -- do you know Mr. Price or any of these lawyers

13 or myself?

14 A    No.

15 Q    Did you know or recognize the name of any of those witnesses

16 that --

17 A    No.

18 Q    -- I listed out?

19 A    No.

20 Q    Did you ever serve on a jury before?

21 A    No.

22 Q    Did you ever express an opinion about this case at all?

23 A    No.

24 Q    Do you know any --

25 A    No.

1   Q    Know anything about the facts of this case?

2   A    Nothing.

3        THE COURT:  Okay.  Mr. Lanter, do you have any follow-up

4   questions?

5        MR. LANTER:  No, Your Honor.

6        THE COURT:  Mr. Foley.

7        MR. FOLEY:  Just --

8        EXAMINATION BY MR. FOLEY:

9        OF JUROR ASHENBRENER:

10  Q    If during the course of the trial, if my client and I have any

11  disagreements, that won't affect your judgment regarding his guilt

12  or innocence, will it?

13  A    If you and your client disagree, is that going to affect me?

14  Q    Right.

15  A    No.

16       MR. FOLEY:  No other questions.

17       THE COURT:  All right.  You can confer, and approach when

18  you're ready.

19       (Bench conference.)

20       THE COURT:  All right.  Any challenges for cause?

21       MR. FOLEY:  (Shakes head.)

22       MR. LANTER.  No.

23       THE COURT:  Peremptories.

24       Government has none.  The Defendant has none.

25       All right.  Does the Government accept this jury?

1      MR. LANTER:  Yes, Your Honor.

2      THE COURT:  Does the Defendant accept the jury?

3      MR. FOLEY:  Yes, Your Honor.

4      THE COURT:  All right.  I'll have some preliminary

5  instructions for them, and then we will send them to lunch.

6  Probably give them about 75 minutes for lunch.

7      And I'll let them know that we are going to have a short

8  day today.

9      MR. FOLEY:  Sure.

10      THE COURT:  Give them the schedule for the rest of the

11  week.  I have hearings along the way.  Tell them about that in

12  advance.

13      And then you can do your opening statements right after

14  lunch.  How much time are you going to need for opening statements?

15      MR. LANTER:  Probably 15 minutes tops.  10 to 15.

16      THE COURT:  Is that enough time?

17      MR. FOLEY:  That's fine.

18      THE COURT:  Okay.  I'll give each side 15 minutes.

19      MR. FOLEY:  I probably won't use that.

20      THE COURT:  Okay.

21      (End of bench conference.)

22      THE COURT:  All right.  Both sides having accepted the

23  jury, the jurors will now please stand, raise your right hand and

24  be sworn to try the issues in this case.

25      (Jury sworn.)

1    THE COURT:  You can be seated.

2         In a moment, ladies and gentlemen, we are going to take

3    our lunch break.  And you're instructed to not discuss the case

4    with anyone.  If anyone attempts to discuss the case with you, I

5    would ask you to please report it to me immediately.

6         You must remember that until the case is completed,

7    you've heard only a part of it.  And you must reserve your judgment

8    in the case until it is given to you for your deliberation.  You're

9    further instructed that you are not to speak or fraternize in any

10   way with any of the parties to this suit or any of their

11   representatives or any of the lawyers involved or any of the

12   witnesses while this case is being tried.

13        You know, even though the subject of a conversation may

14   be totally innocuous or benign, you know, somebody who was

15   witnessing that discussion may take -- may misunderstand.  So, the

16   easier way to do it is to just instruct you, and I'll instruct the

17   lawyers and the parties as well, to not have any discussions at all

18   with one another.  You might run into each other in the cafeteria.

19   You just -- you have to totally refrain from any discussion at all

20   lest somebody misunderstand, take something that was an innocent

21   interaction and make something more of it.

22        You're reminded of your great responsibility as jurors

23   and that your conduct during the trial of this case is the subject

24   of scrutiny by the Court.  Also, by your fellow jurors and by all

25   the parties and the attorneys.

1          So, it's of most importance that you be entirely

2    circumspect in the manner in which you come and leave the

3    courtroom.  And the reason for this is so that no one is going to

4    doubt that this case is being fully and fairly tried by a fair and

5    impartial jury so that the ends of justice may be served.

6          By the same token, I remind the lawyers and their

7    representatives and the witnesses that under no circumstances

8    should they fraternize or talk with any members of the jury while

9    the case is being tried.

10         Okay.  You can now follow -- the people in the box can

11   follow Dave back into the jury room.  You'll have lunch downstairs

12   in the cafeteria on our nickel.  So, Dave will get you oriented

13   back there and get you down to the cafeteria.  We are going to take

14   about no more than an hour and fifteen minutes for lunch.  But I'd

15   really want to get started as promptly as we can.  So, we'll say 20

16   minutes after 1:00.  We will pick up at that time and we'll hear

17   the opening statements.  So, you can follow Dave back into the jury

18   room.

19         (Jury exits.)

20         THE COURT:  All right.  You can be seated.

21         Ladies and gentlemen, if you are out in the audience

22   section, as you can see, we're never really sure how many jurors

23   we're going to need.  But I want to thank you for coming and being

24   ready to serve.  Obviously, if we didn't have enough jurors, we

25   can't proceed.  So, you're filling a function.  Even though you may

1   feel as if we are wasting your time, we are really not.

2        If -- if you need any work slips or anything of that

3   nature, the Clerk's office will be able to take care of that -- for

4   that -- for you. With that, you're all excused. Thank you all

5   very much for coming.

6        (Prospective jurors exit.)

7        THE COURT: Why don't you be back here by no later than,

8   say, fifteen minutes after 1:00. We'll pick up at that time.

9   Hopefully, get started about no later than 20 after. And we will

10  do opening statements. And you're prepared to have some witnesses

11  here.

12       I neglected to tell them that we were -- we're

13  adjourning early today, but I will advise them of that as soon as

14  they -- as soon as they come out. And we will go till -- Mr.

15  Foley, we will go to about 3:30. Just to let you know. So, you

16  can do whatever you need to do in the meantime here to try to

17  handle your matter.

18       Anything else we need to talk about? Mr. Foley.

19       MR. FOLEY: Not at this time. I -- I am going to orally

20  make a Motion in Limine prior to the testimony of Veronica Sanchez.

21  Do you want me to do that now or wait until then?

22       THE COURT: Is she going to testify today?

23       MR. LANTER: Quite honestly, I don't think so. She will

24  be our third witness. We will have the two officers that were done

25  in the suppression hearing before then.

1       THE COURT:  We will postpone that until just prior to her

2  testifying.

3       Anything from you, Mr. Lanter?

4       MR. LANTER:  The Government had two Motions in Limine.

5  One to prohibit argument or evidence of jury nullification.  And

6  one to prohibit argument or evidence regarding the penalties in

7  this case.  I don't think either of those are going to be an issue,

8  but I wanted to bring that to the Court's attention.

9       THE COURT:  Mr. Foley, do you have any intention to argue

10  the penalties in this case?  Obviously, you can't do that.  And I'm

11  going to prohibit you from doing that.

12       The same goes for jury nullification.  You understand

13  what the rules are.  But I'll hear from you if there is any issue

14  you want to bring to my attention in that regard.

15       MR. FOLEY:  No.  I understand I'm not supposed to argue

16  for jury nullification.  I understand.

17       THE COURT:  Okay.  Then I will grant both of those

18  Motions in Limine.

19       Okay.  We'll see you in about an hour and five minutes or

20  so.

21       MR. FOLEY:  Can I have about five minutes to talk to my

22  client?

23       THE COURT:  Yes:

24       (Lunch recess.)

25       (The proceedings resumed in open court, reported

1              as follows.)

2          THE CLERK:  All rise.

3          THE COURT:  You can be seated.

4          Okay.  Mr. Price, when we were over our lunch break, I

5   received word that you wanted to again address the Court about

6   proceeding pro se and discharging Mr. Foley.  Is that correct?

7          THE DEFENDANT:  This was his idea.

8          MR. FOLEY:  No, no.  The way -- Your Honor, what happened

9   was when we were leaving the courtroom, I asked Mr. Price if he

10  wanted to sign a couple of stipulations which were provided to me

11  by the Government.

12          When we were going through the two stipulations, one of

13  which I recommended strongly that he sign, but -- about him being

14  -- having a prior felony conviction, his comment to me was, I'm not

15  signing anything.  I wanted to proceed pro se.  I do want to

16  proceed pro se.  I'm being forced to go with an attorney that I

17  don't want.

18          And that is basically what he has indicated to me.  And

19  that's --

20          THE COURT:  Is that accurate, Mr. Price?

21          THE DEFENDANT:  That's correct.

22          THE COURT:  Okay.  So, what are you asking the Court to

23  do?

24          THE DEFENDANT:  I asked you in the ex-parte hearing that

25  I go pro se.  You told me already I could not have another

1  attorney.  So, my other option is go pro se.

2          THE COURT:  Well, I might reconsider that and provide you

3  another attorney.  Because it's obvious to me that there has been a

4  breakdown in the communication between you and Mr. Foley.  And even

5  though we are on the day of trial and it's highly irregular,

6  What are you asking the Court to do?

7          THE DEFENDANT:  I would -- I would appreciate having

8  another attorney.  But I mean, if he going to do the same thing I

9  went through with Mr. Martin and Mr. Foley, it will be a waste of

10 your time and the Court time again.  I just want an impartial and

11 fair trial, that's all, and a sufficient and adequate time to

12 prepare and time to sit down with my attorney and we go over things

13 together.  Not one sided, you know, just one attorney do what he

14 want to do.

15         THE COURT:  That will be up to the lawyer that I appoint

16 to you.  But here is the deal, Mr. Price.  And I know I've told you

17 this once before.

18         That, you know, I might grant your -- your request for --

19 to appoint you another lawyer.  But if you're dissatisfied with

20 that new lawyer, you're going to proceed pro se.  And what I am

21 uncomfortable with right now is the fact that you would like to

22 proceed pro se.  You have told me that.  But you obviously have not

23 had the opportunity to prepare for trial.

24         So, I guess I'm asking you, what do you want the Court to

25 do?  Do you want to proceed with the trial today with Mr. Foley

1  representing you, or do you want to ask the Court to declare a

2  mistrial? In which case, we would set it for a new trial, and you

3  could represent yourself. Or I will appoint another lawyer for

4  you. But that -- but I'm telling you that that will be it. There

5  won't be a fourth one.

6          So, what do you want me to do?

7          THE DEFENDANT: I would like to have another attorney, if

8  possible, I mean, and have adequate, sufficient time to go over

9  things with him and prepare, and enough time -- enough time for me

10 to prepare, I mean, as far as sit down and talk with him in a

11 sufficient time. Not like I had with Mr. Martin and Mr. Foley. I

12 mean, if the -- if the lawyer's going to represent me the way he's

13 supposed to, or the Court or the Constitution says he's supposed

14 to, that's all that's -- that's all I'm asking.

15         THE COURT: Okay. What is the Government's view of this?

16         MR. LANTER: The Government would like a short

17 continuance until tomorrow morning to research the options involved

18 in this case.

19         THE COURT: Okay. I'm going to allow you to do that, Mr.

20 Lanter.

21         Are you then -- I guess what I want to make clear, Mr.

22 Price, is are you asking me to discharge this jury and to give you

23 additional time with another lawyer to get prepared for trial?

24         THE DEFENDANT: Yes.

25         THE COURT: How much time you going to need to do that?

 1          THE DEFENDANT:  As much time as the Court will allow me.

 2          THE COURT:  All right.  Here's what we're going to do.

 3   I'm going to send the jury home today.  I'm going to bring them

 4   back here tomorrow at 9:30.  And at that time, I'll hear from the

 5   Government about the Government's position on whether or not the

 6   Government agrees with the discharge of this jury and the resetting

 7   of this -- declaring of a mistrial and the resetting of this for

 8   another trial.  And in the meantime, I will -- if that's the way we

 9   go, I'll appoint you another lawyer.

10          Despite my earlier admonitions to the contrary, I'm

11   sufficiently concerned about this, that I'm going to give you one

12   last opportunity, Mr. Price.  But that's going to be it.  So, you

13   have to understand -- and I haven't heard from the Government's

14   position on this yet either.  If the Government is able to make a

15   compelling argument that we should proceed with the trial tomorrow

16   morning, then that's what we're going to do.

17          So, I haven't ruled on that yet.  But if I disagree with

18   the Government, we'll talk tomorrow about what that means insofar

19   as your relationship with another lawyer and the consequences of

20   the fact that if that lawyer -- you're not happy with that lawyer

21   or suddenly Mr. Foley looks like the greatest lawyer who's ever

22   walked on this planet, it's not going to matter.  You, at that

23   point, will either proceed with that third lawyer or you'll proceed

24   alone.  Okay?

25          THE DEFENDANT:  Understand.

1    THE COURT:  All right.  Mr. Lanter, is that -- the rest
2  of the day today give you enough time to research the issues as you
3  need to look at?
4    MR. LANTER:  Yes, Your Honor.
5    THE COURT:  But as I understand it, Mr. Price, you are
6  specifically asking for a mistrial in this case?
7    THE DEFENDANT:  I don't understand -- I'm the one asking
8  for a mistrial?  I'm just asking for an attorney to represent me or
9  go pro se.
10    THE COURT:  It couldn't very well be that I'm going to
11  get a lawyer in here and he's going to be ready or she's going to
12  be ready to proceed with this trial in front of this jury.  That
13  person would need time to do that.  Do you understand that?
14    THE DEFENDANT:  Well, I don't understand the part where
15  you asking me if I'm requesting a mistrial.
16    THE COURT:  Well, what I'm asking you is to discharge
17  this jury to give you time with a new lawyer to prepare to present
18  the matter to -- to another jury.
19    THE DEFENDANT:  So, I would have to request a mistrial
20  then?  That would come out of -- I mean, I have to ask that, the
21  Court?
22    THE COURT:  Otherwise, we're not going to keep this jury
23  sitting here for three months while you get prepared with a new
24  lawyer.  Tell me what you want me to do.
25    THE DEFENDANT:  I'm not requesting a mistrial.

```
 1          THE COURT:  Okay.  Then are you -- do you want to proceed
 2     pro se today?
 3          THE DEFENDANT:  I would like to see if you can give me
 4     another lawyer.
 5          THE COURT:  To prepare today?  To proceeded to?  That's
 6     not going to happen.
 7          THE DEFENDANT:  I understand that.  I mean, as far as you
 8     give -- the Court giving me enough time to prepare as much as
 9     allowed.  But I don't understand about me requesting for a
10     mistrial.  I mean --
11          THE COURT:  The reason is because you are requesting that
12     Mr. Foley be discharged.  And you have me -- you leave me no choice
13     but to declare a mistrial.  So, that's what I'm asking.
14          THE DEFENDANT:  But I asked you that about a month and a
15     half ago, Your Honor, and you refused.  And at that time, you
16     advised me -- you suggested I go with Mr. Foley.  And I would say
17     that the Court basically forced me to go with Mr. Foley.  And I
18     asked for him to be dismissed a long time ago.  And it wouldn't
19     have been no room for a mistrial then.  And you didn't give me
20     ample time to prepare for another lawyer.
21          MR. FOLEY:  If I might, Your Honor, I don't believe he
22     did conclude with requesting that I be discharged.  I believe at
23     the conclusion of our hearing, he was okay with me.  That's what
24     my understanding was.
25          THE COURT:  That's correct.  My understanding was we left
```

1   the hearing about a month and a half ago. And you specifically

2   told me, Mr. Price, that you were going to proceed with Mr. Foley.

3   And that's fine. Now, we are on the morning of trial, have

4   selected the jury, and you are now telling me that you want a

5   different lawyer. Am I understanding that correctly?

6           THE DEFENDANT: Right. I even wrote -- written you

7   letters when I wasn't supposed to, because I couldn't get my

8   attorney to do what I asked him. So, I mean, me basically breaking

9   the rules as far as writing you. I was trying to get your

10  attention then. And this was months ago. I mean, to no success.

11  I'm not requesting a mistrial. I'm just requesting an attorney

12  that would represent me effectively. I mean, me and Mr. Foley have

13  not been able to see eye to eye, and so on.

14          THE COURT: Okay. Well, I'm going to give the Government

15  a chance to research the issue, and we will adjourn today and come

16  back tomorrow morning. And Mr. Lanter and Mr. Padilla, you can

17  tell me what the Government's position is, if the Government's --

18  and, you know, we'll proceed in that manner.

19          Are you requesting that Mr. Foley be discharged?

20          THE DEFENDANT: Yes.

21          THE COURT: Okay. Mr. Foley, I'm going to remove you

22  from your responsibilities in this case.

23          And if we're going to proceed with the trial tomorrow

24  morning, then this should give you plenty of time, Mr. Price, to

25  get ready for it --

1    THE DEFENDANT:  One day.

2    THE COURT:  -- on your own.  And I will have -- Mr.

3    Foley, I'm not going to discharge you as a stand-by counsel.  I

4    will have you present here to answer any questions that Mr. Price

5    may have, if that's the way we decide to go.  So, I would ask you

6    to be here tomorrow, Mr. Foley.

7    MR. FOLEY:  Yes, Your Honor.

8    THE COURT:  I'll hear from the Government tomorrow

9    morning on whatever position it may have on the -- on the

10    Defendant's requests here.

11    Anything else you want to add, Mr. Lanter.

12    MR. LANTER:  No, Your Honor.

13    THE COURT:  All right.  Mr. Foley, anything else?

14    MR. FOLEY:  The only thing I -- I would add, just for the

15    record, is I understand there's been a breakdown in our obviously

16    relationship, but I have, I believe, filed every motion that Mr.

17    Price is requesting me to file.  Prepared them in what I consider

18    to be appropriate format.  Presented them to the Court and argued

19    them.  And that's all I can say.

20    THE COURT:  Yeah, I -- I -- to date, I believe the

21    representation has been entirely effective, and -- but Mr. Price

22    has a right to proceed pro se, if that's what he wants to do.  And

23    if -- so, you better come prepared tomorrow to proceed pro se.  And

24    Mr. Foley will be here to answer any questions that you might have.

25    And we'll proceed in that vain.

1         Okay. Can you all be here at 9:30 tomorrow then and

2  we'll sort that issue out. I'm just going to bring the jury out

3  right now to let them know that we have an issue that has come up

4  that is a matter that we need to resolve this afternoon, and I'm

5  just going to ask them to leave for the day. And if they want to

6  come back -- I'll have them come back tomorrow morning at about

7  9:15, and we'll get started at about 9:30.

8         Anything else? Mr. Price, anything else that you want to

9  raise?

10         THE DEFENDANT: That would be all for now.

11         THE COURT: I'm sorry.

12         THE DEFENDANT: That would be all for now.

13         THE COURT: Okay. Thank you. Anything from you, Mr.

14  Foley?

15         MR. FOLEY: No, Your Honor.

16         THE COURT: Mr. Lanter.

17         MR. LANTER: No, Your Honor.

18         THE COURT: Okay. We'll see you all tomorrow morning.

19  I'm sorry, we are going to bring the jury out.

20         Get the jury in.

21         There is one other issue I want to talk about after I

22  discharge the jury for the day.

23         (Jury enters.)

24         THE COURT: All right. You may be seated.

25         All right. Ladies and gentlemen, I hate to do this to

1   you, but there's been an issue that has come up that I need to take

2   care of outside of your presence. And I'm not quite sure how long

3   it's going to take to resolve the issue. But the lawyers need some

4   opportunity to research an issue that has come up. And instead of

5   trying to guess how long it will take to accomplish that and then

6   to resolve the issue, I think it would be more prudent to just send

7   you home for the day. That's what I'm going to do.

8        I still think that if we start tomorrow morning, we will

9   be able to finish the trial within no later than four days

10  including today. So, I think it's probably the best use of your

11  time to do it that way.

12       So, what I would ask is that you come back here tomorrow

13  morning and be here by about 9:15. We'll try to get started right

14  at about 9:30 and we'll proceed at that time.

15       Don't discuss the case amongst yourselves at home, with

16  loved ones, friends, neighbors. Don't discuss it amongst

17  yourselves. You have to keep everything very much to yourself

18  until you've heard all the evidence and the case has finally been

19  submitted to you.

20       So, with that, I apologize for springing this on you, but

21  it really is something that has come up that I think the better way

22  to go is for us to try to get our ducks in a row and be ready

23  tomorrow morning to hit the ground running.

24       So, with that, we will see you tomorrow morning. Get

25  here by about 9:15 and we'll get started by about 9:30. Thank you

1   all very much.

2           (Jury exits.)

3           THE COURT:  All right.  Mr. Price, there was two other --

4   one other thing I wanted to raise with you.  You had mentioned to

5   me there were two witnesses that you wanted to have subpoenaed.

6   Who are those witnesses?

7           THE DEFENDANT:  It was basically a document.

8           THE COURT:  What was that document?

9           THE DEFENDANT:  Inmate property inventory sheet, which

10  ATF Agent Mitten had signed for my property, and he never returned

11  my property to me.

12          THE COURT:  Okay.  What was the other subpoena that you

13  -- that you wanted sent out?

14          THE DEFENDANT:  Something --

15          MR. FOLEY:  That document, I believe, Your Honor, if I

16  may interrupt, is from Florida.  That would be where he was

17  arrested in Florida.

18          THE COURT:  I understand.  And what was the other

19  subpoena that you wanted issued?

20          THE DEFENDANT:  It was also some information from the

21  Gary Police Department as far as the dispatch record and a

22  Dictaphone tape.  We received back information saying they -- they

23  forgot or failed to load the Dictaphone machine for two days.

24          THE COURT:  So, what are you requesting from them by way

25  of subpoena?

1          THE DEFENDANT:  We are requesting that the sergeant who

2     runs that office will come in and bring maybe the -- the sheet.

3          THE COURT:  All right.  Let's talk about the summons for

4     the -- or the subpoena relating to your property inventory.  Why is

5     that germane to whether or not you possessed a gun?

6          THE DEFENDANT:  Because I believe to establish that his

7     credibility as far as him not giving my property back, which was

8     money.  I would consider that stealing.  Because he told me that he

9     would give it to me when I got to Indiana, but he never did.  And

10    he --

11         THE COURT:  Okay.  I don't find that to be relevant at

12    all.  So, Mr. Foley's decision to not subpoena that, I think, was

13    entirely appropriate.

14         All right.  What about the Gary police record?

15         THE DEFENDANT:  No, it was subpoenaed by Mr. Martin.  And

16    we got all the documents except for specifically that piece of

17    paper he signed.

18         THE COURT:  Okay.  I've ruled that I don't find it

19    relevant.  What was the next issue?  What -- what does it relate --

20    relating to the Gary Police Department?

21         THE DEFENDANT:  Tapes from the dispatcher.

22         THE COURT:  Yeah, I don't understand what you're asking

23    for.

24         THE DEFENDANT:  That dispatch paper that he used in the

25    suppression hearing.  Because when Miss Sanchez testified that what

1  initially happened was a lady officer asked her out of the car.

2  Officer Smith and Officer Illyes was not on the scene. I had not

3  came out -- exited the house yet. And as far as what went on

4  before I came out of the house was totally different from what the

5  officers testified to.

6      THE COURT: And what makes you believe there is some

7  discharge -- or dispatch report that's going to be relevant to that

8  issue?

9      THE DEFENDANT: Well, maybe even the tape or them

10  speaking to who was initially dispatched to the scene.

11      THE COURT: All right. Mr. Foley, have you attempted to

12  subpoena that? And if not, why not?

13      MR. FOLEY: My interpretation of dispatch records --

14  first of all, apparently, there is no dispatch record that exists.

15      THE COURT: Is that true, Mr. Lanter?

16      MR. LANTER: It's the Government's understanding that if

17  there was a dispatch tape, it's no longer available. It was

18  destroyed or taped over years ago. There are dispatch records

19  which Mr. Foley referred to in the Motion to Suppress hearing, and

20  have been turned over to him.

21      THE COURT: Okay.

22      MR. FOLEY: And in my opinion, the only important parts

23  of the dispatch -- and the dispatch was, if the Court recalls, was

24  about fires possibly being set in allies. That was the initial

25  dispatch. And that's how the officers got to the scene, was

1  because of that.  And Officer Smith first and Officer Illyes later.

2  And my opinion was, in my strategy for defending my client, that

3  was -- it wasn't important.  It wasn't germane.  Because my

4  opinion, an officer in the City of Gary or any other city can be

5  wherever he wants to for whatever he wants to.  How they got to the

6  scene and why they got to the scene was not important to my defense

7  of him in this case.  That's why I didn't deem that that was

8  important.

9         THE COURT:  Okay.  Mr. Price, why do you believe it's

10 relevant to the case?

11        THE DEFENDANT:  That's why some of the times we had

12 conflict.  Because if you remember, Miss Sanchez testified that

13 Officer Illyes and Officer Smith were not the initial officers on

14 the scene.  It was a lady that ordered her out of the car.  And we

15 have no record of a lady being -- well, one lady on the --

16        THE COURT:  Well, you've just been advised that there are

17 no such dispatch records or tape recordings.  They don't exist.

18 They have been taped over.  And Mr. Foley has all of the records

19 that relate to the dispatch that exist.  So, that issue seems to me

20 to be a non-issue inasmuch as there is nothing left to subpoena.

21        MR. FOLEY:  Your Honor, one other item regarding that.

22 And that's the record that Mr. Lanter was referring to.  The -- I

23 did refer to a dispatch record when I was cross-examining one of

24 the officers, I believe Officer Illyes.  And what I had asked him

25 when Veronica Sanchez had mentioned a woman -- if the Court will

1   recall, I saw the name of a woman officer on the dispatch record.

2   And I asked him about that, and he said that was a black lady.  And

3   if you remember, I was saying, was she dark, light or whatever.

4           That was the only woman's name that I saw on any dispatch

5   record.  So, I did attempt to explore that through the dispatch

6   record, and that's all I got.  And that's all I ever will get.

7   Even if I did find someone else -- I mean, I don't have a way of

8   finding this supposed white police officer, white lady police

9   officer.  Both of the officers testified there was no such person.

10  The records indicate there was only one woman who may have been

11  there, and she was black.  I don't know what else to do.

12          THE COURT:  Okay.  Well, I -- again, I find that to the

13  extent that there were any such records, they have already been

14  produced.  So, I can't at all quarrel with what Mr. Foley has done

15  in that regard.

16          Okay.  We'll see you here tomorrow morning.  And the

17  Government can tell me their position on continuing this case and

18  discharging this jury and granting a mistrial and resetting the

19  case, or the Government can make its pitch that we should proceed

20  with this jury.  And I'll make my decision.

21          And you'll either proceed on your own tomorrow, Mr.

22  Price, with Mr. Foley as stand-by counsel, or we'll continue the

23  case and discharge the jury and we'll proceed that way.

24          MR. FOLEY:  The Court has discharged me effectively now?

25          THE COURT:  Correct.  But not as stand-by counsel.  In

1  other words, you're -- you're still stand-by counsel for Mr. Price,

2  if we're going to proceed this week. But I don't know what the

3  Government's position is on this. So, they can advise me of that

4  in the morning.

5          Okay. Anything else, Mr. Lanter?

6          MR. LANTER: No, Your Honor.

7          THE COURT: Mr. Foley.

8          MR. FOLEY: No, Your Honor.

9          THE COURT: Okay. Thank you.

10         MR. FOLEY: Thank you.

11         (At 1:55 o'clock the trial was adjourned

12         to reconvene on May 3, 2005.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E
2         I, Sharon Boleck Mroz, being a duly authorized
3    and acting official court reporter for the
4    United States District Court, for the Northern
5    District of Indiana, Hammond Division, do hereby
6    Certify that I did report in machine shorthand the
7    foregoing proceedings, and that my shorthand notes
8    So taken at said time and place were reduced to
9    typewriting under my personal direction.
10        I further certify that the foregoing typewritten
11   transcript constitutes a true record of said
12   proceedings, so ordered to be transcribed.
13
14                    _____
15                    Sharon Boleck Mroz
16                    Official Court Reporter
17
18
19
20
21
22
23
24
25
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25